COPY

1   Elizabeth J. Cabraser  (SBN 083151)
    Scott P. Nealey  (SBN 193062)
2   Cecilia Han  (SBN 235640)
    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
3   Embarcadero Center West
    275 Battery Street, 29th Floor
4   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
5   Facsimile:  (415) 956-1008

6   [Additional Counsel Listed on Signature Page]

7   *Attorneys for Plaintiffs and Class*

8                   UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO/OAKLAND DIVISION

11

12  HELEN TARAGAN; FRANCES                Case No.
    JEANETTE TAYLOR; CLARENCE
13  TAYLOR on behalf of themselves and all   **COMPLAINT FOR DAMAGES AND**
    others similarly situated,               **EQUITABLE RELIEF**
14
                 Plaintiffs and Class,       **CLASS ACTION**
15
    v.                                       **DEMAND FOR JURY TRIAL**
16
    NISSAN NORTH AMERICA, INC., a
17  California corporation; NISSAN MOTOR
    COMPANY, LTD., a Japanese company
18
                 Defendant.
19

20

21

22

23

24

25

26

27

28

819527.7                                              CASE NO. _____

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**INTRODUCTION**

1.    Plaintiffs bring this case on behalf of themselves and all other owners and lessees of Nissan and Infiniti vehicles equipped with electronic "Smart Keys" (hereafter "SUBJECT VEHICLES").  Plaintiffs assert claims under state statutory and common law.

2.    Since 1990, under Federal Motor Vehicle Safety Standard ("FMVSS") 114, all vehicles equipped with automatic transmissions which are sold in the United States are required to be equipped with what is known as a Key Ignition Transmission Shift Interlock ("KITSI.").  A KITSI prevents a driver from removing the vehicle's key from the ignition (by locking the key in the ignition) unless the vehicle's transmission is in "park."  When the vehicle is in park, the vehicle's parking pawl engages in the annulus gear and prevents the vehicle from rolling away.

3.    FMVSS 114 Requirement S4.2.1(a)(2) states: "For each vehicle equipped with an automatic transmission which has a 'park' position, the key-locking system shall prevent removal of the key unless the transmission or transmission shift lever is locked in 'park' or becomes locked in park as the direct result of removing the key."

4.    FMVSS 114 was supplemented to require a KITSI to prevent vehicle roll-away accidents.  Roll-away accidents can occur when a driver believes the vehicle is in park but the vehicle instead is in a gear (drive or reverse) and the driver turns off the vehicle to exit it or when the shift lever in the vehicle is moved (when the key is removed from the ignition) by a child or animal.  Depending upon the grade in either situation, the vehicle can then roll away (because it is not held by the parking pawl), with the driver and/or passengers in it or having exited, thereby damaging property or causing personal injury or death.

5.    Under federal law, a manufacturer is required to "self certify" that its vehicles comply with FMVSS 114.  NHTSA provides a test protocol, TP-114-01, for self certification.  TP-114-01 is a simple three part test: "(1) Start the engine.  (2) Shift the transmission to the 'drive' position and shut off the engine.  (3) Try to remove the key from each switch position.  The system shall prevent key removal."

6. NHTSA neither tests nor approves vehicles, nor does it provide any certificate of compliance to a manufacturer or require a manufacturer to make reports or file any documents. Compliance with FMVSS 114, while mandatory, is checked solely by the manufacturer prior to sale. Vehicles which do not comply with each and every FMVSS requirement can not be legally sold in the United States.

7. Starting in 2002, Defendants Nissan North America, Inc. and Nissan Motor Company, Ltd. (collectively "NISSAN"), began to sell vehicles in the United States which were equipped with keys that did not fit into a traditional key slot, but instead used an electronic chip to unlock the ignition and activate the vehicle's starting mechanism. Marketed as "Infiniti Intelligent Key" or "Intelligent Key" (collectively "Intelligent Keys") by NISSAN, Intelligent Keys have been sold since 2002 as both standard and optional equipment on numerous vehicles, including Altima, Maxima, Murano, Pathfinder, Rogue, Sentra and Infiniti vehicles, manufactured and sold by NISSAN. More than one million NISSAN vehicles have been sold with Intelligent Keys to date.

8. A vehicle with the NISSAN Intelligent Key system has several things which are immediately apparent to the user. The first is that the vehicles usually have a "Start/Stop" button on the dashboard, rather than a key that must be turned to start the vehicle. On the Nissan and Infiniti vehicles, the buttons look like the following:

- Photograph of 2007 Nissan Altima 2.5S:



1

•      Photograph of 2006 Infiniti M35:



9.      The second is that vehicles with NISSAN Intelligent Keys have a transponder (or "fob") rather than a conventional metal key and the transponder fits into a "slot" or "holster" on the dash.  Examples of what the Nissan and Infiniti Smart Keys transponders and slots look like are as follows:

•      Photograph of 2008 Nissan Maxima key transponder:



COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- Photograph of 2007 Nissan Altima transponder slot:



- Photograph of 2006 Infiniti M35 slot:



- Photograph of 2006 Infiniti M35 with transponder in the slot:



- 4 -

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

• Photograph of 2007 Nissan Murano SL slot:



• Photograph of 2007 NISSAN Murano SL transponder (showing back of the transponder where emergency metal key fits):



10.    Competitor manufacturers have introduced Smart Keys which comply, as they must, with FMVSS 114.  This can be done in a number of ways, most commonly it is done by integrating a solenoid into the transponder holster which locks the key into the slot unless the vehicle is in park and turned off.  Competitor manufacturers' keys that use this system to achieve FMVSS 114 compliance have small notches on the side of the transponder for the solenoid to lock into.  Examples are as follows:

1

•      Photograph of notches on the side of transponder from 2008 Acura

2  TL (manufactured by Honda of America Mfg., Inc.):

3  Notch for solenoid
4  to lock into

5

6

7

8

9

10

11

12

•      Photograph of transponder slot from 2008 Acura TL, solenoid

13  which locks the key is on both sides (left and right) of the opening:

14  Solenoid which
15  locks into notch



16

17

18

19

20

21

22

23

24

25

26

27

28

1 • Photograph of transponder and slot from 2008 Dodge Grand

2 Caravan:

3 Notch for solenoid
to lock into

4

5 

6

7

8

9

10

11 • Photograph of transponder and slot from 2007 BMW 335i:

12

13 Notch for solenoid
to lock into

14

15

16

17

18

19

20

21 11. Alternatively, certain competitor manufactures which allow their vehicles

22 to be started remotely with the transponder (i.e. without it being in the slot/holster) program their

23 vehicle's Smart Key systems such that the vehicle can not be turned off unless the vehicle is in

24 Park, or have transmissions (such as on the Toyota Prius) which automatically place the vehicle

25 into park when the vehicle is turned off.

26 12. Unlike these competitor vehicles, NISSAN's Intelligent Key system is not

27 compliant with FMVSS 114 in that the SUBJECT VEHICLES can all be turned off in any gear,

28 and the key can then be removed from the slot/holster. No solenoid locks the transponder in

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1   place, as with competitor manufacturers, and no other system to achieve FMVSS 114 compliance

2   (such as not allowing the vehicle to be turned off unless it is in park) is included on the NISSAN

3   Intelligent Key vehicles.  This major safety problem affects over one million NISSAN vehicles.

4           13.   The problem is particularly acute as other vehicles sold since 1990,

5   including non-transponder equipped vehicles sold by NISSAN, incorporate a KITSI.  The need to

6   shift into park (or have the vehicle in park) to turn off the vehicle and remove the key is therefore

7   a key safety feature which drivers rely upon, but whose absence on the SUBJECT VEHICLES is

8   not readily apparent.

9           14.   As shown below, NISSAN's ongoing sale of these non-complaint vehicle

10   is a violation of federal law, a danger to the public, and constitutes a per se violation of federal

11   and state warranty law, a breach of contract, and consumer fraud.  Furthermore, NISSAN has

12   been unjustly enriched by its illegal sale of non-conforming vehicles.

13         **JURISDICTION, VENUE, INTRADISTRICT ASSIGNMENT**

14           15.   The Court has jurisdiction over Plaintiffs' claims under the Class Action

15   Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  With respect to CAFA, this Court has

16   jurisdiction since:  (i) the amounts in controversy exceed the jurisdictional amount, (ii) the Class

17   consists of thousands of individuals, and (iii) Plaintiffs are citizens of foreign states.  This Court

18   can also exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims

19   because they are derived from the same nucleus of operative facts as the federal law claim such

20   that Plaintiffs would ordinarily expect to try them in one proceeding.

21           16.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because

22   several Plaintiffs reside in this District and because Defendants have conducted business within

23   this District by marketing, advertising, warranting and selling the SUBJECT VEHICLES here.

24           17.   Intradistrict assignment to San Francisco/Oakland is appropriate under

25   Civil L.R. 3-2(d) because part of this action arose in Alameda and San Francisco counties.

26

27

28

## PARTIES

### Plaintiffs

18.     Plaintiff Helen Taragan is a resident of Dublin, Alameda County, California, and a citizen of the State of California.  She owns a 2009 Nissan Maxima (VIN No. 1N4AA51E89C802466) which contains the defect.

19.     Plaintiffs Clarence Taylor and Francis Jeanette Taylor ("the Taylors")[1] are residents of Tangipahoa Parish, and citizens of the State of Louisiana.  They own a 2009 Nissan Murano (VIN No. JN8A218U39W012620) which contains the defect.  As a result of the defect, the Taylors suffered personal injury on August 27, 2008.  On that day, Mrs. Taylor pulled into a restaurant, turned off the engine, removed the key and got out of the car to open the rear door on the driver's side so she could retrieve a package.  She was then about to close the rear door on the driver's side and return to the front driver's door to get a soda, when the car began to move backwards.  Mrs. Taylor attempted to re-enter the open front driver's door to stop the vehicle, but the car caught her in its door and dragged her along, severely crushing her foot.

20.     Plaintiff Clarence Taylor witnessed the entire accident from his seat by the window in the restaurant.  Upon witnessing the car move backwards and drag Mrs. Taylor, Mr. Taylor rushed out immediately to assist.  As he was rushing out to assist, he saw the car roll over Mrs. Taylor's foot and rest itself on her right calf, where it stopped.  Seeing that the car had stopped and was now sitting on top of Mrs. Taylor, Mr. Taylor took the key *that was in Mrs. Taylor's hand*, entered the car, started the car, placed the car into gear, and drove it carefully off Mrs. Taylor's leg.

21.     As result of her injuries, Mrs. Taylor can no longer work and must undergo physical therapy.  As a result of witnessing Mrs. Taylor run over by the car, Mr. Taylor has suffered severe mental anguish and emotional distress including stress, anxiety, nervousness, sleeplessness, anger, and sadness, and replays the accident in his mind regularly.

---

[1] In addition to bringing Class claims as Class Representatives, the Taylors also assert personal injury claims which resulted from the defect in their vehicle on an individual basis.

1       **Defendants**

2       22.     NISSAN NORTH AMERICA, INC. is a California corporation which is

3 qualified to do, and does, business in the State of California and this judicial district.

4       23.     NISSAN MOTOR COMPANY, LTD. is a Japanese company which does

5 business in this State and judicial district.

6                         **ALLEGATIONS**

7       24.     NISSAN designed, manufactured, marketed, advertised, warranted, sold

8 and leased the SUBJECT VEHICLES at issue in this case in this district, and throughout the

9 United States, to members of the CLASS.

10       25.     Prior to the sale or lease of the SUBJECT VEHICLES, NISSAN knew, or

11 should have known, that they failed to comply with FMVSS 114 and presented an unreasonable

12 danger to drivers.

13       26.     As a result of the non-compliance with FMVSS 114 in the SUBJECT

14 VEHICLES, Plaintiffs and the CLASS have been harmed and are placed in danger in that they

15 have purchased or leased the SUBJECT VEHICLES that they would not otherwise have

16 purchased or leased had they known of the defect, and will be forced to repair or replace them at

17 their own cost. In addition, Plaintiffs and the CLASS have been placed in, and are, at undue risk

18 of suffering irreparable physical injuries or death due to NISSAN's failure to recall, buy back,

19 provide warnings about, and/or supply funds to retrofit and/or repair the dangerously defective

20 SUBJECT VEHICLES.

21       27.     Plaintiffs are informed and believe that NISSAN knew and knows that the

22 SUBJECT VEHICLES are defectively designed, and that NISSAN knew and knows of a non-

23 defective and FMVSS 114 compliant alternative design for the SUBJECT VEHICLE'S defective

24 Intelligent Key. Plaintiffs are further informed and believe that the cost of correcting the

25 SUBJECT VEHICLE'S Intelligent Key design and making non-defective and FMVSS 114

26 compliant vehicles was and is minimal, especially in comparison to the harm and threat of

27 irreparable injury suffered by Plaintiffs and the CLASS.

28

28.     Since at least the 1970s and well before FMVSS 114 was implemented in 1990, Defendant NISSAN knew or should have known of the need for a properly functioning KITSI system.  NISSAN is well aware of the absolute imperative to have a vehicle with a functioning KITSI, having conducted two recalls to address FMVSS 114 non-compliance:

> On October 18, 2006, NISSAN voluntarily agreed to conduct NHTSA Campaign 06V402000 and recalled 9,506 2007 Nissan Maximas equipped with "Intelligent Keys" for failure to comply with FMVSS 114; and

> On October 20, 2006, NISSAN agreed to voluntarily conduct NHTSA Campaign 06V401000 and recalled 67,014 2005-2006 Muranos for failure to comply with FMVSS 114.

Despite knowing that over one million additional vehicles are similarly FMVSS 114 non-compliant, NISSAN has chosen to ignore and hide the defect and its vehicles' non-compliance and has taken no further action to protect its customers.

29.     To date, NISSAN has failed to notify owners and lessees of the SUBJECT VEHICLES of the dangerous defect and FMVSS 114 non-compliance, and has failed to supply funds to fix the problem.  Rather, it has, on information and belief, concealed and ignored the problems.

## TOLLING OF STATUTES OF LIMITATION

30.     Any applicable statutes of limitations have been tolled by Defendant NISSAN's continuing, knowing and active concealment of the facts alleged herein.  Plaintiffs and members of the CLASS have been kept in ignorance of vital information essential to the pursuit of their claims without any fault or lack of diligence on their part.  Because of the non-obvious nature of the defect and the SUBJECT VEHICLES' FMVSS 114 non-compliance, Plaintiffs and members of the CLASS could not reasonably have discovered the facts giving rise to the claims asserted herein until very recently.

31.     In the alternative, Defendant NISSAN should be estopped from relying on any statutes of limitation.  Defendant has been under a continuing duty to disclose the true character, quality and nature of its SUBJECT VEHICLES to Plaintiffs and members of the Class, to repair the defect, and to implement a FMVSS 114 compliant design, but has failed to do so.

1  Because the existence of the defect is not obvious to the reasonable consumer, and because

2  Defendant is and was in exclusive possession of the facts and information concerning the true

3  character, quality and nature of the SUBJECT VEHICLES, Defendant is estopped from relying

4  on any statutes of limitations.

5       32.    It was not until within the last several months of the filing of the complaint

6  in this action that Plaintiffs had knowledge that Defendant was engaged in the wrongdoing

7  alleged herein.  Plaintiffs and Class members could not reasonably have discovered Defendant's

8  wrongdoing prior to this time, as Plaintiffs and members of the CLASS could not have known

9  until the last several months, and Class Members may still not know, of Defendant's wrongdoing.

10                      **CLASS ACTION ALLEGATIONS**

11      33.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all

12  others similarly situated throughout the United States and seek to represent a class composed of

13  all persons and entities (the "CLASS") defined as:

14          All persons and entities in the United States who own or lease
            NISSAN and INFINITI vehicles equipped with Intelligent Key
15          ignitions.

16      34.    Excluded from the CLASS are: (1) Defendants NISSAN NORTH

17  AMERICA, INC., NISSAN MOTOR COMPANY, LTD., any entity in which they have a

18  controlling interest, and Defendants' legal representatives, officers, directors, assigns and

19  successors; (2) the judge to whom this case is assigned and any member of the judge's immediate

20  family; (3) all claims for personal injury or wrongful death other than those of Mr. and

21  Mrs. Taylor; and (4) all persons who properly execute and file a timely request for exclusion from

22  the CLASS.

23      35.    Plaintiffs are informed and believe that over one million individuals or

24  entities own or lease the SUBJECT VEHICLES which are FMVSS 114 non-compliant.  These

25  individuals and entities are dispersed throughout the United States.  The CLASS is, therefore, so

26  numerous and geographically dispersed that joinder of all members in one action is impracticable.

27      36.    The claims of the representative Plaintiffs are typical of the claims of the

28  CLASS, as required by Fed. R. Civ. P. 23(a)(3), in that each of the representative Plaintiffs, like

1  all of the members of the CLASS, own or lease a SUBJECT VEHICLE which is FMVSS 114

2  non-compliant.  The representative Plaintiffs, like all Class Members, have been damaged by

3  NISSAN's misconduct in that they have or will incur the cost of repairing and/or replacing their

4  defective SUBJECT VEHICLES and are placed at an undue risk of irreparable physical injuries

5  or death by NISSAN's actions, concealments, and refusal to act to recall, buy back, and/or retrofit

6  their dangerously defective SUBJECT VEHICLES.

7      37.    The factual and legal bases of NISSAN's misconduct are common to all

8  Class Members and represent a common thread of fraudulent and/or negligent misconduct

9  resulting in injury to Plaintiffs and all members of the CLASS.

10      38.    There are numerous questions of law and fact common to Plaintiffs and the

11  CLASS, and those questions predominate over any questions that may only affect individual

12  Class Members, within the meaning of Fed. R. Civ. P. 23(a)(2) and 23(b)(3).  Common questions

13  include, but are not limited to, the following:

14      •    Whether the SUBJECT VEHICLES are defective in that they are

15  FMVSS 114 non-compliant and therefore can be turned off and exited with the key not in the

16  ignition when the vehicle is not in the park position;

17      •    Whether NISSAN knew or should have known of the defective

18  nature of the SUBJECT VEHICLES;

19      •    Whether the SUBJECT VEHICLES are defective, and not as

20  expressly warranted and advertised by NISSAN;

21      •    Whether the SUBJECT VEHICLES are defective, unmerchantable,

22  and not fit and safe for their ordinary and intended use;

23      •    Whether NISSAN expressly warrants the SUBJECT VEHICLES to

24  be free of defects at the time of delivery;

25      •    Whether NISSAN implicitly warrants the SUBJECT VEHICLES to

26  be compliant with FMVSS at the time of delivery;

27      •    Whether NISSAN engaged in unfair competition or unfair

28  deceptive acts or practices when it represented, through its advertising, warranties, and other

1    express representations, that the SUBJECT VEHICLES with Intelligent Keys had characteristics

2    that they did not have, concealed the defect, failed to take action to notify the CLASS of the

3    defect, and/or failed to recall them for repair or to supply funds to fix them;

4                  •      Whether NISSAN represented that the SUBJECT VEHICLES'

5    Intelligent Key systems were of a particular standard, quality or grade when they were of another;

6                  •      Whether NISSAN represented that the SUBJECT VEHICLES'

7    Intelligent Key systems had characteristics, uses or benefits that they did not have;

8                  •      Whether NISSAN omitted or concealed material information

9    regarding the SUBJECT VEHICLES' Intelligent Key systems in its advertisements and other

10    communications to the public;

11                 •      Whether NISSAN intended and designed the acts and practices

12    described in this Complaint to result in the sale of motor vehicles with Intelligent Key systems to

13    the consuming public;

14                 •      Whether NISSAN has accepted and retained the profits and benefits

15    derived from its conduct;

16                 •      Whether Plaintiffs and the CLASS are entitled to damages in the

17    form of a fund for payment or reimbursement of the costs of correcting the defect, or otherwise;

18                 •      Whether NISSAN should be declared financially responsible for

19    notifying all Class Members of the defective nature of the SUBJECT VEHICLES, of the

20    vehicles' FMVSS 114 non-compliance, and for the costs and expenses of recall, or retrofit of the

21    SUBJECT VEHICLES; and

22                 •      Whether Plaintiffs and the CLASS are entitled to injunctive relief.

23         39.      Plaintiffs will fairly and adequately represent and protect the interests of

24    the CLASS, as required by Fed. R. Civ. P. 23(a)(4), in that they have no interests that are

25    antagonistic to or in conflict with those they seek to represent. Plaintiffs have retained counsel

26    with substantial experience in prosecuting nationwide consumer class actions, including actions

27    involving defective products, including automobiles. Plaintiffs and their counsel are committed

28    to vigorously prosecuting this action on behalf of the Plaintiffs and the CLASS.

40.     In view of the complexity of the issues and the expense that an individual Plaintiff would incur if he or she attempted to obtain relief from a large, transnational corporation such as NISSAN, the separate claims of individual Class Members are monetarily insufficient to support separate actions. Because of the small size of the individual Class Members' claims, few, if any, Class Members could afford to seek legal redress for the wrongs complained of in this Complaint.  A class action is therefore superior to other available methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23(b)(3).

41.     The CLASS is readily definable, and prosecution as a class action will eliminate the possibility of repetitious litigation and will provide redress for claims too small to support the expense of individual, complex litigation.  No difficulties will be encountered in management of a class action.  Absent a class action, Class Members will continue to suffer losses, NISSAN's violations of law will be allowed to proceed without remedy, and NISSAN will retain millions of dollars received as a result of its wrongdoing. In addition, without a class action, the SUBJECT VEHICLES will remain on the road in their dangerously defective condition unbeknownst to the CLASS, thereby threatening the lives of Class Members, their families, and anyone else who is traveling in or around the SUBJECT VEHICLES which can roll when their operators leave them reasonably believing them to be in park.  A class action therefore provides a fair and efficient method for adjudicating this controversy.

42.     The prosecution of separate claims by individual Class Members would create a risk of inconsistent or varying adjudications with respect to millions of individual Class Members, which would, as a practical matter, dispose of the interests of the Class Members not parties to those separate actions or would substantially impair or impede their ability to protect their interests and enforce their rights.

43.     Because NISSAN has acted and failed to act on grounds generally applicable to Plaintiffs and the CLASS, providing final injunctive, declaratory, or other equitable relief to the CLASS as a whole within the meaning of Fed. R. Civ. P. 23(b)(2), is appropriate.

1

**CAUSES OF ACTION**

2

**FIRST CAUSE OF ACTION**
**(Breach of Express Warranty for the entire CLASS)**

3

4          44.     Plaintiffs hereby incorporate by reference the previous allegations of this

5    Complaint, as if fully set forth herein.

6          45.     NISSAN expressly warrants the SUBJECT VEHICLES to be free of

7    defects at the time of delivery, which are express warranties within the meaning of § 2-313 of the

8    Uniform Commercial Code.

9          46.     NISSAN breached its express warranties by offering for sale, and selling as

10    safe, SUBJECT VEHICLES that are, by design, defective and unsafe and likely to cause serious

11    injury or death to Plaintiffs and members of the CLASS.

12          47.     Through the filing of this complaint, Plaintiffs provide NISSAN with

13    reasonable notice of the alleged breach.  NISSAN also has constructive and actual notice of its

14    breach due to its awareness of the defect in SUBJECT VEHICLES' KITSI due to the Intelligent

15    Key system it has employed.

16          48.     Plaintiffs and members of the CLASS either purchased or leased their

17    SUBJECT VEHICLES from NISSAN or from an agent of NISSAN.  Due to the inherently

18    defective and dangerous nature of the SUBJECT VEHICLES, any and all warranties cover the

19    current owners or lessees of SUBJECT VEHICLES.

20          49.     As a direct and proximate result of NISSAN's breach of express warranty,

21    Plaintiffs and the CLASS have suffered actual damages and are threatened with irreparable harm

22    by undue risk of physical injuries or death.

23          50.     Plaintiffs, on behalf of themselves and all others similarly situated, demand

24    judgment against NISSAN for compensatory damages for themselves and each member of the

25    CLASS in an amount to be proven at trial, plus attorneys' fees, interest and costs.

26

27

28

1
2

**SECOND CAUSE OF ACTION**
**(Breach of Implied Warranty for the entire CLASS)**

3       51.     Plaintiffs hereby incorporate by reference the previous allegations of this

4   Complaint, as if fully set forth herein.

5       52.     NISSAN is a merchant pursuant to § 2-314 of the Uniform Commercial

6   Code.

7       53.     NISSAN impliedly warrants at the time of delivery that the SUBJECT

8   VEHICLES, which they designed, manufactured and sold to Plaintiffs and the CLASS, are

9   merchantable and fit for their ordinary use, are not otherwise injurious to consumers, and come

10  with adequate safety warnings.

11      54.     Because of their undisclosed unreasonably dangerous non-compliance with

12  FMVSS 114, *e.g.*, by having a KITSI which allows the driver to turn off the engine, remove the

13  key  and exit the vehicle when it is not in the latched park position, the SUBJECT VEHICLES are

14  unsafe, unmerchantable, and unfit for their ordinary use when sold, and threaten injury to

15  Plaintiffs and members of the CLASS.

16      55.     As a direct and proximate result of NISSAN's breach of implied warranty,

17  Plaintiffs and the CLASS have suffered actual damages and are threatened with irreparable harm

18  by undue risk of physical injuries or death.

19      56.     Plaintiffs, on behalf of themselves and all others similarly situated, demand

20  judgment against NISSAN for compensatory damages for themselves and each member of the

21  CLASS in an amount to be proven at trial, plus attorneys' fees, interest and costs.

22
23

**THIRD CAUSE OF ACTION**
**(Violation Of State Consumer Protection Statutes for the entire CLASS)**

24      57.     Plaintiffs incorporate by reference all previous allegations of this

25  Complaint, as if fully set forth herein.

26      58.     NISSAN engaged in unfair competition or unfair or deceptive acts or

27  practices in or affecting commerce in violation of any and all state consumer fraud and consumer

28

1    protection statutes when it represented, through its advertising, warranties, and other express

2    representations, that the SUBJECT VEHICLES had benefits or characteristics that they did not

3    actually have. NISSAN further violated state consumer protection statutes when it falsely

4    represented that the SUBJECT VEHICLES were of a particular standard or quality when they

5    were not. Finally, NISSAN violated state consumer protection statutes when it advertised the

6    SUBJECT VEHICLES with the intent not to sell or lease them as advertised, and when, in so

7    doing, it concealed and suppressed facts material to the true characteristics, standards, and quality

8    of these products.

9            59.    NISSAN's deceptive practices were specifically designed and intended to

10   induce Plaintiffs and the CLASS to buy or lease SUBJECT VEHICLES.

11           60.    To this day, NISSAN continues to engage in unlawful practices in violation

12   of state consumer protection statutes.

13           61.    As a direct and proximate result of NISSAN's unfair methods of

14   competition and unfair or deceptive acts or practices, Plaintiffs and the CLASS have suffered

15   actual damages and members of the CLASS are threatened with irreparable harm by undue risk of

16   physical injuries or death.

17           62.    Plaintiffs, on behalf of themselves and for all others similarly situated,

18   demand judgment against NISSAN, under the state or states' consumer protection statutes that

19   this Court selects through its choice of law analysis under *Phillips Petroleum Co. v. Shutts*,

20   472 U.S. 797 (1985), for relief in the form of, without limitation, repair or retrofitting of the

21   subject transmissions, at defendant's expense, to correct the defect; institution of a constructive

22   trust; restitution of NISSAN's unjust enrichment; and/or disgorgement of funds paid by Plaintiffs

23   and the CLASS to NISSAN to buy or lease the SUBJECT VEHICLES. Plaintiffs also demand

24   judgment against NISSAN for actual and compensatory damages for themselves and the CLASS

25   for the reasonable costs of repair and correction, and/or the diminution in value of the SUBJECT

26   VEHICLES, in an amount to be proven at trial; punitive/exemplary damages for the CLASS as a

27   whole; plus attorneys' fees, interest and costs.

28

**FOURTH CAUSE OF ACTION**
**(Restitution/Disgorgement for Unjust Enrichment for the entire CLASS)**

63.     Plaintiffs incorporate by reference all preceding allegations of this Complaint, as if fully set forth herein.

64.     As the intended and expected result of its conscious wrongdoing, NISSAN profited and benefited from the purchase and leasing of SUBJECT VEHICLES.

65.     Defendant has voluntarily accepted and retained these profits and benefits, derived from the Plaintiffs and the CLASS, with full knowledge and awareness that, as a result of Defendant's fraud and other conscious and intentional wrongdoing, Plaintiffs and the CLASS were not receiving products of the quality, nature, fitness, or value that had been represented by Defendant or that Plaintiffs and the CLASS, as reasonable consumers, expected.

66.     By virtue of the conscious wrongdoing alleged in this Complaint, Defendant has been unjustly enriched at the expense of the Plaintiffs and the CLASS, who are entitled to in equity, and hereby seek, the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

**FIFTH CAUSE OF ACTION**
**(Product Liability Claims as to the Taylor Plaintiffs Only)**

67.     Pursuant to L.S.A.R.S. § 9:2800.56 - § 9:2800.57, Plaintiffs allege design defect and failure to warn claims against NISSAN for the reasons set forth more fully below.

68.     The Taylors own a 2009 Nissan Murano (VIN No. JN8A218U39W012620) which contains the defect.

69.     On August 27, 2008, Mrs. Taylor pulled into a restaurant in her 2009 Nissan Murano, turned off the engine, removed the transponder from the vehicle's slot/holster, and got out of the car to open the rear door on the driver's side from which she retrieved a package.  She was then about to close the rear door on the driver's side and return to the front

1  driver's door to get a soda, when the car began to move backwards.  Mrs. Taylor attempted to re-

2  enter the car from the open front driver's door, but the car's door caught her, and she was dragged

3  by the vehicle, severely crushing her foot.

4         70.   Plaintiff Clarence Taylor witnessed the entire accident from his seat by the

5  window in the restaurant.  Upon witnessing the car move backwards and drag Mrs. Taylor,

6  Mr. Taylor rushed out immediately to assist.  As he was rushing out to assist, he saw the car roll

7  over Mrs. Taylor's foot and rest itself on her right calf, where it stopped.  Seeing that the car had

8  stopped and was now sitting on top of  Mrs. Taylor, Mr. Taylor took the key that was in

9  Mrs. Taylor's hand, entered the car, placed the key into the ignition, started the car, put it into

10  gear, and drove it carefully off Mrs. Taylor's leg.

11         71.   As result of her injuries, Mrs. Taylor can no longer work and must undergo

12  ongoing physical therapy.  As a result of the accident, and Mrs. Taylor's injuries, Mr. Taylor has

13  suffered a loss of consortium.

14         72.   Defendant NISSAN designed, engineered, manufactured, tested,

15  assembled, marketed, advertised, sold and/or distributed the 2009 Nissan Murano driven by

16  Mrs. Taylor.

17         73.   Defendant NISSAN is liable to the Taylors because the 2009 Nissan

18  Murano driven by Mrs. Taylor was defective and unreasonably dangerous for normal use due to

19  its defective design, marketing, advertising, testing, sale, and service and due to NISSAN's

20  failure to provide adequate warnings of the substantial dangers known or knowable at the time of

21  the 2009 Nissan Murano's design, engineering, manufacturing, testing, assembly, marketing,

22  advertising, inspection, maintenance, sale, service and/or distribution, up to the time of the

23  incident.

24         74.   Defendant NISSAN designed, engineered, manufactured, tested,

25  assembled, marketed, advertised, inspected, maintained, sold, distributed, and placed on the

26  market and in the stream of commerce a defective product, the 2009 Nissan Murano driven by

27  Mrs. Taylor, unreasonably dangerous to the consumer, knowing that the product would reach and

28

1    did reach the ultimate consumer without substantial change in the defective condition it was in

2    from the date when it left each Defendant NISSAN's control.

3          75.    Defendant NISSAN knew or should have known that the ultimate users or

4    consumers of this product would not, and could not, inspect the vehicles so as to discover the

5    non-obvious defect as described herein.  The 2009 Nissan Murano driven by Mrs. Taylor was

6    defective when it left the control of Defendant NISSAN.

7          76.    Defendant NISSAN knew or should have known of the substantial dangers

8    involved in the reasonably foreseeable use of the 2009 Nissan Murano driven by Mrs. Taylor,

9    whose defective design and lack of warnings allowed it to be turned off in gear, in violation of

10   FMVSS 114, and allowed its "key" to be removed when the vehicle was turned off and it was not

11   in park.

12         77.    The Taylors were reasonably foreseeable users of the 2009 Nissan Murano.

13         78.    The 2009 Nissan Murano driven by Mrs. Taylor, was, at the time of

14   Mrs. Taylor's injuries, being used in the manner intended by Defendant NISSAN, and in a

15   manner that was reasonably foreseeable by Defendant NISSAN as involving a substantial danger

16   not readily apparent if adequate warnings of the danger were not given.

17         79.    Alternative designs to correct the non-compliant 2009 Nissan Murano

18   driven by Mrs. Taylor are not only feasible, but are currently utilized by Defendant NISSAN's

19   competitors.  Smart Key systems on competitors comply with FMVSS 114 by integrating a

20   solenoid into the transponder holster slot which locks the key into the slot unless the vehicle is

21   turned off and is in park or do not allow the vehicle to be turned off unless it is in park.  The cost

22   of correcting the design of the Intelligent Key system in the 2009 Nissan Murano driven by

23   Mrs. Taylor, and making it non-defective and FMVSS 114 compliant, was and is minimal,

24   especially in comparison to the harm and threat of irreparable injury suffered by Plaintiffs.

25         80.    The adoption of an alternative design would have had no effect on the 2009

26   Nissan Murano's overall utility.

27         81.    The burden on Defendant NISSAN to adopt an alternative design is

28   outweighed by the vehicle's unreasonably dangerous propensity to cause serious personal injuries

82.     Mrs. Taylor's physical injuries are the legal and proximate result of Defendant NISSAN's failure to adopt reasonably feasible alternative designs to eliminate the defect in the vehicle and Defendant NISSAN'S failure to provide adequate warnings of the risks of substantial harm associated with the foreseeable use of the 2009 Nissan Murano.

83.     The Taylors suffered compensatory and general damages in excess of the jurisdictional minimum of this Court as a result.  As a result, Defendant NISSAN is liable to the Taylors.

### SIXTH CAUSE OF ACTION
### (Negligence Claim as to Plaintiff Clarence Taylor Only)
### (*Lejeune* Bystander)

84.     For all relevant time periods herein, Plaintiff Clarence Taylor is the lawful spouse of Plaintiff Jeannette Francis Taylor.Plaintiff Clarence Taylor and Plaintiff Jeanette

85.     Francis Taylor own a 2009 Nissan Murano (VIN No. JN8A218U39W012620) which contains the defect.

86.     On August 27, 2008, Mr. Taylor was sitting in a restaurant, looking out at the window, when he saw Mrs. Taylor pull up to the restaurant in their 2009 Nissan Murano and witnessed the following: Mrs. Taylor turned off the engine of the car and got out of the car to open the rear door on the driver's side from which she retrieved a package.  She attempted to return to the front driver's door, when the car began to move backwards.  Mrs. Taylor tried to re-enter the car from the open front driver's door, but was caught by the door and dragged.  Mrs. Taylor's foot was severely crushed.

87.     Plaintiff Clarence Taylor witnessed the entire accident from his seat by the window in the restaurant.  Upon witnessing the car move backwards and drag Mrs. Taylor, Mr. Taylor rushed out immediately to assist.  As he was rushing out to assist, he saw the car roll over Mrs. Taylor's foot and rest itself on her right calf, where it stopped.  Seeing that the car had stopped and was now sitting on top of Mrs. Taylor, Mr. Taylor took the key that was in Mrs. Taylor's hand, entered the car, placed the key into the ignition, started the car, put it into gear, and drove it carefully off Mrs. Taylor's leg.

88. As a result of witnessing his beloved wife being dragged and then partially run-over by their 2009 Nissan Murano, Mr. Taylor suffered serious mental anguish and emotional distress as described herein.

89. Defendant NISSAN had a duty to design, engineer, manufacture, test, assemble, market, advertise, sell and/or distribute a vehicle to the Taylors that complied with all applicable federal motor vehicle safety standards, in particular FMVSS 114.

90. Rather than carry out its duty, Defendant NISSAN breached that duty by the following actions and/or omissions:

a. By failing to do what it should have under the circumstances;

b. By failing to design, engineer, manufacture, test, assemble, market, advertise, sell and/or distribute a vehicle to the Taylors that complied with all applicable federal motor vehicle safety standards, in particular FMVSS 114;

c. By failing to provide any warnings to the Taylors that their 2009 Nissan Murano could be turned off in gear, in violation of FMVSS 114, and have its "key" removed when the vehicle is turned off and not in latched park;

d. Any and all other acts of negligence which may become known in the course of discovery or at the trial of this matter.

91. Defendant NISSAN's actions and/or omissions were a direct and proximate cause of the serious mental anguish and emotional distress suffered by Plaintiff Clarence Taylor as a result of witnessing his beloved wife, Plaintiff Jeannette Taylor, being dragged and severely injured by their 2009 Nissan Murano.

92. Plaintiff Clarence Taylor's injuries are severe and debilitating. As a result of witnessing Plaintiff Jeanette Taylor dragged by the car and severely injured, Plaintiff Clarence Taylor has suffered stress, anxiety, nervousness, sleeplessness, anger, and sadness, and replays the accident in his mind regularly.

93. As a consequence of the negligence of Defendant NISSAN, Defendant NISSAN is responsible for all damages suffered by Plaintiff Clarence Taylor recoverable under law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray that the Court enter judgment against NISSAN and in favor of the Plaintiffs and the CLASS, and to award the following relief:

        A.      Certification of the proposed CLASS;

        B.      A preliminary and permanent injunction ordering NISSAN to create a fund available to Class Members to remedy the KITSI defect in the SUBJECT VEHICLES, and all other available equitable relief;

        C.      A declaration that the SUBJECT VEHICLES are unreasonably dangerous and defective, and that NISSAN is financially responsible for notifying all Class Members of the defective SUBJECT VEHICLES and for the costs and expenses of repair and retrofitting of all such SUBJECT VEHICLES;

        D.      A preliminary and permanent injunction ordering NISSAN to bear the cost of notice to Class Members, as approved by the Court, of the availability of funds to remedy the defect and/or warning of the defect to all owners and lessees of the SUBJECT VEHICLES;

        E.      An award of compensatory damages for the acts complained of herein, in an amount to be proven at trial;

        F.      An award of costs and attorneys' fees, as allowed by law, and/or from a common fund created hereby;

        G.      An award of punitive damages for NISSAN'S  intentional, willful, and knowing acts; and

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

H.     Such other or further relief as may be appropriate under the circumstances under the Court's exercise of its equitable jurisdiction and inherent authority.

Dated: August 10, 2009                    Respectfully submitted,

                                          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

                                          By: _____
                                                        Scott P. Nealey

                                          Elizabeth J. Cabraser  (SBN083151)
                                          Scott P. Nealey  (SBN193062)
                                          Cecilia Han  (SBN 235640)
                                          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                          275 Battery Street, 30th Floor
                                          San Francisco, CA  94111-3339
                                          Telephone:     (415) 956-1000
                                          Facsimile:     (415) 956-1008

                                          DAWN M. BARRIOS (#2821)
                                          BRUCE S. KINGSDORF (#7403)
                                          BARRIOS, KINGSDORF & CASTEIX, L.L.P.
                                          701 Poydras Street, Suite 3650
                                          New Orleans, LA  70139-3650
                                          Telephone:     (504) 524-3300
                                          Facsimile:     (504) 524-3313

                                          J. VAN ROBICHAUX, JR.
                                          ROBICHAUX LAW FIRM
                                          P.O. Box 792500
                                          New Orleans, LA 70179
                                          Telephone:     (504) 525-3300
                                          Facsimile:     (504) 282-6298

                                          *Attorneys for Plaintiffs and Class*

819527.7                              - 25 -                              CASE NO. _____

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1

**JURY TRIAL DEMAND**

2

Plaintiffs hereby demand a jury trial for all claims so triable.

3 Dated: August 10, 2009                    Respectfully submitted,

4

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

5

6 By:_____
                          Scott P. Nealey

7

8 Elizabeth J. Cabraser  (SBN083151)
Scott P. Nealey  (SBN193062)
Cecilia Han  (SBN 235640)

9 LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor

10 San Francisco, CA  94111-3339
Telephone:    (415) 956-1000

11 Facsimile:    (415) 956-1008

12 DAWN M. BARRIOS (#2821)
BRUCE S. KINGSDORF (#7403)

13 BARRIOS, KINGSDORF & CASTEIX, L.L.P.
701 Poydras Street, Suite 3650

14 New Orleans, LA  70139-3650
Telephone:    (504) 524-3300

15 Facsimile:    (504) 524-3313

16 J. VAN ROBICHAUX, JR.
ROBICHAUX LAW FIRM

17 P.O. Box 792500
New Orleans, LA 70179

18 Telephone:    (504) 525-3300
Facsimile:    (504) 282-6298

19

20 *Attorneys for Plaintiffs and Class*

21

22

23

24

25

26

27

28