1  JOHN H. BEISNER (Admitted *Pro Hac Vice*)
   JESSICA D. MILLER (To Be Admitted *Pro Hac Vice*)
2  NINA H. RAMOS (To Be Admitted *Pro Hac Vice*)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
3  1440 New York Avenue NW
   Washington, DC 20005
4  Telephone: (202) 371-7000
   Email: John.Beisner@skadden.com
5
6  RICHARD J. ZUROMSKI, JR. (Bar No. 227569)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
7  Four Embarcadero Center, Suite 3800
   San Francisco, California 94111-4144
8  Telephone: (415) 984-6400
   Facsimile: (415) 984-2698
9  Email: Richard.Zuromski@skadden.com
10
11 Attorneys For Defendant Nissan North America, Inc.

11         **IN THE UNITED STATES DISTRICT COURT**
12          **NORTHERN DISTRICT OF CALIFORNIA**
                    **OAKLAND DIVISION**
13

14  – – – – – – – – – – – – – – – – – – – –  )
                                              )
15  HELEN TARAGAN, FRANCES                    )
    JEANETTE TAYLOR, CLARENCE                 )
16  TAYLOR, on behalf of themselves and all   )
    others similarly situated,                )
17                                            )   CASE NO:  CV09-3660
            Plaintiffs,                       )
18                                            )
                                              )   **MEMORANDUM OF POINTS AND**
19   v.                                       )   **AUTHORITIES IN SUPPORT OF**
                                              )   **DEFENDANT'S MOTION TO DISMISS**
20  NISSAN MOTOR CO., LTD,                    )   **PLAINTIFFS' COMPLAINT FOR**
                                              )   **DAMAGES AND EQUITABLE RELIEF**
21                                            )
                                              )   **Filed Under Separate Cover:**
22                                            )
                                              )   **(1) REQUEST FOR JUDICIAL**
23                                            )   **NOTICE; and**
                                              )
24                                            )   **(2) DECLARATION OF JOHN H.**
                                              )   **BEISNER IN SUPPORT OF MOTION**
25                                            )   **TO DISMISS AND REQUEST FOR**
                                              )   **JUDICIAL NOTICE**
26                                            )
                                              )   Date:  December 8, 2009
27          Defendant.                        )   Time: 1:00 PM
    – – – – – – – – – – – – – – – – – – – –   )   Before: JUDGE SAUNDRA BROWN
28                                            )   ARMSTRONG

# **TABLE OF CONTENTS**

**PAGE**

I.   ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY ARE BASED ON THE FALSE PREMISE THAT NISSAN VEHICLES EQUIPPED WITH AN "INTELLIGENT KEY" SYSTEM DO NOT SATISFY FEDERAL SAFETY REGULATIONS. ...................................................................................................... 7

II.   PLAINTIFF TARAGAN'S CLAIMS FAIL UNDER CALIFORNIA LAW................... 9

    A.   Plaintiff Taragan's Claims Fail Because She Has Not Alleged Any Injury........... 9

    B.   Plaintiff Taragan's Claims Fail For A Host Of Other Reasons As Well. .............11

        1.   Plaintiff Taragan Cannot State A Claim For Breach Of Express Warranty Under California Law (Count I)................................................11

        2.   Plaintiff Taragan Cannot State A Claim For Breach Of Implied Warranty Under California Law (Count II). .............................................17

        3.   Plaintiff Taragan Cannot State A Statutory Consumer Protection Claim Under California Law (Count III). ...................................................19

        4.   Plaintiff Taragan Cannot State A Claim For Unjust Enrichment Under California Law (Count IV). ...........................................................21

III.   THE TAYLOR PLAINTIFFS' CONSUMER FRAUD AND UNJUST ENRICHMENT CLAIMS (COUNTS III–IV) ARE SUBSUMED BY THE LOUISIANA PRODUCT LIABILITY ACT...................................................................22

**Def. Nissan's Mem. ISO Motion to Dismiss**                    **Case No: CV09-3660**

**TABLE OF AUTHORITIES**

**PAGE**

**FEDERAL CASES**

*Anunziato v. eMachines, Inc.*,
   402 F. Supp. 2d 1133 (C.D. Cal. 2005)...........................................................................18

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ...................................................................................6, 7, 8

*Ayat v. Societe Air Fr.*,
   No. 06-01574, 2007 WL 1100315 (N.D. Cal. Apr. 11, 2007) .............................................15

*Bassiri v. Xerox Corp.*,
   463 F.3d 927 (9th Cir. 2006) ........................................................................................ 8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................... 6

*Borskey v. Medtronics, Inc.*,
   No. 94-3402, No. 95-1733, No. 95-2039, 1998 WL 122602 (E.D. La. Mar. 18, 1998).......23

*In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*,
   288 F.3d 1012 (7th Cir. 2002) ..................................................................................... 9

*Brothers v. Hewlett-Packard Co.*,
   No. 06-02254, 2007 U.S.Dist. LEXIS 13155 (N.D. Cal. Feb. 12, 2007) .....................12, 13

*Carlson v. GMC*,
   883 F.2d 287 (4th Cir. 1989) .......................................................................................17

*Carr v. Cimino*,
   No. 4:01 CV 01258, 2001 U.S. Dist. LEXIS 23886 (N.D. Ohio Oct. 22, 2001) ...............3, 8

*Cellars v. Pac. Coast Packaging, Inc.*,
   No. C 99-1240 CRB, 1999 U.S. Dist. LEXIS 19810 (N.D. Cal. Dec. 22, 1999)................15

*Cheeks v. Bayer Corp.*,
   No. 03-132, 2003 WL 1748460 (E.D. La. Mar. 28, 2003)...............................................22

*Crouch v. General Electric Co.*,
   699 F. Supp. 585 (S.D. Miss. 1988)..............................................................................13

*DeMarco v. DepoTech Corp.*,
   149 F. Supp. 2d 1212 (S.D. Cal. 2001) .......................................................................2, 8

*In re Ford Motor Co. Ignition Switch Products Litigation*,
   39 F. Supp. 2d 458 (D.N.J. 1999)..................................................................................19

*In re GMC Anti-Lock Brake Products Liability Litigation*,
   966 F. Supp. 1525 (E.D. Mo. 1997)...........................................................................13, 17

*Grant v. Cohen*,
   630 F. Supp. 513 (E.D. Pa. 1985) ................................................................................. 1

*Graphic Arts System v. Scitex America Corp.*,
   No. CV-92-6997-WMB, 1993 U.S. Dist. LEXIS 21052 (C.D. Cal. May 25, 1993)............. 5

*Grenier v. Medical Engineering Corp.*,
   99 F. Supp. 2d 759 (W.D. La. 2000)..............................................................................22

*Hoey v. Sony Electrics Inc.*,
   515 F. Supp. 2d 1099 (N.D. Cal. 2007) ........................................................................12

ii

**Def. Nissan's Mem. ISO Motion to Dismiss**                    **Case No: CV09-3660**

*Jefferson v. Lead Industry Association,*
106 F.3d 1245 (5th Cir. 1997) .......................................................................23

*Johnson v. Mitsubishi Digital Electrics America, Inc.,*
578 F. Supp. 2d 1229 (C.D. Cal. 2008)....................................................10, 21

*Kramer v. Time Warner, Inc.,*
937 F.2d 767 (2d Cir. 1991) ............................................................................ 8

*Mauro v. GMC,*
No. S-07-892 FCD GGH, 2008 U.S.Dist. LEXIS 93897 (E.D. Cal. July 14, 2008)............10

*Meridian Project System, Inc. v. Hardin Construction Co.,*
404 F. Supp. 2d 1214 (E.D. Cal. 2005).........................................................20

*O'Shea v. Littleton,*
414 U.S. 488 (1974)......................................................................................... 1

*Ontario Hydro v. Zallea System, Inc.,*
569 F. Supp. 1261  (D. Del. 1983)................................................................13

*Paulo v. Bepex Corp.,*
792 F.2d 894 (9th Cir. 1986) ........................................................................... 9

*Sanders v. Apple, Inc.,*
No. C 08-1713 JF (PVT), 2009 U.S.Dist. LEXIS 6676 (N.D. Cal. Jan. 15, 2009)........12, 14

*Snyder v. Ford Motor Co.,*
No. C-06-0497, 2006 U.S.Dist. LEXIS 63646 (N.D. Cal. Aug. 24, 2006)....................20

*Stationary Eng'rs Local 39 Health & Welfare Trust Fund v. Philip Morris, Inc.,*
No. C-97-01519, 1998 U.S. Dist. LEXIS 8302 (N.D. Cal. Apr. 30, 1998) ......................21

*Stearns v. Select Comfort Retail Corp.,*
No. 08-2746, 2009 WL 1635931 (N.D. Cal. June 5, 2009) .........................................12, 14

*Strigliabotti v. Franklin Resources, Inc.,*
No. C 04-00883 SI, 2005 U.S.Dist. LEXIS 9625 (N.D. Cal. Mar. 7, 2005)......................20

*Udall v. Tallman,*
380 U.S. 1 (U.S. 1965)..................................................................................... 8

*United States v. Ritchie,*
342 F.3d 903 (9th Cir.  2003) ......................................................................8, 12

*Vess v. Ciba-Geigy,*
317 F.3d 1097 (9th Cir. 2003) ................................................................6, 7, 20

*Vestal v. Shiley Inc.,*
No. SA CV 96-1205-GLT (EEx), 1997 U.S.Dist. LEXIS 23329 (C.D. Cal. Nov. 17,
1997) ................................................................................................................. 9

*Whitson v. Bumbo,*
No. C 07-05597 MHP, 2009 U.S.Dist. LEXIS 32282 (N.D. Cal. Apr. 15, 2009) ..............10

*Yu-Santos v. Ford Motor Co.,*
No. 1:06-CV-01773-AWI-DLB, 2009 U.S. Dist. LEXIS 41001 (E.D. Cal. May 13,
2009) ..............................................................................................................15

*Zaro v. Maserati North America, Inc.,*
No. 07-C-3565, 2007 U.S. Dist. LEXIS  90137 (N.D. Ill. Dec. 6, 2007)...........................16

1

**STATE CASES**

2

*All West Electrics, Inc. v. M-B-W, Inc.*,
    64 Cal. App. 4th 717 (Cal. App. 5th Dist. 1998).........................................................15, 18

3

*American Suzuki Motor Corp. v. Superior Court*,
    44 Cal. Rptr. 2d 526 (Cal. App. 2d Dist. 1995)........................................................10, 17

4

*Blanco v. Baxter Healthcare Corp.*,
    158 Cal. App. 4th 1039 (Cal. App. 4th Dist. 2008)........................................................15

5

*Cadlo v. Owens-Illinois, Inc.*,
    23 Cal. Rptr. 3d 1, 5 (Cal. App. 1st Dist. 2004)........................................................21

6

*Cosman v. Ford Motor Co.*,
    674 N.E.2d 61 (Ill. 1996).........................................................................................12

7

*Curl v. Volkswagen of America*,
    871 N.E.2d 1141 (Ohio 2007)................................................................................16

8

*Fieldstone Co. v. Briggs Plumbing Products, Inc.*,
    54 Cal. App. 4th 357 (Cal. App. 4th Dist. 1997).........................................................14

9

*Hole v. GMC*,
    442 N.Y.S.2d 638 (App. Div. 1981).......................................................................16

10

*Khan v. Shiley*,
    217 Cal. App. 3d 848 (Cal. App. 4th Dist. 1990)......................................................9, 10

11

*Mass. Mutual Life Insurance Co. v. Superior Court*,
    119 Cal. Rptr. 2d 190 (Cal. App. 4th Dist. 2002)........................................................19

12

*Osborne v. Subaru of America, Inc.*,
    198 Cal. App. 3d 646 (Cal. App. 3d Dist. 1988)......................................................9, 15

13

*Pollard v. Saxe & Yolles Development Co.*,
    525 P.2d 88 (Cal. 1974)..................................................................................14, 18

14

*Voth v. Chrysler Motor Corp.*,
    545 P.2d 371 (Kan. 1976).....................................................................................13

15

*Windham at Carmel Mountain Ranch Association v. Superior Court*,
    135 Cal. Rptr. 2d 834 (Cal. App. 4th Dist. 2003).........................................................18

16

*Zamora v. Shell Oil Co.*,
    55 Cal. App. 4th 204 (Cal. App. 4th Dist. 1997)...........................................................9

17

18

19

20

21

**FEDERAL REGULATIONS**

22

23

71 Fed. Reg. 17,752.........................................................................................2, 3, 8

71 Fed. Reg. 17,753 ...........................................................................................3

49 C.F.R. § 571.114 ........................................................................................2, 3

24

25

26

**STATE STATUTES**

27

Cal. Bus. & Prof. Code § 17200 ..........................................................................19

28

Cal. Bus. & Prof. Code § 17204 ..........................................................................20

Cal. Bus. & Prof. Code § 17500 ..........................................................................19

iv

Cal. Civ. Code § 1750 ..................................................................................19

Cal. Civ. Code § 1770 ..................................................................................19

Cal. Civ. Code § 1780 ..................................................................................19

Cal. Comm'l Code § 2314 ............................................................................17

Cal. Comm'l Code § 2607 .......................................................................14, 18

La. Rev. Stat. Ann. § 9:2800.52 ..................................................................22

La. Rev. Stat. Ann. § 9:2800.54 ..................................................................22

**Def. Nissan's Mem. ISO Motion to Dismiss**                                              **Case No: CV09-3660**

1
2
3
4
5
6
7
8

This case involves Nissan and Infiniti vehicles that use an electronic "Intelligent Key" system to enable activation of the vehicle's engine – rather than a traditional metal key. Plaintiffs allege that these vehicles do not comply with Federal Motor Vehicle Safety Standard No. 114 ("FMVSS No. 114") because it is possible to remove the electronic transponder (also referred to as a "fob") from the vehicle when the vehicle's transmission is not locked in "park." In fact, however, a compliance test conducted by the National Highway Traffic Safety Administration ("NHTSA") confirms that Nissan's "Intelligent Key" system *does* comply with FMVSS No. 114. Thus, the entire premise of plaintiffs' claims is demonstrably false.

9
10
11
12
13
14
15

Moreover, even if plaintiffs were correct that Nissan's vehicles do not comply with this federal standard, their claims would still suffer from several legal deficiencies. As set forth below, all of plaintiff Taragan's claims fail under California law because, *inter alia*, she has not alleged that she suffered any injury from the alleged defect. And the Taylor plaintiffs' claims for unjust enrichment and consumer fraud are barred under Louisiana law because the Louisiana Product Liability Act ("LPLA") provides the sole remedy for plaintiffs seeking damages based on the purchase of an allegedly defective product.[1]

16

## BACKGROUND

17
18
19
20
21

Plaintiffs' vehicles are equipped with an "Intelligent Key" system, which uses an electronic chip – rather than a traditional key – to enable the driver to activate the vehicle's starting mechanism. (Compl. ¶ 7.) According to plaintiffs, Nissan and Infiniti vehicles equipped with the "Intelligent Key" system "usually have a 'Start/Stop' button on the dashboard, rather than a key

22
23
24
25
26
27
28

---

[1]      Plaintiffs seek to assert their claims on behalf of nationwide or statewide classes. At a later point, Nissan will (if necessary) challenge certification of plaintiffs' proposed class(es). But at this juncture, the Court is first obliged to explore a threshold question: have the named plaintiffs, as a matter of law, pleaded valid causes of action against the defendant? If the named plaintiffs have failed this initial hurdle, further proceedings on class certification and other issues will be unnecessary. *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class"); *Grant v. Cohen*, 630 F. Supp. 513, 524 (E.D. Pa. 1985) (because named plaintiffs "failed to state a claim" against defendants, none of the proposed class representatives could "seek relief on behalf of himself or any other member of the class").

---

1   that must be turned to start the vehicle." (*Id.* ¶ 8.)  In addition, plaintiffs claim that these vehicles

2   have a "transponder (or 'fob') rather than a conventional metal key" that must be placed into a slot

3   in the dashboard before the "Start" button activates the ignition.  (*Id.* ¶ 9.)[2]

4          Plaintiffs claim that the "Intelligent Key" system included in their vehicles is defective in

5   that it "failed to comply with FMVSS 114," a NHTSA safety standard.  (*See, e.g.*, *id.* ¶ 25.)

6   According to plaintiffs, that standard requires automatic transmission vehicles to be designed in a

7   way that "prevent[s] removal of the key unless the transmission or transmission shift lever is

8   locked in 'park; or becomes locked in 'park' as a direct result of removing the key."  (*Id.* ¶ 3.)

9   Plaintiffs allege that Nissan's vehicles do not satisfy this standard because the "transponder" can

10  "be removed from the slot/holster" when the vehicle is not in park.  (*Id.* ¶ 12.)  Plaintiffs thus

11  contend that Nissan's sale of the vehicles constitutes a "per se violation of state and federal

12  warranty law, breach of contract and consumer fraud" and that "Nissan has been unjustly enriched

13  by its illegal sale of" the cars at issue.  (*Id.* ¶ 14.)

14         Contrary to plaintiffs' allegations, however, NHTSA has made it clear that vehicles like

15  those here ***do*** comply with FMVSS No. 114.  Effective September 1, 2007, FMVSS No. 114 was

16  substantially amended to clarify its application with "respect to key-locking systems that employ

17  electronic codes to lock and unlock the vehicle, and to enable engine activation."  *See* 71 Fed. Reg.

18  17,752 (Apr. 7, 2006); 49 C.F.R. § 571.114.[3]  The requirements now state in relevant part:

19             S5.2 Rollaway prevention in vehicles equipped with transmissions
               with a "park" position.
20

21

22  ────────────────

    [2]      Plaintiffs' Complaint contains numerous factual inaccuracies regarding the "Intelligent
23  Key" system.  For example, contrary to plaintiffs' allegations in paragraphs 8-12, only a small
    percentage of vehicles equipped with the "Intelligent Key" system require the transponder to be
24  placed into a slot on the vehicle's dashboard to enable activation of the engine; in most vehicles,
    the transponder only needs to be present inside the vehicle.  Nissan does not address these factual
25  errors in this motion because the Court must accept plaintiffs' factual allegations as true when
    ruling on a motion to dismiss.  *See DeMarco v. Depotech Corp.*, 149 F. Supp. 2d 1212, 1217 (S.D.
26  Cal. 2001) ("When ruling on a motion to dismiss, the district court must accept all material factual
    allegations as true and construe them in the light most favorable to the non-moving party.").

27  [3]      Plaintiffs' complaint incorrectly cites to and quotes the old version of FMVSS No. 114.
28  (*See* Compl. ¶ 3 (citing FMVSS No. 114 S.4.2.1(a).)

**Def. Nissan's Mem. ISO Motion to Dismiss**                                    **Case No: CV09-3660**

1  S5.2.1 Except as specified in S5.2.3, the starting system required by
2  S5.1 must prevent key removal when tested according to the
   procedures in S6, unless the transmission or gear selection control is
   locked in "park" or becomes locked in "park" as a direct result of key
3  removal.[4]

4  49 C.F.R. § 571.114.  In addition, S4 of the standard defines the term "key" as:  "a physical device

5  *or an electronic code* which, when inserted into the starting system (by physical or electronic

6  means), enables the vehicle operator to activate the engine or motor."  *Id.* (emphasis added).

7  The 2007 amendment was adopted in order to take account of technological advances and

8  "better reflect the agency's interpretation of the existing requirements."  71 Fed. Reg. at 17,753.

9  As explained in the Preamble to the agency's Final Rule, NHTSA had previously issued several

10  Letters of Interpretation explaining "that the electronic code transmitted from a remote device to

11  the vehicle can be considered a 'key' for the purposes of FMVSS No. 114."  *Id.* at 17,752.

12  NHTSA further explained in these Letters of Interpretation that "systems using an electronic code

13  instead of [a] conventional key would satisfy the rollaway prevention provisions if the code

14  remained in the vehicle until the transmission gear is locked in the 'park' position."  *Id.* at 17,753.

15  Ultimately, the agency decided to amend the regulatory text "instead of continuing to rely on

16  interpretations, and possibly facing additional questions in the future."  *Id.*

17  The NHTSA letters referenced in the Preamble make clear that – even under the prior

18  regulatory language – the relevant inquiry under FMVSS No. 114 is whether the *electronic code*

19  can be removed from the vehicle when it is not in "park," not whether the transponder itself can be

20  removed.[5]  In an August 15, 2002 Letter of Interpretation, for example, NHTSA issued an opinion

21  that a car with a "Smart Key" ignition system that allowed the driver to activate the engine of his or

22

23  [4]      S5.2.3 allows manufacturers to provide an override of the key removal limitations under
   certain specified conditions.  *See* 49 C.F.R. § 571.114.  S5.1 provides that "[e]ach vehicle must
24  have a starting system which, whenever the key is removed from the starting system prevents:  (a)
   [t]he normal activation of the vehicle's engine or motor; and (b) [e]ither steering, or forward self-
25  mobility, of the vehicle, or both."  *Id.*  And S6 sets forth the conditions under which a vehicle must
   be tested for compliance with FMVSS No. 114.  *Id.*
26  [5]      As set forth in Section I, *infra*, "[c]ourts may . . . consider public records, matters of which
27  a court may take judicial notice, and *letter decisions of governmental agencies*" when ruling on a
   motion to dismiss.  *Carr v. Cimino*, No. 4:01 CV 01258, 2001 U.S. Dist. LEXIS 23886, at *12
28  (N.D. Ohio Oct. 22, 2001) (emphasis added).

3

**Def. Nissan's Mem. ISO Motion to Dismiss**                              **Case No: CV09-3660**

1  her vehicle by placing the "Smart Key" in the car for identification and then turning an ignition

2  switch knob complied with FMVSS No. 114.  *See* August 15, 2002 Letter, *available at*

3  http://isearch.nhtsa.gov/files/23564-3.drn.html (attached as Ex. 2 to Decl. of John H. Beisner

4  ("Beisner Decl.")).  According to the agency:

5              Standard No. 114 states that . . . the key-locking system required by
               [prior] S4.2 in each vehicle which has an automatic transmission
6              with a 'park' position shall, when tested under the procedures in
               [prior] S5.2, prevent removal of the key unless the transmission or
7              transmission shift lever is locked in 'park' or becomes locked in
               'park' as the direct result of removing the key. Your company's
8              'Smart Key system would be permitted by [prior] S4.2.1(a) because
               removal of the 'key'(identification code in the system) is
9              accomplished only when the locking device locks (steering column
               lock and immobilizer are locked), which happens only when the gear
10             lever is in park, and presumably locks the transmission in park.

11  *Id.*; *see also* Letter from Jacqueline Glassman (NHTSA Chief Counsel) to Kenneth Reed (May 27,

12  2003), *available at* http://isearch.nhtsa.gov/files/GF001689.html (attached as Ex. 3 to Beisner Decl.)

13  (explaining that for "systems using electronically coded cards or other means to enter an electronic

14  key code into the locking system," NHSTA has found that "the electronic code itself can be

15  considered the key" for purposes of compliance with FMVSS No. 114).  The 2007 amendments to

16  FMVSS No. 114 codified these interpretations of the standard.

17          In addition, earlier this year, NHTSA's Office of Vehicle Safety Compliance ("OVSC")

18  conducted a test of the Model Year ("MY") 2009 Nissan Altima and issued a report stating that the

19  vehicle's "Intelligent Key" system complies with FMVSS No. 114.[6]  *See* Final Report No. 114-

20  GTL-09-003, Safety Compliance Testing For FMVSS No. 114, July 20, 2009 ("NHTSA Report"),

21  *available at* http://nhthqnwws112.odi.nhtsa.dot.gov/acms/docservlet/Artemis/Public/OVSC/

22  2009/Test%20Reports/TRTR-640510-2009-001.pdf (attached as Ex. 4 to Beisner Decl.) ("A model

23  year 2009 Nissan Altima passenger car was subjected to Federal Motor Vehicle Safety Standard

24  (FMVSS) No. 114 testing to determine if the vehicle was in compliance with the requirements of

25  the standard.").  NHTSA's report confirms that the "Intelligent Key" ignition system used in the

26  Nissan vehicle complies with FMVSS No. 114 because the vehicle's "starting system prevents key

27  _____

[6]        There are no relevant differences between the Intelligent Key system in the 2009 Altima
28  and the Intelligent Key systems in other Nissan and Infiniti vehicles.

4

**Def. Nissan's Mem. ISO Motion to Dismiss**                    **Case No: CV09-3660**

1   removal in ALL gear selection control positions except 'park.'" *Id.* at 8.  As the report explains,

2   this is because even though "[t]he physical key device can be removed from [the] vehicle" without

3   the vehicle being in "park," the "stored key code stays in memory until [the] vehicle is in park,

4   turned off, and the door is opened." *Id.*  In other words, activation of the engine is enabled by an

5   electronic code (not the transponder itself) and that electronic code stays in the vehicle after the

6   engine is turned off – even if the transponder is removed – until the driver puts the transmission

7   into the "park" position.  Indeed, the Nissan "Intelligent Key" system will keep the electronic code

8   in the vehicle's memory until a door is opened, even if the transmission is locked in "park." *See*

9   NHTSA Report at 4-5.  In addition, as long as the electronic code remains in the vehicle's memory,

10  a driver who opens the door to exit the vehicle without putting the transmission into the "park"

11  position will receive an auditory warning (similar to the sound heard when a traditional metal key

12  is left in the ignition cylinder).[7]  *See id.* at 7.  For these reasons, the fact that the transponder can be

13  removed from the car even when it is not in "park" does not affect FMVSS No. 114 compliance.

14  *Id.* at 8.

15  **Plaintiff Helen Taragan**

16          Plaintiff Taragan is a California resident who claims that she was injured as a result of

17  Nissan's conduct because the MY 2009 Nissan Maxima she leased "contains the alleged defect."

18  (Compl. ¶ 18.)  Ms. Taragan contracted to lease her vehicle on August 18, 2008 from Tracy Nissan,

19  an independent authorized Nissan dealer.  (*See* Motor Vehicle Lease Agreement, Aug. 16, 2008

20  ("Taragan Lease") (attached as Ex. 5 to Beisner Decl.).)[8]  Ms. Taragan does not contend that her

21  car was ever involved in a "rollaway accident" or that she has ever exited her vehicle while it was

22  not in "park."

23

24  _____

25  [7]        This feature is required by S5.1.3 of FMVSS No. 114.

26  [8]        Where, as here, a plaintiff alleges warranty or other contract-based claims arising from the
    purchase of a product, the written sales – or, in this case, lease – agreement is considered "essential
27  to the [c]omplaint" and may be considered on a motion to dismiss even where plaintiff has not
    attached it to the pleadings.  *Graphic Arts Sys. v. Scitex Am. Corp.*, No. CV-92-6997-WMB, 1993
28  U.S. Dist. LEXIS 21052, at *12-13 (C.D. Cal. May 25, 1993).

**Def. Nissan's Mem. ISO Motion to Dismiss**                          **Case No: CV09-3660**

**Plaintiffs Frances Jeanette and Clarence Taylor**

Plaintiffs Frances Jeanette Taylor and Clarence Taylor are Louisiana residents and owners of a MY 2009 Nissan Murano.  The Taylors allege that Ms. Taylor's car rolled backward after she "turned off the engine, removed the transponder from the vehicle's slot/holster, and got out of the car to open the rear door on the driver's side." (Compl. ¶ 68.)  Ms. Taylor alleges that her foot was crushed by the rolling car and, as a result, she "can no longer work and must undergo physical therapy.  (*Id*. ¶¶ 70-71.)  In addition, Mr. Taylor asserts a separate "*Lejeune* Bystander" claim under Louisiana law, alleging that "[a]s a result of witnessing" Ms. Taylor's alleged injury, he "has suffered stress anxiety, nervousness, sleeplessness, anger, and sadness, and replays the accident in his mind regularly." (*Id*. ¶¶ 84, 92.)

## ARGUMENT

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  In scrutinizing the complaint for plausibility, a court looks for factual allegations, not legal conclusions.  While "[w]ell-pleaded factual content is accepted as true for purposes of determining whether the complaint states a plausible claim for relief," the court should not accept "legal conclusions couched as factual allegations" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*.

In addition, claims that "sound in fraud," such as plaintiffs' statutory consumer fraud allegations, are not viable unless they meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  *See, e.g.*, *Vess v. Ciba-Geigy*, 317 F.3d 1097, 1103-05 (9th

6

Cir. 2003).  "[I]f particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim."  *Id*. at 1105.

As set forth below, plaintiffs' claims do not satisfy these standards and must be dismissed.

**I.      ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY ARE BASED ON THE FALSE PREMISE THAT NISSAN VEHICLES EQUIPPED WITH AN "INTELLIGENT KEY" SYSTEM DO NOT SATISFY FEDERAL SAFETY REGULATIONS.**

As an initial matter, all of plaintiffs' claims fail because they are based on the erroneous premise that the Nissan vehicles at issue do not comply with FMVSS No. 114.

A court considering a motion to dismiss should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 129 S. Ct. at 1950.  The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  Thus, while "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*  Where the "complaint does not contain any factual allegation sufficient to plausibly suggest" that the defendant engaged in wrongdoing, the plaintiff's claims fail as a matter of law.  *Id.* at 1952.

Here, plaintiffs' claims turn on the entirely unsupported and incorrect legal conclusion that Nissan vehicles equipped with an Intelligent Key system do not comply with FMVSS No. 114 and, as a result, are defective.  Specifically, plaintiffs allege that "Nissan's Intelligent Key system is not compliant with FMVSS 114 in that the subject vehicles can be turned off in any gear and the key can then be removed from the slot/holster."  (Compl. ¶ 12.)  Thus, plaintiffs contend that "Nissan's ongoing sale of these non-compliant vehicle[s] is a violation of federal law, a danger to the public, and constitutes a *per se* violation of federal and state warranty law, a breach of contract, and consumer fraud," and that Nissan "has been unjustly enriched by its illegal sale of non-conforming vehicles."  (*Id.* ¶ 14; *see also id.* ¶ 35 (alleging that plaintiffs' proposed class includes "over one million individuals or entities" whose vehicles "are FMVSS 114 non-complaint").)

The law is clear that "[c]ourts may . . . consider public records, matters of which a court may take judicial notice, and letter *decisions of governmental agencies*" when ruling on a motion

---

7

1    to dismiss.  *Carr*, 2001 U.S. Dist. LEXIS 23886, at *12 (emphasis added).[9]  Moreover, agency

2    letters interpreting the agency's own regulations are "controlling . . . unless plainly erroneous or

3    inconsistent with the regulation."  *Udall v. Tallman*, 380 U.S. 1, 17 (U.S. 1965); *Bassiri v. Xerox*

4    *Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) (reversing district court's dismissal of claim where lower

5    court failed to accord proper deference to agency opinion letter).  Here, federal regulators have

6    expressly found that vehicles – like those manufactured by Nissan – that use "smart key" systems

7    do comply with FMVSS No. 114.  *See* 71 Fed. Reg. at 17,752 ("systems using an electronic code

8    instead of [a] conventional key would satisfy the rollaway prevention provisions if the code

9    remained in the vehicle until the transmission gear is locked in the 'park' position").  Moreover, as

10   set forth above, NHTSA has conducted a compliance test of a Nissan vehicle equipped with the

11   "Intelligent Key" system and expressly found that it ***does*** comply with that safety standard.  *See*

12   NHTSA Report at 8.  As the NHTSA Report states, Nissan vehicles comply with FMVSS No. 144

13   because, even though "[t]he physical key device can be removed from the vehicle . . . the stored

14   key code stays in memory until [the] vehicles is in park, turned off, and the door is opened."  *Id*.  In

15   other words, because the electronic code – and not the transponder itself – constitutes the vehicle's

16   "key," the fact that the transponder can be removed from the vehicle while the transmission is not

17   in "park" does not affect FMVSS No. 114 compliance.

18        In light of NHTSA's finding that Nissan vehicles equipped with an "Intelligent Key"

19   system comply with FMVSS No. 114, plaintiffs' "complaint does not contain any factual allegation

20   sufficient to plausibly suggest" that their vehicles are defective.  *Iqbal*, 129 S. Ct. at 1952.  For this

21   reason alone, all of plaintiffs' claims must be dismissed.

22

23

24   _____

[9]        *See also DeMarco*, 149 F. Supp. 2d at 1218 (a court may properly consider a transcript of
25   an FDA advisory committee meeting on motion to dismiss); *United States v. Ritchie*, 342 F.3d 903,
     908 (9th Cir.  2003) ("A court may . . . consider certain materials – documents attached to the
26   complaint, documents incorporated by reference in the complaint, or matters of judicial notice –
     without converting the motion to dismiss into a motion for summary judgment"); *Kramer v. Time*
27   *Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (a court may take judicial notice of documents filed
28   with a federal agency without converting a motion to dismiss into a motion for summary judgment).

8

1    **II.      PLAINTIFF TARAGAN'S CLAIMS FAIL UNDER CALIFORNIA LAW.**

2            Plaintiff Taragan asserts breach of express warranty, breach of implied warranty, statutory

3    consumer fraud and unjust enrichment claims.  (Compl. ¶¶ 33, 44-66.)  Under well-established

4    California choice-of-law principles, these claims are governed by California law because Ms.

5    Taragan lives, leased and presumably used her vehicle in California.  *See Osborne v. Subaru of Am.,*

6    *Inc.*, 198 Cal. App. 3d 646 (Cal. App. 3d Dist. 1988) (California choice-of-law rules require that

7    the law of each vehicle owner's home state govern his or her product liability claims); *Vestal v.*

8    *Shiley Inc.*, No. SA CV 96-1205-GLT(EEx), 1997 U.S. Dist. LEXIS 23329, at *9 (C.D. Cal. Nov.

9    17, 1997) (applying North Carolina law to product liability claims alleged by North Carolina

10   residents against California-based manufacturer); *Paulo v. Bepex Corp.*, 792 F.2d 894, 896 (9th Cir.

11   1986) (California choice-of-law rules required the application of Ontario law because plaintiff

12   product users were residents of Ontario and the injuries giving rise to the lawsuit were suffered

13   there).  As set forth below, plaintiff Taragan's claims fail under California law because:  (1) she

14   has not alleged any injury; and (2) she has not properly alleged many of the other essential

15   elements of her causes of action.

16           **A.      Plaintiff Taragan's Claims Fail Because She Has Not Alleged Any Injury.**

17

18           "[W]here a plaintiff alleges a product is defective, proof that the product has malfunctioned

19   is essential to establish liability for an injury caused by the defect."  *Khan v. Shiley,* 217 Cal. App.

20   3d 848, 855 (Cal. App. 4th Dist. 1990); *Zamora v. Shell Oil Co.*, 55 Cal. App. 4th 204, 209 (Cal.

21   App. 4th Dist. 1997) ("In the absence of product malfunction, [the patient] cannot establish

22   defendants breached any duty owed to her."); *In re Bridgestone/Firestone*, *Inc. Tires Prods. Liab.*

23   *Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("No injury, no tort, is an ingredient of every state's

24   law.").  The mere risk that a product may malfunction or cause injury at some point in the future is

25   not enough to assert product liability claims under California law.  *See Khan*, 217 Cal. App. 3d at

26   855.

27           In *Kahn*, for example, the California Court of Appeal affirmed an order granting summary

28   judgment in favor of the manufacturer of allegedly defective artificial heart valves.  Plaintiff there

9

**Def. Nissan's Mem. ISO Motion to Dismiss**                                   **Case No: CV09-3660**

1  argued that she had stated valid warranty, fraud and other product liability claims based on the

2  allegation that the artificial heart valve she received was subject to failure and may, at some point

3  in the future, cause death.  The court disagreed, holding that product liability claims based solely

4  on a *risk* of injury are barred as a matter of law.  As the court explained, "[n]o matter which theory

5  [of recovery] is utilized . . . where a plaintiff alleges a product is defective, proof that the product

6  has malfunctioned is essential to establish liability." *Id.*  Put another way, a product manufacturer

7  is liable in tort only where one of its products "proves to have a defect that causes injury to a

8  human being." *Id.* (quoting *Greenman v. Yuba Power Prods., Inc.*, 377 P.2d 897 (Cal. 1963)).

9  This rule applies equally to each of plaintiff Taragan's claims.  *See, e.g.*, *Am. Suzuki Motor*

10  *Corp. v. Superior Court*, 44 Cal. Rptr. 2d 526, 531 (Cal. App. 2d Dist. 1995) (rejecting breach of

11  implied warranty claims based on allegation that vehicle had the potential to roll over, but had not

12  actually malfunctioned); *Mauro v. GMC*, No. S-07-892 FCD GGH, 2008 U.S. Dist. LEXIS 93897,

13  at *24 (E.D. Cal. July 14, 2008) ("It is a prerequisite to the duty of repair under an express

14  warranty that a defect manifest itself.") (citing *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal.

15  App. 4th 824, 831 (Cal. App. 2d Dist. 2006) (rejecting recovery under an express warranty when

16  automobile owners did not experience problems within the warranty limits)); *Whitson v. Bumbo*,

17  No. C 07-05597 MHP, 2009 U.S. Dist. LEXIS 32282, at *23-24 (N.D. Cal. Apr. 15, 2009)

18  (dismissing statutory consumer protection and unjust enrichment claims alleged by purchaser of

19  allegedly defective baby seat because plaintiff failed to allege that "she or her children 'personally

20  suffered any injury or property damage, or that their seats tipped over'") (internal citations omitted);

21  *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1241 (C.D. Cal. 2008)

22  (rejecting unjust enrichment claim based on purchase of television because television functioned

23  properly and therefore plaintiff "got the television he wanted").

24  Here, plaintiff Taragan has not alleged an injury capable of giving rise to any of her claims

25  because she does not assert that her Nissan vehicle ever malfunctioned in any way.  Plaintiff

26  Taragan does not claim that she has ever exited her car while it was not in "park," much less that

27  she has sustained personal or other injury as a result of doing so.  Instead, plaintiff Taragan appears

28  to allege that because her car uses an electronic code – rather than a traditional metal key – to

10

1  enable activation of the engine, there is a risk that she will one day mistakenly assume that her

2  vehicle is in "park" after she has removed the transponder.  (*See* Compl. ¶ 13.)  As set forth above,

3  however, the mere risk that a product may someday cause injury cannot give rise to a product

4  liability claim under California law.

5       Moreover, even if a risk of future injury were enough to sustain a product liability action –

6  which it is not – no such risk exists here.  Plaintiff Taragan alleges that the "need to shift into park

7  (or have the vehicle in park) to turn off the vehicle and remove the [physical] key" device is a "key

8  safety feature which drivers rely on, but whose absence is not readily apparent" to Nissan vehicle

9  users.  (*Id.*)  Thus, the gravamen of her claims is that owners of Nissan and Infiniti vehicles

10 equipped with an "Intelligent Key" system are at risk of injury from "rollaway" accidents because

11 they may erroneously believe that removal of the transponder device confirms that their cars are in

12 "park."  But Ms. Taragan herself faces no such risk of confusion in operating her Nissan.  After all,

13 by virtue of filing this suit, plaintiff has made clear that she knows how the "Intelligent Key"

14 system works and is aware that the transponder device may be removed even if the vehicle is not in

15 "park."  As a result, not only has Ms. Taragan failed to claim any present injury, but she has also

16 failed to allege any risk of injury going forward.  For this reason as well, her claims should be

17 dismissed.

18

19         **B.**     **Plaintiff Taragan's Claims Fail For A Host Of Other Reasons As Well.**

20           1.     Plaintiff Taragan Cannot State A Claim For Breach Of Express Warranty
                 Under California Law (Count I).

21      Even if plaintiff Taragan had alleged a valid theory of injury, her express warranty claims

22 would still fail because she has not alleged that: (1) Nissan refused to repair any defect "in

23 materials or workmanship"; (2) she provided Nissan with notice and an opportunity to cure; or (3)

24 she was in privity with Nissan.

25      ***First***, Ms. Taragan cannot state a valid express warranty claim because she has not alleged

26

27 that Nissan breached the terms of its warranty.  California warranty law requires plaintiffs to prove

28 that the defendant breached an express promise regarding its goods.  *See, e.g.*,  *Stearns v. Select*

**Def. Nissan's Mem. ISO Motion to Dismiss**         **Case No: CV09-3660**

1   *Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *4 (N.D. Cal. June 5, 2009); *Sanders*

2   *v. Apple, Inc.*, No. C 08-1713 JF (PVT), 2009 U.S. Dist. LEXIS 6676, at *16 (N.D. Cal. Jan. 15,

3   2009) ("To plead an action for breach of express warranty under California law, a plaintiff must

4   allege (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of

5   warranty which proximately caused plaintiff's injury.") (citing *Williams v. Beechnut Nutrition*

6   *Corp.*, 185 Cal. App. 3d 135, 142 (Ct. App. 1986) (express warranty plaintiff must establish, *inter*

7   *alia*, that defendant "'made an affirmation of fact or promise or provided a description of its

8   goods'" that was breached)).

9
10          Here, plaintiff Taragan's express warranty claim is based on the general assertion that

11   Nissan "expressly warrants [its vehicles] to be free of defects at the time of delivery" (Compl. ¶ 45),

12   but plaintiff is unable to identify a specific statement to that effect that was actually made to her by

13   Nissan.  Nor can she.  This is because the only potentially relevant express warranty that Nissan

14   made with regard to its vehicles is a 36-month warranty for "repairs needed to correct defects in

15   materials or workmanship of all parts and components in each new Nissan vehicle." (Nissan 2009

16   Warranty Information Booklet at 4 (attached as Ex. 6 to Beisner Decl.).)[10]  And under California

17   law, a promise to repair and replace defective parts means just that – it does not guarantee a defect-

18   free product.  *See Brothers v. Hewlett-Packard Co.*, No. 06-02254 RMW, 2007 U.S. Dist. LEXIS

19   13155, at *13-15 (N.D. Cal. Feb. 12, 2007) (holding, under California law, that a warranty

20   promising to "repair or replace . . . defective component parts or hardware products" in a computer

21   "does not guarantee against design defects, it guarantees against defects in materials and

22   workmanship"); *see also Cosman v. Ford Motor Co.*, 674 N.E.2d 61, 66 (Ill. 1996) (a replace and

23

24

25   _____

26   [10]       Where, as here, plaintiffs explicitly allege breach of warranty claims, and therefore the
     "allegations in plaintiffs' complaint are based directly on the express warranty" for the product at
27   issue, the Court may take "judicial notice of the express warranty" in ruling on a motion to dismiss.
     *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1103 (N.D. Cal. 2007) (citing *Ritchie*, 342 F.3d at
28   908).

**Def. Nissan's Mem. ISO Motion to Dismiss**                    **Case No: CV09-3660**

1   repair warranty "warrants only that the dealer will repair, replace, or adjust defects if parts of the

2   [vehicle] in fact do malfunction.  It does not warrant the quality of the [vehicle] or its

3   performance"); *In re GMC Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525 (E.D. Mo.

4   1997), *aff'd*, No. 97-3506, 1999 U.S. App. Lexis 6980 (8th Cir. Apr. 14, 1999) ("the warranties

5   simply do not promise that the vehicles are free of defects"); *Crouch v. Gen. Elec. Co.*, 699 F. Supp.

6   585, 594 (S.D. Miss. 1988) ("[u]nlike a promise that a product will satisfactorily perform at all

7   times or will work properly for a lifetime, which are words of warranty going to the performance of

8   the goods, a promise to repair and/or replace warrants not that the goods will perform in the future

9   but that if they do not, the supplier or manufacturer will make the necessary repairs"); *Ontario*

10  *Hydro v. Zallea Sys., Inc.*, 569 F. Supp. 1261, 1266 (D. Del. 1983) ("[A] repair or replacement

11  warranty does not warrant how the goods will perform in the future.  Rather, such a warranty

12  simply provides that if a product fails or becomes defective, the seller will replace or repair within

13  a stated period."); *Voth v. Chrysler Motor Corp.*, 545 P.2d 371, 375 (Kan. 1976) (Chrysler's

14  warranty "does not warrant performance without malfunction during the term of the warranty, but

15  only warrants that Chrysler will repair or replace defective parts").

16          Because Nissan only warranted that it would repair any defect in "materials or

17  workmanship" of which the vehicle owner made the company aware, the only way plaintiff

18  Taragan could state a proper claim for breach of warranty in this case would be to allege that:  (1)

19  the Intelligent Key system in her car contained a defect of "materials or workmanship"; (2) she

20  presented Nissan with her allegedly defective Intelligent Key system for replacement or repair

21  during the warranty period; and (3) Nissan refused to repair or replace it.  *See Brothers*, 2007 U.S.

22  Dist. LEXIS 13155, at *13-15.  Because plaintiff does not make such allegations, her express

23  warranty claim fails.

24          ***Second***, even if plaintiff Taragan had alleged a "defect in materials or workmanship," her

25  express warranty claim would still fail because she has not adequately alleged that she provided

                                                        13

Nissan with notice of the alleged breach.  Under California law, a plaintiff cannot prevail on a breach of express warranty action absent an allegation that he or she "provided the defendant with pre-suit notice of the breach."  *Sanders*, 2009 U.S. Dist. LEXIS 6676, at *16 (citing Cal. Comm'l Code § 2607(3)(A) ("The buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy")); *Stearns*, 2009 WL 1635931, at *4 (plaintiff "bears the burden" of showing "that notice . . . was provided to the seller within a reasonable time after discovering the breach").

Here, plaintiffs generally allege that "[t]hrough the filing of this complaint, Plaintiffs provide Nissan with reasonable notice of the alleged breach" and that Nissan "also has constructive and actual notice of its [alleged] breach due to its awareness of the defect" in its Intelligent Key system.  (Compl. ¶ 47.)  But neither of these assertions is sufficient to plead notice under California law.  As an initial matter, filing claims against a defendant does not constitute "*pre*-suit notice." *Sanders*, 2009 U.S. Dist. LEXIS 6676, at *16; *Fieldstone Co. v. Briggs Plumbing Prods., Inc.*, 54 Cal. App. 4th 357, 371 (Cal. App. 4th Dist. 1997) (dismissing express warranty claims based on purchase of allegedly defective sinks because plaintiff gave no indication to one manufacturer until three years after buying the product and gave the other manufacturer "no indication of a problem . . . until [plaintiff] filed this lawsuit").  Indeed, the entire purpose of the notice requirement is to give defendants the opportunity to correct the defect alleged *without resort to litigation*.  *See Pollard v. Saxe & Yolles Dev. Co.*, 525 P.2d 88, 92 (Cal. 1974) ("[t]he requirement of notice of breach is based on a sound commercial rule designed to allow the defendant opportunity for repairing the defective item, reducing damages, avoiding defective products").

Plaintiff's allegation that Nissan had "constructive and actual notice of its alleged breach" (Compl. ¶ 47) is also insufficient.  Plaintiff Taragan has not pled any facts suggesting that she – or anyone else – alerted Nissan that plaintiff Taragan believed that the Intelligent Key system in her car was defective.  And given NHTSA's recognition that vehicles equipped with Nissan's

14

1  Intelligent Key system comply with FMVSS No. 114, there is no basis to claim that Nissan was

2  generally aware of an alleged defect.  Thus, her claim fails for this reason too.

3      ***Third***, plaintiff's express warranty claim fails because she has not alleged that she was in

4  privity of contract with Nissan.  In California, the "general rule is that privity of contract is

5  required in an action for breach of either express or implied warranty."  *Yu-Santos v. Ford Motor*

6  *Co.*, No. 1:06-CV-01773-AWI-DLB, 2009 U.S. Dist. LEXIS 41001, at *61 (E.D. Cal. May 13,

7  2009) (citing *Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058-59 (Cal. App. 4th

8  Dist. 2008)).  Accordingly, a purchaser (or lessee) may not properly seek "warranty recovery

9  against a manufacturer with whom he has no direct contractual nexus."  *Id.* at 62 (citing *Osborne*,

10  198 Cal. App. 3d at 656 n.6); *All West Elecs., Inc. v. M-B-W, Inc.*, 64 Cal. App. 4th 717, 726 (Cal.

11  App. 5th Dist. 1998) (holding that the trial court properly rejected warranty claims alleged by

12  company that leased manufacturer's construction equipment from a third party retailer and

13  therefore its claims arose from "breach of a lease to which [the manufacturer] was not a party");

14  *see also Ayat v. Societe Air Fr.*, No. 06-01574, 2007 WL 1100315, at *2 (N.D. Cal. Apr. 11, 2007)

15  (dismissing express warranty claim because plaintiff failed to adequately allege privity); *Cellars v.*

16  *Pac. Coast Packaging, Inc.*, No. C 99-1240 CRB, 1999 U.S. Dist. LEXIS 19810, at *10 (N.D. Cal.

17  Dec. 22, 1999) (noting California's continued acceptance of the privity requirement for express

18  warranty claims and dismissing claim where plaintiff failed to allege privity).

19      Here, plaintiffs generally allege that they – and the members of the proposed class – "either

20  purchased or leased their subject vehicles from Nissan or from an agent of Nissan."  (Compl. ¶ 48.)

21  But plaintiff Taragan makes no representation as to where or from whom she leased her Nissan

22  Maxima (*see id.* ¶ 18) and does not claim that she ever interacted with Nissan directly.  This is

23  because she did not.  Rather, as her lease agreement makes clear, Ms. Taragan leased her car from

24  "Tracy Nissan," an independent dealer of Nissan vehicles.

15

1

Courts across the country have held that where, as here, a car owner obtains his or her

2

vehicle from an independent, authorized dealer, he or she is not in privity with the vehicle's

3

manufacturer.  In *Zaro v. Maserati North America, Inc.*, No. 07-C-3565, 2007 U.S. Dist. LEXIS

4

90137, at *9-10 (N.D. Ill. Dec. 6, 2007), for example, the court dismissed warranty claims alleged

5

by a plaintiff who purchased an automobile manufactured by Maserati through an authorized

6

dealership.  In so doing, the court explicitly rejected the argument that privity existed because the

7

car dealer was acting as Maserati's agent in the transaction.  *Id.* at *10-11.  As the court explained,

8

"an automobile dealer or other similar type of dealer, who . . . merely buys goods from

9

manufacturers or other suppliers for resale to the consuming public, is not his supplier's agent." *Id.*

10

at *11 (citing *Bushendorf v. Freightliner Corp.*, 13 F.3d 1024, 1026 (7th Cir. 1993)).  In the court's

11

words, plaintiff's "effort to create such a rule of privity would merely be an effort to 'constitute an

12

end [run] around the privity requirement.'"  *Id.*  As a result, the court held that plaintiff's claims

13

were barred as a matter of law.  *Id.*; *see also Curl v. Volkswagen of Am.*, 871 N.E.2d 1141, 1148

14

(Ohio 2007) (rejecting warranty claim for lack of privity where plaintiff purchased car from

15

authorized dealership, noting that the dealer was not an agent of the manufacturer); *Hole v. GMC*,

16

442 N.Y.S.2d 638, 640 (App. Div. 1981) (affirming summary judgment in favor of defendant car

17

manufacturer where plaintiff purchased vehicle from "duly authorized franchisee" and therefore

18

lacked privity with the manufacturer).

19

The same is true here.  Because plaintiff Taragan leased her car from an independent

20

dealership – not Nissan itself – she is not in privity with the manufacturer, as required to state a

21

warranty claim under California law.  Thus, her claim should be dismissed for this reason as well.

22

23

24

25

26

27

28

16

1
2

        2.     <u>Plaintiff Taragan Cannot State A Claim For Breach Of Implied Warranty Under California Law (Count II).</u>

3
4
5

    Plaintiff Taragan's implied warranty claims are similarly deficient because: (1) she has not properly alleged that her car was not merchantable when she leased it; (2) she has not properly pled reasonable notice; and (3) she does not allege privity with Nissan.

6
7
8
9
10
11

    ***First***, plaintiff does not have a valid implied warranty claim because she has not pled sufficient facts to support an allegation that her car is unmerchantable. In order to state a valid implied warranty claim, plaintiff must allege that her car was unfit for the purpose for which it was intended. *See* Cal. Comm'l Code § 2314(2)(a) & (c) (West 2002) (to be merchantable, a product must be "fit for the ordinary purposes for which [it is] used"); *Am. Suzuki Motor Corp.*, 44 Cal. Rptr. 2d at 529. As the court explained in *American Suzuki*,

12
13
14

> Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law. It does not "impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality."

15
16
17
18
19
20
21
22
23
24
25
26
27

44 Cal. Rptr. 2d at 529 (citations omitted). Thus, in an implied warranty action involving an allegedly defective vehicle, the plaintiff cannot merely claim that the vehicle has the ***potential*** to malfunction or cause injury – she must instead allege that the vehicle is not capable of providing transportation. *See id.* (agreeing with courts in other jurisdictions that "in the case of automobiles, the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation"); *Carlson v. GMC*, 883 F.2d 287, 297 (4th Cir. 1989) (rejecting implied warranty claims based on allegation that GM vehicles had a tendency to break down; "GM diesel-equipped cars have served the traditionally recognized 'purpose' for which automobiles are used"); *In re GMC Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. at 1533 (rejecting implied warranty claim regarding allegedly defective anti-lock brake system; "[p]laintiffs' allegations do not show that the vehicles are unmerchantable because plaintiffs have not alleged a defect that makes the vehicles unfit for the ordinary purpose of providing transportation").

28

**Def. Nissan's Mem. ISO Motion to Dismiss**               **Case No: CV09-3660**

1    Plaintiff Taragan cannot satisfy this standard.  Taragan has not alleged that her vehicle does

2    not adequately provide transportation.  Indeed, as set forth above, she does not allege that her

3    vehicle has ever malfunctioned in any way.  Nor does plaintiff allege that she is unable to use, or

4    has stopped using, her car.  Instead, plaintiff Taragan's implied warranty claim is based solely on

5    the assertion that her car is defective because it is designed in a manner that creates a risk of

6    accidents.  For this reason alone, she does not have a valid claim for breach of implied warranty.

7    **Second**, Ms. Taragan's implied warranty claim fails because she does not allege that she

8    was in privity of contract with Nissan.  California law requires privity to state an implied warranty

9    claim – just as it does for express warranty claims.  *See Windham at Carmel Mountain Ranch Ass'n*

10   *v. Superior Court*, 135 Cal. Rptr. 2d 834, 838 (Cal. App. 4th Dist. 2003) ("privity of contract . . . is

11   required in an action for breach of . . . implied warranty") (citations omitted); *All West Elecs.*, 64

12   Cal. App. 4th at 725 (affirming motion for directed verdict against party asserting claim for breach

13   of implied warranty of merchantability because "[p]rivity of contract is a prerequisite in California

14   for recovery on a theory of breach of implied warranties of fitness and merchantability . . . [and]

15   there is no privity between the original seller and a subsequent purchaser who is in no way a party

16   to the original sale") (citations and internal quotation marks omitted).  As set forth above, plaintiff

17   Taragan has not properly pled privity of contract between herself and Nissan because she leased

18   her car from an independent retailer, not Nissan.  *See Anunziato v. eMachines, Inc.*, 402 F. Supp.

19   2d 1133, 1141 (C.D. Cal. 2005) (plaintiff who bought allegedly defective product at Best Buy

20   could not bring implied warranty claim against manufacturer of that product).  Thus, her implied

21   warranty claim should be dismissed for this reason as well.

22   **Third**, plaintiff Taragan's breach of implied warranty claim must be dismissed because she

23   does not allege that she provided notice to Nissan regarding its alleged breach.  Under California

24   law, a plaintiff seeking to assert an implied warranty claim must provide pre-suit notice of the

25   alleged breach "within a reasonable time after he or she discovers or should have discovered any

26   breach" or "be barred from any remedy."  Cal. Comm'l Code § 2607(3)(A); *Pollard.*, 525 P.2d at

27   92 ("[t]he requirement of notice of breach is based on a sound commercial rule designed to allow

28   the defendant opportunity for repairing the defective item, reducing damages, avoiding defective

18

1 products").  As explained above, plaintiff Taragan has not alleged that she contacted Nissan to

2 report the alleged defect at any time prior to filing suit in this action.  For this reason too, her

3 implied warranty claim must be dismissed.

3.   <u>Plaintiff Taragan Cannot State A Statutory Consumer Protection Claim Under California Law (Count III).</u>

6       Plaintiff Taragan also alleges a cause of action under the "state consumer protection

7 statute" applicable to her claim.  (*See* Compl. ¶ 62.)  California has three different consumer

8 protection statutes, the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL") and

9 the Consumers Legal Remedies Act ("CLRA").  *See* Cal. Bus. & Prof. Code § 17200 *et seq.*; Cal.

10 Bus. & Prof. Code § 17500 *et seq.*; Cal. Civ. Code § 1750 *et seq.*  The UCL prohibits any

11 "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

12 advertising."  Cal. Bus. & Prof. Code § 17200.  The FAL prohibits the making or disseminating of

13 any statement "which is untrue or misleading" in an advertising device.  *Id.* § 17500.  And the

14 CLRA deems unlawful all "unfair methods of competition and unfair or deceptive acts or practices

15 undertaken by any person in a transaction intended to result or which results in the sale or lease of

16 goods or services to any consumer."  Cal. Civ. Code § 1770.

17       Plaintiff Taragan has failed to state a valid claim under any of these statutes for two

18 independent reasons:  (1) she does not allege that she relied on any allegedly deceptive statement or

19 action by Nissan in purchasing her vehicle; and (2) she did not plead the elements of her claims

20 with the particularity required by Federal Rule of Civil Procedure 9(b).

21       *First,* plaintiff has not alleged an essential element under the CLRA, UCL and FAL:

22 reliance.  Relief under the CLRA is limited to "[a]ny consumer who suffers any damage as a result

23 of the use or employment by any person of a method, act, or practice" unlawful under the act.  Cal.

24 Civ. Code § 1780(a).  Thus, to bring a claim under the act, a plaintiff must allege not only

25 deceptive conduct, but also that she relied on that conduct in a way that caused harm.  *See In re*

26 *Ford Motor Co. Ignition Switch Prods. Litig.*, 39 F. Supp. 2d 458, 469 (D.N.J. 1999) (individual

27 proof of reliance is a required element for a CLRA claim); *see also Mass. Mut. Life Ins. Co. v.*

28 *Superior Court*, 119 Cal. Rptr. 2d 190, 197 (Cal. App. 4th Dist. 2002) ("as a result of" language in

19

1  section 1780(a) of the CLRA is a "limitation on relief [that] requires that plaintiffs in a CLRA

2  action show not only that a defendant's conduct was deceptive but that the deception caused them

3  harm"). The UCL and FAL similarly require a showing of reliance. *See* Cal. Bus. & Prof. Code §

4  17204 (plaintiff must show "injury in fact and [loss of] money or property as a result" of the unfair

5  business practice). Here, plaintiff Taragan has not identified any statement made by Nissan

6  regarding its Intelligent Key system that was misleading, much less alleged that she relied on that

7  statement in deciding to purchase her vehicle. Thus, her statutory consumer protection claims fail.

8      ***Second***, plaintiff Taragan's consumer fraud claim has not been pled with the requisite

9  particularity. In order to satisfy the "heightened" pleading requirements of Rule 9(b), plaintiffs

10  asserting consumer fraud claims must "describe the who, what, where, when and how of [the

11  defendant's] . . . alleged . . . misrepresentations." *Meridian Project Sys., Inc. v. Hardin Constr. Co*.,

12  404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005); *Snyder v. Ford Motor Co*., No. C-06-0497 MMC,

13  2006 U.S. Dist. LEXIS 63646, at *9-10 (N.D. Cal. Aug. 24, 2006) (fraud claims based on allegedly

14  concealed vehicle defect failed under Rule 9(b) because plaintiffs did not allege "from whom,

15  where, and when they acquired [their] vehicles, nor do they allege how and when Ford should have

16  conveyed to them the claimed concealed information").

17      For example, in *Meridian Project Systems, Inc*., counter-plaintiffs alleged UCL claims

18  based on a meeting where counter-defendants allegedly disclosed information to potential

19  customers that counter-plaintiffs had violated copyright laws, among other things. 404 F. Supp. 2d

20  at 1218. The court dismissed the UCL claim because the counter-plaintiffs did not "describe the

21  who, what, where, when and how of counter-defendants' alleged intrastate misrepresentations" in

22  their complaint. *Id*. at 1225. *See also Vess*, 317 F.3d at 1103-04 (plaintiff must satisfy Federal

23  Rule 9(b) where UCL claim is "grounded in fraud"). *See also Strigliabotti v. Franklin Res., Inc.*,

24  No. C 04-00883 SI, 2005 U.S. Dist. LEXIS 9625, at *30 (N.D. Cal. Mar. 7, 2005) (rejecting FAL

25  claim where plaintiffs did not plead the facts of the alleged fraud with particularity).

26      Plaintiff Taragan's consumer protection claims fail for the same reasons. Plaintiff has not

27  provided any particulars about the alleged misrepresentations that Nissan made with regard to its

28  vehicles or the Intelligent Key system used in those vehicles. For example, plaintiff alleges that

**Def. Nissan's Mem. ISO Motion to Dismiss**                    **Case No: CV09-3660**

1   Nissan "represented, through its advertising, warranties and other express representations that [its

2   vehicles] had benefits or characteristics that they did not have."  (Compl. ¶ 58.)  However, she does

3   not allege what benefits Nissan claimed its vehicles to have or where (or when) the company made

4   this representation.  Nor does she claim that she heard or read any false representation by Nissan

5   regarding the benefits or qualities of its vehicles or that she was unaware of the alleged defect that

6   Nissan failed to disclose.  And even if plaintiff Taragan had stated in the Complaint that she

7   "relied" on an alleged misrepresentation by Nissan, she has not alleged any facts capable of

8   supporting such an assertion (such as what she would have done differently if she had received

9   more or different information about the operation of Nissan's Intelligent Key system).  *See Cadlo v.*

10  *Owens-Illinois, Inc.*, 23 Cal. Rptr. 3d 1, 5 (Cal. App. 1st Dist. 2004) (even an "assertion of

11  'reliance' is insufficient" to support a fraud claim; "[t]he plaintiff must allege the specifics of his or

12  her reliance on the misrepresentation to show a bona fide claim of actual reliance").

13          In sum, plaintiff Taragan has not pled the "who, what, where, when and how" necessary to

14  satisfy the heightened pleading standard applicable to her consumer protection claim.  For this

15  reason too, Count III should be dismissed.

16                          4.      Plaintiff Taragan Cannot State A Claim For Unjust Enrichment Under
17                                  California Law (Count IV).

18          As set forth above, plaintiff cannot prove that Nissan "unjustly retained" the cost of her

19  vehicle absent an allegation that the vehicle actually malfunctioned.  *See Johnson*, 578 F. Supp. 2d

20  at 1241 (rejecting unjust enrichment claim based on the allegation that defendant television

21  manufacturer sold the plaintiff a television that did not include certain desired features because the

22  television functioned properly and therefore plaintiff "got the television he wanted").  In addition,

23  plaintiff Taragan's unjust enrichment claim also fails because she alleges that she has remedies at

24  law.  A plaintiff seeking relief under an unjust enrichment theory must allege that she has no

25  adequate remedy at law.  *Stationary Eng'rs Local 39 Health & Welfare Trust Fund v. Philip*

26  *Morris, Inc.*, No. C-97-01519 DLJ, 1998 U.S. Dist. LEXIS 8302, at *55-56 (N.D. Cal. Apr. 30,

27  1998) (dismissing plaintiffs' claims for "restitution to prevent unjust enrichment" because, *inter*

28  *alia*, plaintiffs "may be able to state claims for fraud and misrepresentation and negligent breach of

                                                      21

**Def. Nissan's Mem. ISO Motion to Dismiss**                              **Case No: CV09-3660**

1    intentional duty [and therefore] cannot show that there is no adequate remedy at law"). Because

2    plaintiff Taragan has affirmatively pled that she has a contractual remedy for breach of express and

3    implied warranty, she fails to state a claim for unjust enrichment for this reason as well.

4    **III.    THE TAYLOR PLAINTIFFS' CONSUMER FRAUD AND UNJUST ENRICHMENT CLAIMS (COUNTS III–IV) ARE SUBSUMED BY THE LOUISIANA PRODUCT LIABILITY ACT.**

5

6            The Taylor plaintiffs assert claims for breach of express and implied warranty, statutory

7    consumer fraud and unjust enrichment, as well as a claim under the LPLA.  (*See generally*, Compl.)

8    Because the LPLA subsumes their claims for consumer fraud and unjust enrichment, those claims

9    must be dismissed.

10           The LPLA "establishes the ***exclusive theories of liability for manufacturers*** from damage

11   caused by their products" under Louisiana law.  La. Rev. Stat. Ann. § 9:2800.52 (2005) (emphasis

12   added).  Thus, plaintiffs seeking to recover against a manufacturer for injuries caused by allegedly

13   defective products must rely on one of the following four statutory categories included in the Act:

14   (1) defect in construction of composition; (2) defect in design; (3) inadequate warning; or (4)

15   failure to comply with an express warranty.  La. Rev. Stat. Ann. § 9:2800.54(B)(1)-(4) (2005).

16   "Given the exclusivity of the LPLA, all causes of action" based on the purchase of a defective

17   product must be alleged under the LPLA or "must be dismissed." *Grenier v. Med. Eng'g Corp.*, 99

18   F. Supp. 2d 759, 763 (W.D. La. 2000).  While the Taylor plaintiffs' claim for breach of express

19   warranty (Count I), as well as their claim for design defect and failure to warn (Count V), may be

20   brought under the LPLA, the other product liability claims they assert fall outside the theories of

21   recovery provided for by the LPLA and are therefore barred.[11]

22           Louisiana courts applying the LPLA routinely dismiss claims against product

23   manufacturers that are inconsistent with the four exclusive theories provided for in the LPLA at the

24   ---
25   [11]      The only exception to the LPLA's exclusivity provision is for claims sounding in redhibition – a theory of recovery similar to breach of implied warranty.  *See* La. Rev. Stat. Ann. § 9:2800.52 (2005).  The Taylor plaintiffs do not state a claim in redhibition.  But even if the plaintiffs' breach of implied warranty claim were construed as a redhibition claim, plaintiffs would

26

27   be unable to recover any personal injury damages under this theory.  *See Cheeks v. Bayer Corp.*, No. 03-132, 2003 WL 1748460, at *1 (E.D. La. Mar. 28, 2003) ("plaintiffs' claims for redhibition

28   are viable only for economic losses and do not include personal injury damages").

**Def. Nissan's Mem. ISO Motion to Dismiss**                          **Case No: CV09-3660**

1  pleading stage.  *See, e.g.*, *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1251 (5th Cir. 1997)

2  (affirming dismissal of claims for negligence, fraud by misrepresentation, market share liability,

3  breach of implied warranty of fitness and civil conspiracy as outside the scope of the LPLA);

4  *Borskey v. Medtronics, Inc.*, No. 94-3402, No. 95-1733, No. 95-2039, 1998 WL 122602, at *4-5

5  (E.D. La. Mar. 18, 1998) (granting motion to dismiss claims for fraud, negligence, strict liability,

6  and breach of implied warranty as outside the scope of the LPLA).  In *Jefferson*, for example, the

7  Fifth Circuit affirmed the district court's dismissal of certain claims that fell outside the LPLA in a

8  case involving alleged damages caused by exposure to lead-based paint.  The court clarified the

9  exclusivity of the claims permitted by the LPLA, adopting the district court's reasoning that

10  "[w]hile the statutory ways of establishing that a product is unreasonably dangerous are predicated

11  on principles of strict liability, negligence, or warranty, respectively, neither negligence, strict

12  liability, nor breach of express warranty is any longer viable as an independent theory of recovery

13  against a manufacturer." *Jefferson*, 106 F.3d at 1251.

14      Here, Mr. and Mrs. Taylor allege claims based on their purchase of an allegedly defective

15  Nissan Murano, seeking personal injury damages under a variety of theories, including the LPLA.

16  (*See* Compl. ¶¶ 19-21, 69-71, 86-88.)  Because their suit for personal injury-related damages falls

17  exclusively within the ambit of the LPLA, that statute provides their sole avenue for relief under

18  Louisiana law.  As a result, plaintiffs' consumer protection and unjust enrichment claims should be

19  dismissed for this reason too.

20                          **CONCLUSION**

21      For the foregoing reasons, all of plaintiffs' claims should be dismissed.

22  Dated:  October 13, 2009                    Respectfully submitted,

23  RICHARD J. ZUROMSKI, JR. (Bar No.           JOHN H. BEISNER (Admitted *Pro Hac Vice*)
24  227569)                                     JESSICA D. MILLER (To Be Admitted *Pro
    SKADDEN, ARPS, SLATE, MEAGHER &             Hac Vice*)
25  FLOM LLP                                    NINA H. RAMOS (To Be Admitted *Pro Hac
    Four Embarcadero Center, Suite 3800         Vice*)
26  San Francisco, California 94111-4144        SKADDEN, ARPS, SLATE, MEAGHER &
    Telephone: (415) 984-6400                   FLOM LLP
27  Facsimile: (415) 984-2698                   1440 New York Avenue NW
28  Email: Richard.Zuromski@skadden.com         Washington, DC 20005
                                                Telephone: (202) 371-7000

                                  23

Facsimile: (202) 393-5760
Email: John.Beisner@skadden.com
COUNSEL FOR DEFENDANT NISSAN NORTH AMERICA, INC.

**Def. Nissan's Mem. ISO Motion to Dismiss**                    **Case No: CV09-3660**