UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HELEN TARAGAN, FRANCES JEANETTE TAYLOR, CLARENCE TAYLOR, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NISSAN NORTH AMERICA, INC.,  a California corporation; NISSAN MOTOR COMPANY LTD., a Japanese Company,<br><br>Defendants. | Case No:  C 09-3660-SBA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Plaintiffs Helen Taragan ("Tarragon"), along with Frances and Clarence Taylor ("Taylor Plaintiffs"), bring the instant class action on behalf of themselves and all other owners and lessees of Nissan and Infiniti vehicles equipped with an electronic "Intelligent Key" system.  This system utilizes a "key fob" or transponder to transmit an electronic code, as opposed to a conventional, physical key, to start the vehicle.  Plaintiffs allege that such vehicles violate Federal Motor Vehicle Safety Standard ("FMVSS") 114, 49 C.F.R. § 571.114, because it is possible to remove the key fob from the vehicle when the engine is off, even if the automatic transmission is not in the "park" position, thereby allowing the vehicle to roll away unattended.  The parties are presently before the Court on Defendant's Motion to Dismiss Plaintiffs' Complaint for Damages and Equitable Relief.  Docket 14. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

# I.   BACKGROUND

## A.   FACTUAL SUMMARY

### 1.   Regulations Governing Key Ignition Shift Interlocks

In 1990, the National Highway Traffic Safety Administration ("NHTSA") began requiring that vehicles sold in the United States with automatic transmissions come equipped with a Key Ignition Transmission Shift Interlock ("KITSI"). Compl. ¶ 2. A KITSI prevents a driver from removing the key from the ignition unless the vehicle's automatic transmission is in the "park" position. Id. When a transmission is in "park," a mechanism is engaged that prevents the vehicle from rolling away. Id. The KITSI requirement, which is set forth in FMVSS 114, is intended to prevent such accidents, since a driver cannot remove the key from the vehicle without first ensuring that the vehicle is, in fact, §locked in the "park" position. Id.

With the advent of electronic technology, a number of vehicle manufacturers, including Defendants Nissan North America, Inc. and Nissan Motor Company, Ltd. (collectively "Nissan"), have begun offering electronic "smart" keys in place of conventional keys. Id. ¶¶ 10-11. A smart key consists of an electronic chip or transponder, which is contained in a small housing, sometimes referred to as a key fob. Id. ¶¶ 8-9. Unlike a conventional, physical key, which must be inserted in the ignition and then turned to start the engine, a smart key instead transmits an electronic code to "unlock" the car, which typically can then be started (or turned off) by pressing a "Start/Stop" button. Id. ¶ 8. Although no physical movement (i.e., turning) of a smart key is necessary, some vehicle manufacturers utilizing smart key technology, including Nissan, provide a "slot" or "holster" on the dashboard into which to place the key fob. Id. ¶ 9.

To address this technological advancement, the NHTSA amended FMVSS 114, effective September 1, 2007, to recognize that a "key" now may be either "a physical device *or electronic code*" inserted into the vehicle's starting system "by physical *or electronic means*." 49 C.F.R. § 571.114 (S4) (emphasis added); see 71 Fed. Reg. 17,752-53 (Apr., 7, 2006). Ostensibly to comport with FMVSS 114, some manufacturers, other

25

than Nissan, integrate a solenoid into the holster which prevents the removal of the key fob unless the car is in park and turned off.  Id. ¶ 10.  Alternatively, in vehicles that can be started remotely without the key fob being placed in a holster, the vehicle cannot be turned off unless the vehicle is in park, or have transmissions that automatically place the transmission in park when the vehicle is turned off.  Id.

### 2.    Nissan's "Intelligent Key" System

Beginning in 2002, Nissan (which includes the Infiniti brand) began selling vehicles in the United States equipped with smart keys, marketed as the "Infiniti Intelligent Key" or "Intelligent Key" (collectively "Intelligent Key").  Id. ¶ 7.  Unlike other manufacturers, Nissan's Intelligent Key system allows the vehicle to be turned off regardless of which gear is engaged, while still allowing the key fob to be removed from the holster.  Id. ¶ 12. Because it is possible to turn the engine off and remove the key fob from the vehicle when the transmission is not in "park," the vehicle allegedly is at risk of rolling away while unattended.  Id. ¶¶ 12-13.

### 3.    Incidents Involving Plaintiffs

Plaintiff Taragan, a California resident, owns a 2009 Nissan Maxima.  Id. ¶ 18.  She does not allege that she was physically injured in a "roll-away" accident or that her vehicle malfunctioned in any way.  Rather, she appears to complain generally that she is at risk of such an accident occurring due to Nissan's alleged non-compliance with FMVSS 114.  Id. ¶ 26.  In contrast, the Complaint alleges that the Taylor Plaintiffs, both of whom are Louisiana residents, suffered physical and emotional injury as a result of an accident involving their 2009 Nissan Murano.  Id. ¶ 19.  Specifically, on August 27, 2008, Mrs. Taylor pulled into a restaurant, turned her engine off, removed the key and exited her vehicle to open the rear door on the driver's side in order to retrieve a package.  Id.  As she was about to close the door and return inside the vehicle, it began to roll backwards.  Id. Mrs. Taylor attempted to reenter through the driver's door to stop the vehicle, but the vehicle caught her in the door and dragged her along, crushing her foot.  Id.  Mr. Taylor, who witnessed the incident, took the key from Mrs. Taylor, and entered and started the

vehicle to drive it off her foot.  Id.  As a result of the accident, Mrs. Taylor can no longer work and must undergo physical therapy.  Id. ¶ 21.  Mr. Taylor claims that he was traumatized by witnessing the incident.  Id. ¶¶ 20-21.

**B.    PROCEDURAL BACKGROUND**

On August 10, 2009, Plaintiffs filed a Complaint for Damages and Equitable Relief which alleges six claims for relief against Nissan.[1]  Four of those claims are brought by Plaintiffs on behalf of the putative Class, as follows:  (1) breach of express warranty; (2) breach of implied warranty; (3) violations of State Consumer Protection Statutes; and (4) unjust enrichment (collectively "Class Claims").  Id.. ¶¶ 44-66.  The Class Claims, which are brought pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), Compl. ¶ 15, are predicated on the theory that Nissan violated FMVSS 114 because the key fob can be removed from the vehicle while it is turned off, yet the transmission gear is not in park.  Id. ¶¶ 14; 44-66; Pls.' Opp'n at 5-8, 16-17.

In addition to the Class Claims, the Complaint alleges two individual claims solely on behalf of the Taylor Plaintiffs.  Compl. ¶¶ 67-93.  They allege a products liability claim based on the theory that Nissan designed a defective and unreasonably dangerous vehicle for normal use.  Id. ¶ 73.  The Taylor Plaintiffs further allege that Nissan negligently failed to provide adequate warnings of the substantial dangers known or knowable at the time of designing the vehicle up to the time of the incident.  Id.  Finally, Mr. Taylor alleges that he suffered serious mental anguish and emotional distress as a result of having witnessed the incident.  Id. ¶ 88.

In response to the Complaint, Nissan has filed the instant Motion to Dismiss Plaintiffs' Class Claims.  Among other things, Nissan contends that vehicles equipped with the Intelligent Key system are in compliance with FMVSS 114, and thus, Plaintiffs' Class Claims should therefore be dismissed.  Nissan contends that the "key" in the Intelligent

---

[1] Although the Complaint names Nissan North America, Inc. and Nissan Motor Company, Ltd. as Defendants, the motion to dismiss is brought only by Nissan North America, Inc.  It is unclear whether Nissan Motor Company, Ltd., is, in fact, a party-defendant in this action.

Key system is the electronic code transmitted by the key fob, not the key fob itself.  Since the vehicle's computer system retains the electronic code until the vehicle's transmission is in "park" and the engine is turned off, Nissan maintains that their vehicles comply with FMVSS 114.  However, Plaintiffs contend that the key is comprised of the key fob *and* the electronic code it transmits.  Pls.' Opp'n. at 7, Docket 32.  Therefore, Plaintiffs argue, Nissan has failed to comply with FMVSS 114 because the key fob can be removed from the vehicle while it is off, when the transmission is not in "park."  Id.[2]

## II.    LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).   When considering a motion to dismiss under Rule 12(b)(6), a court must take the allegations as true and construe them in the light most favorable to plaintiff.  See Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). If the complaint is dismissed, plaintiffs generally should be afforded leave to amend unless it is clear the complaint cannot be saved by amendment.  See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

---

[2] Nissan accompanied its motion to dismiss with a request for judicial notice, which includes, inter alia, two letters from the NHTSA and a report prepared for the NHTSA regarding whether the 2009 Nissan Altima complies with FMVSS 114.  Def.'s Req. for Judicial Notice ("RJN") Exs. 2-4, Docket 17.  Although Plaintiffs have filed an objection to these exhibits, Docket 31, the Court notes that none of the disputed documents is material to the Court's ruling.  As such, Plaintiffs' objections are overruled as moot.  Nissan's separate Motion to Strike the Taylor Plaintiffs' Class Allegations, Docket 12, is moot in light of the Court's ruling on Nissan's motion to dismiss.

III.   **DISCUSSION**

   A.   **DEFINITION OF "KEY" UNDER FMVSS 114**

   The salient question presented in this action and the instant motion to dismiss is whether, under the facts alleged, Nissan's Intelligent Key system violates FMVSS 114. The starting point for the Court's analysis is the language of the regulation itself.  <u>Wards Cove Packing Corp. v. Nat'l Marine Fisheries Serv.</u>, 307 F.3d 1214, 1219 (9th Cir. 2002). "[T]he plain meaning of a regulation governs and deference to an agency's interpretation of its regulation is warranted only when the regulation's language is ambiguous." <u>Id.</u> (citing <u>Christensen v. Harris County</u>, 529 U.S. 576, 588 (2000)).  "Where a regulation's meaning is plain and unambiguous, [the court] must construe it to give effect to that meaning." <u>United States v. Garza-Sanchez</u>, 217 F.3d 806, 810 (9th Cir. 2000).

   The provision of FMVSS 114 at issue set forth in 49 C.F.R. § 571.114 (S5.2), which is entitled "Rollaway prevention in vehicles equipped with transmissions with a "park" position."   This subsection states that:  "Except as specified in S5.2.3, the starting system required by S5.1 *must prevent key removal* when tested according to the procedures in S6, *unless* the transmission or gear selection control is locked in 'park' or becomes locked in 'park' as a direct result of key removal." <u>Id.</u> § 571.114 (S5.2.1)[3] (emphasis added).  The regulation specifically defines "key" as "a physical device *or* an electronic code which, when inserted into the starting system (by physical *or* electronic means), enables the vehicle operator to activate the engine or motor." <u>Id.</u> § 571.114 (S4) (emphasis added). Here, Plaintiffs contend that *the fob*, i.e., the electronic code and the physical device housing the transponder which transmits the electronic code, constitutes the "key."  Pls.' Opp'n at 7.  They allege that the ability to remove *the key fob* from a vehicle equipped with the Intelligent Key system, even if the transmission is not in "park," necessarily violates FMVSS 114.  <u>Id.</u>

   ───────────────

   [3] Subsection S5.2.3 grants manufacturers the option of including a "key removal override" which allows the removal of the key without the transmission being locked in the "park" position in limited circumstances, such as electrical failure, or through the use of a tool, provided that steering and self-mobility are prevented.  49 C.F.R. § 571.114 (S5.2.3).

1      Plaintiffs' interpretation of "key" cannot be reconciled with the plain language of the

2  regulation.  In their view, the key is comprised of *both* the electronic code *and* the physical

3  device (i.e., the key fob/transponder) that is used to transmit the code.  Yet, FMVSS 114

4  expressly defines "key" as *either* "a physical device *or* an electronic code" that activates the

5  engine "when inserted into the starting system (by physical *or* electronic means) . . . ."  49

6  C.F.R. § 571.114 (S4) (emphasis added).  Subsection 5.2 is written in the disjunctive, not

7  the conjunctive.  Moreover, while Plaintiffs may be correct that both the key fob and the

8  electronic code must be present to start the vehicle, only the electronic code is "inserted

9  into the starting system."  49 C.F.R § 571.114 (S4).  Indeed, as Plaintiffs themselves

10 acknowledge, the key fob only needs to be "*in the vehicle*," as opposed to being inserted

11 into the starting system.  Pls.' Opp'n at 7 (emphasis added).[4]

12     Moreover, Plaintiffs' construction of FMVSS 114 would inappropriately render the

13 NHTSA's revised definition of "key" superfluous.  As noted, in 2007, the NHTSA

14 redefined "key" to include "an electronic code" inserted into the vehicle's starting system

15 through "electronic means."  49 C.F.R. § 571.114 (S4). All of the smart key systems

16 identified by Plaintiffs utilize a "physical device" in the form of a key fob, which is used to

17 transmit the electronic code to start the engine.  Id. ¶¶ 10-11.  If Plaintiffs were correct in

18 stating that a "key" includes the key fob *and* the code, the distinction between a "physical

19 device" and "electronic code" would be meaningless because a key, whether physical or

20 electronic, would *always* include the "physical device" that transmits the code.  Such a

21 construction of FMVSS 114 is impermissible.  See Hart v. McLucas, 535 F.2d 516, 519

22

23

24     [4] The Court notes that the NHTSA itself interprets "key" in FMVSS 114 to mean the
   "identification code in the system," as opposed to both code and the transponder. Def.'s
25 RJN Ex. 2 at 3. Plaintiffs concede that the code, by itself, can be considered the "key" when
   the key fob is inside the vehicle while the vehicle is still on. Pls.' Opp'n at 9.  However,
26 they argue that when the vehicle is off, the "key" must be construed as "the fob" because
   the car cannot be started unless the fob is present in the vehicle.  Id.  Plaintiffs cite no legal
27 authority for this proposition nor does such a conclusion logically flow from the
   unequivocal language of FMVSS 114, which does not alter the definition of "key" based on
28 whether the vehicle is on or off.

1  (9th Cir. 1976) ("[T]he construction of administrative regulations . . . which render

2  regulatory provisions superfluous are to be avoided").

3          At bottom, the Court concludes that for purposes of FMVSS 114, the term "key" in

4  the context of the instant action refers to *the electronic code* that is transmitted by the

5  transponder that is inserted into the vehicle's starting system.  Although the code is sent

6  from the key fob, that physical device is not part of the "key," as defined in the subject

7  regulation.  As such, whether or not the *key fob* can be removed from the vehicle when the

8  transmission is not in the "park" position is inapposite for purposes of FMVSS 114.  This

9  conclusion is fatal to Plaintiffs' Class Claims.  Because no amendment can cure this

10  deficiency, Plaintiffs' Class Claims are dismissed without leave to amend.  See Ventress v.

11  Japan Airlines, 603 F.3d 676, 680 (9th Cir. 2010) (holding that district courts have

12  discretion to deny leave to amend "when amendment would be futile").

13          **B.    INDIVIDUAL CLAIMS BY THE TAYLOR PLAINTIFFS**

14          Although Nissan's motion to dismiss purportedly is directed towards all of

15  Plaintiffs' claims, it only addresses the Class Claims and neglects to address the individual

16  claims brought by the Taylor Plaintiffs; namely, the fifth cause of action for products

17  liability and sixth cause of action for negligence.  Compl. ¶¶ 67-93.  Since these are

18  individual state law claims, as opposed to claims brought on behalf a putative class, the

19  Court questions whether it has or should retain jurisdiction over these remaining claims.

20  See Higdon v. Pacific Bell Tel. Co., Case No. C 08-03526 RS, 2010 WL 1337712 (N.D.

21  Cal., April 2, 2010) (questioning whether court had jurisdiction under CAFA or should

22  exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) where CAFA claims had

23  been dismissed) (Seeborg, J.).

24          When the federal claim that served as the basis for the district court's jurisdiction is

25  eliminated, either through dismissal by the court or by amendment to the pleadings, a

26  district court may decline to assert supplemental jurisdiction over the remaining state law

27  causes of action.  See 28 U.S.C. § 1367(c)(3); e.g., Carnegie-Mellon Univ. v. Cohill, 484

28  U.S. 343, 351(1988) ("When the single federal-law claim in the action was eliminated at an

early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction"). In the instant case, Plaintiffs predicated this Court's subject matter jurisdiction on CAFA. Compl. ¶ 15. Since the Class Claims have been dismissed, it appears that the Court has jurisdiction over the Taylor Plaintiffs' individual claims only to the extent that it chooses to assert supplemental jurisdiction over them. However, because neither party has addressed the resolution of these claims, the Court will direct the parties to submit supplemental briefing on the issue of jurisdiction.

## IV.    CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.    Defendant's motion to dismiss is GRANTED. Plaintiffs' Class Claims are DISMISSED without leave to amend.

2.    The parties shall meet and confer regarding the disposition of the remaining individual claims brought by the Taylor Plaintiffs. If the parties are unable to agree on a resolution, Plaintiffs shall file a supplemental memorandum regarding the Court's jurisdiction over the Taylor Plaintiffs within *seven days* of the date this Order is filed, and Defendant's response be shall be filed *seven days* thereafter. The supplemental briefs may not exceed five pages. The matter will then be taken under submission without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b).

3.    This Order terminates Docket 12 and 14.

IT IS SO ORDERED.

Dated: 9/1/10

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge