1  Elizabeth J. Cabraser (SBN 083151)
   Scott P. Nealey (SBN 193062)
2  Jahan C. Sagafi (SBN 224887)
   Joseph P. Forderer (SBN 278774)
3  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
4  San Francisco, CA  94111-3339
   Telephone:  (415) 956-1000
5  Facsimile:  (415) 956-1008
   Email: ecabraser@lchb.com
6  Email: snealey@lchb.com
   Email: jsagafi@lchb.com
7  Email: jforderer@lchb.com

8  *Attorneys for Plaintiffs and proposed Class Members*

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11                  OAKLAND DIVISION

12

| | |
|---|---|
| 13  HELEN TARAGAN, MATTHEW WAKEFIELD, and MARITES ASIDO, on behalf of themselves and all others similarly situated, | Case No.  CV09-3660 |
| 14 | **FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| 15            Plaintiffs, | **CLASS ACTION** |
| 16  v. | **DEMAND FOR JURY TRIAL** |
| 17 | |
| 18  NISSAN NORTH AMERICA, INC., a California corporation; and NISSAN MOTOR COMPANY, LTD., a Japanese company | |
| 19 | |
| 20            Defendants. | |

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.      Plaintiffs Helen Taragan, Matthew Wakefield, and Marites Asido ("Plaintiffs") bring this action on behalf of themselves and all other owners and lessees of vehicles manufactured, distributed, and/or sold by Nissan North America, Inc. and Nissan Motor Company, Ltd. (collectively, "Nissan") that use a remote-control electronic key (sometimes referred to as the "Intelligent Key") ("Electronic Key") system and an automatic (as opposed to manual) transmission.  The vehicles at issue are all Nissan and Infiniti vehicles equipped with an Electronic Key system (the "Subject Vehicles"), including, for example, the 2009 Nissan Murano, 2007 Infinity G35, 2006 Infinity M35, 2007 Nissan Altima, 2008 Nissan Maxima, 2005 Infinity FX 35, 2008 Nissan Murano S, 2008 Nissan Altima, and 2007 Nissan Sentra.

2.      An Electronic Key allows the driver to start the vehicle's ignition by sending an electronic signal through the air to the vehicle's computer.  Thus, an Electronic Key can remain in the driver's pocket or purse throughout operation of the vehicle, without touching the vehicle.  In contrast to Electronic Keys are physical keys, which must be physically inserted into the ignition to start the engine ("Physical Keys").  Electronic Keys were first introduced into the market approximately a decade ago and are becoming increasingly common.

3.      Nissan's vehicles with Electronic Keys are unsafe because they suffer from Rollaway Danger.  Specifically, the vehicles' engines can be turned off while the transmission is in a non-park gear position (e.g., drive, reverse, etc.), at which point the vehicles can roll away, surprising and injuring drivers, passengers, and bystanders.

4.      The Subject Vehicles are unsafe, because Nissan's Electronic Key system creates a serious risk of rollaway accidents ("Rollaway Danger").  Rollaway Danger exists when a vehicle with automatic transmission can be stopped, and the engine can be turned off with the transmission in a non-park gear (e.g., drive, reverse, etc.).  At that point, the vehicle is free to – and sometimes does – move (i.e., "roll away") (hereinafter, the "Defect").  By contrast, a vehicle in park cannot roll away, because when it is in park, the vehicle's parking pawl engages in the annulus gear, preventing the wheels from rotating, as long as the vehicle is not on an extremely steep incline.  Rollaway accidents can cause property damage, personal injury, and even death.

1    For example, in the original complaint in this action, one of the plaintiffs (who subsequently

2    settled her claims and is no longer a party) alleged that her 2009 Nissan Murano rolled away in

3    such a fashion, crushing her foot.

4           5.     Rollaway Danger is exacerbated by the fact that most drivers do not know

5    of or anticipate it.  The need to shift into park (or have the vehicle in park) to turn off the vehicle

6    and remove the key (whether a Physical Key or an Electronic Key) is a key safety feature that

7    drivers rely upon, but whose absence on the Subject Vehicles is not readily apparent.  As

8    illustrated above, this absence creates Rollaway Danger, which has resulted in vehicle collisions,

9    property damage, and serious physical injuries.

10          6.     Nissan has misrepresented the Subject Vehicles as safe.

11          7.     On information and belief, most vehicles with automatic transmissions sold

12   in the United States do not contain this Defect and are designed in such a way that prevents the

13   driver from removing the physical key from the vehicle while the transmission is in a non-park

14   gear.

15          a      Vehicles with traditional physical keys:  On information and belief,

16   all vehicles that use Physical Keys include a mechanism that physically locks the key into the

17   ignition while the vehicle is in a non-park gear; only once the gear is shifted into park does the

18   ignition physically release the key, allowing the driver to exit the vehicle with the key in hand.

19   By physically locking the key in place while the vehicle is in an unsafe condition (i.e., a non-park

20   gear), such a vehicle prevents Rollaway Danger.

21          b      Vehicles with electronic keys:  Vehicles with Electronic Keys have

22   other safety mechanisms to prevent Rollaway Danger.  Such vehicles ensure safety by either (1)

23   automatically shifting into park when the vehicle is turned off or (2) refusing to turn off until the

24   vehicle is shifted into park.  Regardless of which safety mechanism is used, the vehicle ensures

25   that if it is off, it is in park, and therefore is not subject to Rollaway Danger.

26          8.     The proposed Class is defined as:  All persons in the United States who

27   have purchased or leased a Subject Vehicle with the Defect.

28

9.      On information and belief, Nissan knew of the Defect but failed to disclose and concealed it from Plaintiffs, the Class Members, and the public.  To date, Nissan has failed to notify the Class Members of the Defect, of how it creates Rollaway Danger, and of the unsafe nature of the Subject Vehicles.  Nissan has failed to supply funds or any other adequate remedy to fix the Defect.  Rather, Nissan has concealed and ignored the Defect and Rollaway Danger.

10.     As a result of the Defect and Nissan's material omissions and misstatements regarding the Defect, Plaintiffs and the Class Members have been harmed.  They have purchased or leased the Subject Vehicles that they would not otherwise have purchased or leased or would have paid less for had they known of the Defect.  Absent relief from the Court, any replacement or repair of the vehicles will be at Plaintiffs' and the Class Members' own cost.  In addition, Plaintiffs and the Class Members are at undue risk of suffering property damage, physical injury, and death due to the Defect and Nissan's failure to recall, buy back, provide warnings about, and/or supply funds to retrofit and/or repair the dangerously defective Subject Vehicles.

## JURISDICTION, VENUE, INTRADISTRICT ASSIGNMENT

11.     The Court has jurisdiction over Plaintiffs' claims under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  With respect to CAFA, this Court has jurisdiction since:  (i) the amounts in controversy exceed the jurisdictional amount, (ii) the Class consists of thousands of individuals, and (iii) Members of the proposed Plaintiff Class are citizens of states different from Nissan's home state.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff Taragan lived and leased her Nissan vehicle in this District, Plaintiff Asido lives and owns her Nissan vehicle in this District, and because Defendants have conducted business within this District by marketing, advertising, warranting and selling the Subject Vehicles here.

13.     Intradistrict assignment to San Francisco/Oakland is appropriate under Civil L.R. 3-2(d) because part of this action arose in Alameda County.

**PARTIES**

**Plaintiffs**

14.     Plaintiff Helen Taragan was a resident of Dublin, California (in Alameda County) from approximately 1999 to November 2011.  From 2008 to 2011, she leased a 2009 Nissan Maxima (VIN No. 1N4AA51E89C802466), which contains the Defect.

15.     Plaintiff Matthew Wakefield is a resident of Rancho Cucamonga, California (in San Bernardino County).  In April 2008, he purchased a 2008 Nissan Altima (VIN No. 1N4CL21E78C232301), which contains the Defect.

16.     Plaintiff Marites Asido is a resident of Daly City, California (in San Mateo County).  In 2011, she purchased a 2012 Nissan Altima (VIN No. 1N4AL2AP4CN479863), which contains the Defect.

**Defendants**

17.     Nissan North America, Inc. is a California corporation that is qualified to do, and does, business in the State of California and this District.

18.     Nissan Motor Company, Ltd. is a Japanese company that does business in this State and District.

**ALLEGATIONS**

**I.     Rollaway Danger And Mechanisms To Prevent It**

19.     The Rollaway Danger arises because the Subject Vehicles can be turned off while the transmission is in a non-park gear position (e.g., drive, reverse, etc.), at which point the vehicles can roll away, surprising and injuring drivers, passengers, and bystanders.

20.     On information and belief, all passenger vehicles with automatic transmissions that use traditional physical keys (as opposed to electronic keys) sold in the United States are equipped with a system that prevents a driver from removing the vehicle's key from the vehicle when the transmission is in a non-park gear (e.g., drive, neutral, reverse, etc.).  When the vehicle is in park, the vehicle's parking pawl engages in the annulus gear, which prevents the

1   axles from rotating, keeping the vehicle from rolling away (unless it is on a particularly sharp

2   incline, such that the weight of the vehicle can overcome the strength of the parking pawl).

3          21.    This traditional safety feature prevents the driver from physically removing

4   the key from the vehicle's ignition unless the vehicle is safely in park.

5   **II.    The Advent Of Electronic (Remote-Control) Keys**

6          22.    Over the past decade, more and more vehicles in the United States are

7   being sold with Electronic Keys, which start the engine by sending an electronic signal through

8   the air to remotely start the vehicle.  Such keys can function without ever touching the vehicle

9   (e.g., the Electronic Key can remain in the driver's pocket or purse throughout operation of the

10  vehicle), and do not even require that the driver press a button on the Electronic Key.

11         23.    Vehicles with Electronic Keys have several features that differentiate them

12  from vehicles that use Physical Keys (the vehicles described in § II, above).  First, vehicles with

13  Electronic Keys usually have a "Start/Stop" button on the dashboard, rather than an ignition

14  mechanism that accepts a Physical Key, to start the engine.  Second, these vehicles have a

15  transponder (or "fob") that contains the circuitry that sends the electronic signal, rather than a

16  conventional physical key with teeth.  Sometimes, the transponder must be inserted into a slot or

17  "holster" on the dashboard to allow engine activation (similar to how a Physical Key is inserted

18  into a lock mechanism) (a "Physical/Electric Hybrid Key").  In other cases, however, the

19  transponder only needs to be present inside the vehicle to enable activation of the engine (i.e., it

20  need not physically touch the vehicle).

21  **III.   Nissan's Use Of Electronic Keys**

22         24.    Nissan – like many car companies – has begun to sell vehicles in the

23  United States that are equipped with Electronic Keys.  Nissan markets some of these keys as

24  "Intelligent Keys" or "Infiniti Intelligent Keys."  Since 2002, Nissan has sold vehicles with

25  Electronic Keys as either standard or optional equipment on various vehicles, including Altima,

26  Maxima, Murano, Pathfinder, Rogue, Sentra, and Infiniti vehicles.  On information and belief,

27  more than one million Nissan vehicles have been sold with Electronic Keys.  Nissan designed,

28

manufactured, marketed, advertised, warranted, sold and leased the Subject Vehicles at issue in this case in this District, and throughout the United States, to members of the Class.

25.     Unfortunately and inexplicably, Nissan has failed to implement an updated safety feature to prevent Rollaway Danger in the Subject Vehicles.  In these vehicles, a driver may turn off the vehicle, accidentally leave the car in gear (e.g., drive, reverse, neutral, etc.), and exit the car – with physical key fob in hand – at which point the Rollaway Danger exists, because the vehicle can surprise the driver by rolling away.  If, for example, the vehicle is on a slight incline, the vehicle is likely to roll away on its own after the driver has turned off the vehicle, causing a serious risk to the physical safety of individuals in and around the vehicle.

26.     For example, Francis Jeanette Taylor, a plaintiff asserting claims in the initial Complaint in this case, owned a 2009 Nissan Murano with the Defect.  On August 27, 2008, she pulled into a restaurant parking lot, turned off the engine, and exited her car.  As Mrs. Taylor was in the act of opening the driver-side rear door, the car began to roll backwards.  Mrs. Taylor attempted to re-enter the open front driver's door to stop the vehicle, but the car caught her in its door and dragged her along the pavement, severely crushing her foot.

27.     As another example, just last month, a complaint filed with the National Highway Traffic Safety Admission ("NHTSA") described a similar dangerous incident:

> I have a 2008 Nissan Altima.  It has a push button star/stop [sic] switch and no [physical] keys are needed.  I accidentally left the car in drive and pushed the off button and left the car.  The car turned off and rolled out of the parking lot and into oncoming traffic.  I was not in the vehicle at the time.  This is very dangerous.

NHTSA Compl., ODI ID No. 10245239 (Sept. 20, 2012) (capitalization adjusted).

### IV.     How Nissan's Competitors Safely Use Electronic Keys

28.     Nissan's failure to remedy the Defect and refusal to implement a key system to prevent Rollaway Danger is puzzling because numerous competitor manufacturers have sold vehicles with Electronic Key systems that safely and cheaply guarantee that the vehicle is in "park" when the driver exits the vehicle.  There are three common ways that Nissan's manufacturers could eliminate Rollaway Danger:

819527.11
FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

a       Solenoid (Chrysler, Honda, and BMW):  For Physical/Electric Hybrid Keys, which are physically inserted into a locking mechanism in the vehicle, there is a straightforward physical solution to prevent Rollaway Danger, which mimics the universal solution used by vehicles with traditional Physical Keys.  Under this approach, the holster that holds the Physical/Electric Hybrid Key has a solenoid, which is a device that locks the key into the holster.  The key has small notches, so that the solenoid can grab and hold the key.  The solenoid keeps the Physical/Electric Hybrid Key physically locked in the holster while the vehicle is in a non-park gear.  For example, if the driver turns the vehicle off while it is in reverse, the solenoid keeps the Physical/Electric Hybrid Key locked in place.  (Thus, this mechanism functions exactly like the Rollaway Danger prevention mechanism that is ubiquitous in American vehicles with Physical Keys.)  Several of Nissan's competitors, such as Chrysler, Honda, and BMW, use this mechanism.  Obviously, this mechanism only works with Physical/Electric Hybrid Keys, and cannot work with true Electronic Keys that can function without ever touching the vehicle.

b       Automatic shifting into park (Toyota, Mercedes):  Because Electronic Keys need not touch the vehicle, a different mechanism is necessary.  One mechanism simply automatically shifts the vehicle transmission into park when the vehicle is turned off.  Therefore, Rollaway Danger simply does not exist for these vehicles, because the vehicle can *never* be off and in gear.  If the driver forgets to shift into park when turning the vehicle off, the vehicle provides a backstop by shifting into park for him or her.  This elegant mechanism is possible thanks to the development of inexpensive, small, and powerful computers that can easily be included in vehicle components (e.g., as part of the ignition and transmission systems).  Several of Nissan's competitors, such as Toyota and Mercedes, use this mechanism.

c       Can only turn off when in park (Chrysler, Mercedes):  Lastly, another mechanism used in many competitors' vehicles with Electronic Keys works as follows.  When the driver attempts to turn off the vehicle while it is in a non-park gear (e.g., drive, reverse, etc.), the vehicle refuses to turn off.  With the vehicle on, the driver presses the start/stop button, but nothing happens.  (Allowing the driver to turn the vehicle off at that moment would subject

the driver, passengers, passersby, and nearby property to Rollaway Danger.)  Since the driver cannot sensibly leave the vehicle in gear and on (it will obviously and immediately move under power), the driver, who is attempting to park, will shift the vehicle into park and then try turning off the vehicle.  At this point, because turning off the vehicle will not create a Rollaway Danger, the vehicle allows itself to be turned off.  The vehicle is now in park and off; there is no Rollaway Danger.  Several of Nissan's competitors, such as Chrysler and Mercedes, use this mechanism.

**V.      The Unsafe Nature Of The Nissan Vehicles At Issue**

29.      Unlike these competitor vehicles, the Subject Vehicles are unsafe, because they are subject to Rollaway Danger.  None of these vehicles have any of the three safety mechanisms described above.

30.      Prior to the sale or lease of the Subject Vehicles, Nissan knew, or should have known, that they were unsafe and presented an unreasonable danger to drivers in that they were and are subject to Rollaway Danger.  On information and belief, Nissan knew and knows that the Subject Vehicles are defectively designed, and knew and knows of a non-defective and safe alternative design for the Subject Vehicle's defective Electronic Key system.

31.      As a result of the unsafe nature of the Subject Vehicles, Plaintiffs and the Class Members have been harmed, because they have purchased or leased vehicles that they would not otherwise have purchased or leased or would have paid less for had they known of the Defect, and will be forced to repair or replace them at their own cost.  In addition, Plaintiffs and the Class have been placed in danger, since they are at undue risk of suffering physical injury, property damage, and corresponding emotional harm.  Those harms are increased by Nissan's failure to recall, buy back, provide warnings about, and/or supply funds to retrofit and/or repair the dangerously defective Subject Vehicles.

32.      On information and belief, the cost of correcting the Subject Vehicles' Electronic Key design and making non-defective compliant vehicles was and is minimal, especially in comparison to the harm and threat of irreparable injury suffered by Plaintiffs and the Class.  For example, for Subject Vehicles that use a Physical/Electric Hybrid Key, Nissan could install a solenoid that locks the key in place while the vehicle is in a non-park gear (as in the first

- 8 -
FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

mechanism described above).  For Subject Vehicles with purely electronic Electronic Keys, Nissan could reflash the vehicles' computer systems so that they featured one of the two Rollaway Danger prevention mechanisms listed in subparagraphs b & c above.  Either mechanism, as described above, would guarantee that the vehicle could not be off and in gear, completely eliminating Rollaway Danger.  These solutions would likely involve a variable cost of less than $40 per vehicle.

33.     To date, Nissan has failed to notify owners and lessees of the Subject Vehicles of the dangerous Defect and unsafe nature of the vehicles, and has failed to supply funds to fix the problem.  Rather, on information and belief, it has concealed and ignored the problems.

**Fraudulent Concealment Allegations**

34.     Plaintiffs hereby incorporate by reference all other allegations of this Complaint, as if fully set forth herein.

35.     Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Nissan responsible for making material omissions regarding the Defect.  Nissan is in possession of this information.

36.     Plaintiffs' claims arise, in part, out of Nissan's fraudulent concealment of the Defect and the safety hazard it poses, and its material omissions about the quality and safety of the Subject Vehicles.  To the extent that Plaintiffs' claims arise from Nissan's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims.  Plaintiffs allege that at all relevant times, including the moment they purchased or leased their vehicles, Nissan knew, or was reckless in not knowing, of the Defect; Nissan was under a duty to disclose the Defect based upon its exclusive knowledge of it and its material omissions about it; and Nissan never disclosed the Defect to the Plaintiffs or the public.

37.     Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Nissan, incorporating by reference all other allegations in this complaint:

a       **Who**:  Nissan actively concealed the Defect from Plaintiffs and omitted material facts regarding the Subject Vehicles to Plaintiffs as specified above.  Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Nissan responsible for such decisions.

b       **What**:  Nissan knew, or was reckless or negligent in not knowing, that the Subject Vehicles contain the Defect.  Nissan concealed the Defect and omitted material facts regarding the Subject Vehicles to Plaintiffs.

c       **When**:  Nissan concealed material information regarding the Defect at all times and omitted material facts regarding the Subject Vehicles, starting in 2002 or earlier, or at the subsequent introduction of certain models of Subject Vehicles to the market, continuing through the time of sale or lease, and on an ongoing basis, and continuing to this day.  Nissan has never taken any action to inform consumers about the true nature of the Defect.

d       **Where**:  Nissan concealed material information regarding the true nature of the Defect in every communication it had with Plaintiffs and the Class and omitted material facts regarding the Defect.  Information about the Defect is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manual, or on Nissan's website.

e       **How**:  Nissan concealed the Defect from Plaintiffs and the Class Members and omitted material facts regarding the Defect.  Nissan actively concealed the truth about the existence and nature of the Defect from Plaintiffs and Class Members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer.

f       **Why**:  Nissan actively concealed material information about the Defect for the purpose of inducing Plaintiffs and Class Members to purchase and lease Subject Vehicles in place of competitors' vehicles, and omitted material facts about the Subject Vehicles that it had a duty to disclose.  Had Nissan disclosed the truth, Plaintiffs, the Class Members, and reasonable consumers would not have bought or leased the Subject Vehicles or would have paid less for them.

**TOLLING OF STATUTES OF LIMITATION**

38.     Any applicable statutes of limitations have been tolled by Nissan's continuing, knowing, and active concealment of the facts alleged herein.  Plaintiffs and members of the Class have been kept in ignorance of vital information essential to the pursuit of their claims without any fault or lack of diligence on their part.  Because of the non-obvious nature of the Defect, Plaintiffs and the Class Members could not reasonably have discovered the facts giving rise to the claims asserted herein until very recently.

39.     In the alternative, Nissan should be estopped from relying on any statutes of limitation.  Nissan has been under a continuing duty to disclose the true character, quality, and nature of the Defect and its Subject Vehicles to Plaintiffs and the Class Members, to repair the Defect, and to implement safe design, but has failed to do so.  Because (a) the existence of the Defect is not obvious to the reasonable consumer, (b) Nissan has the sophistication and expertise to understand Rollaway Danger and the best mechanisms for preventing or eliminating it, including those implemented by its various competitors, and (c) Nissan is and was in exclusive possession of the facts and information concerning the true character, quality, and nature of the Defect and the Subject Vehicles, Nissan is estopped from relying on any statutes of limitations.

40.     Plaintiffs only learned of the wrongdoing alleged herein very shortly before the filing of the complaints in which they were plaintiffs.  Plaintiffs and Class Members could not reasonably have discovered Nissan's wrongdoing prior to this time.

**CLASS ACTION ALLEGATIONS**

41.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated, under Federal Rule of Civil Procedure 23.

42.     Plaintiffs seek to represent a Nationwide Class of consumers, defined as follows:

> **Nationwide:**  All persons and entities in the United States who have owned or leased Nissan or Infiniti vehicles equipped with Electronic Keys.

43.     Excluded from the Class are: (1) Defendants Nissan North America, Inc., Nissan Motor Company, Ltd., any entity in which they have a controlling interest, and Defendants' legal representatives, officers, directors, assigns, and successors; (2) the judge to whom this case is assigned and all members of the judge's immediate family; and (3) all persons who properly execute and file a timely request for exclusion from the Nationwide Class.

44.     Plaintiffs also seek to represent a California Class of consumers, defined as follows:

> **California:** All persons and entities in California who have owned or leased Nissan or Infiniti vehicles equipped with Electronic Keys.

45.     Excluded from the Class are: (1) Defendants Nissan North America, Inc., Nissan Motor Company, Ltd., any entity in which they have a controlling interest, and Defendants' legal representatives, officers, directors, assigns, and successors; (2) the judge to whom this case is assigned and all members of the judge's immediate family; and (3) all persons who properly execute and file a timely request for exclusion from the California Class.

46.     Plaintiffs are informed and believe that there are over one million Subject Vehicles.  The owners and lessees of these vehicles, the Class Members, are dispersed throughout California and the United States.  Both Classes are, therefore, so numerous and geographically dispersed that joinder of all Members of either Class in one action is impracticable.

47.     Plaintiffs' claims are typical of the Class Members' claims, as required by Fed. R. Civ. P. 23(a)(3), in that each Plaintiff, like all Class Members, has owned or leased a Subject Vehicle.  Plaintiffs, like all Class Members, have been damaged by Nissan's misconduct in that they have or will incur the cost of repairing and/or replacing their defective Subject Vehicles and are placed at an undue risk of irreparable physical injuries or death by Nissan's actions, concealments, and refusal to act to recall, buy back, and/or retrofit their dangerously defective Subject Vehicles.

48.     The factual and legal bases of Nissan's misconduct are common to all Class Members and represent a common thread of fraudulent and/or negligent misconduct resulting in injury to Plaintiffs and all Class Members.

- 12 -

49.     There are numerous questions of law and fact common to Plaintiffs and the Class Members, and those questions predominate over any questions that may only affect individual Class Members, within the meaning of Fed. R. Civ. P. 23(a)(2) and 23(b)(3).  Common questions include the following:

a       Whether the Subject Vehicles are "consumer products," as defined by 15 U.S.C. § 2301(1);

b       Whether the Plaintiffs and the Class Members are "consumers," as defined by 15 U.S.C. § 2301(3);

c       Whether Nissan is a "warrantor" and "supplier," as defined by 15 U.S.C. § 2301(4) and (5);

d       Whether Nissan breached its implied warrant by selling the Subject Vehicles;

e       Whether the Subject Vehicles are and were not merchantable nor fit for the intended purpose because of the Defect and Rollaway Danger;

f       Whether the Subject Vehicles are defective in that they can be turned off with the gear in a non-park position and therefore subject to Rollaway Danger;

g       Whether Nissan knew or should have known of the defective nature of the Subject Vehicles;

h       Whether Nissan knowingly concealed and intentionally failed to disclose to Plaintiffs and the Class Members the fact that the Subject Vehicles contained the Defect;

i       Whether the Defect makes the Subject Vehicles unsafe, unmerchantable, or unfit for their ordinary use;

j       Whether Nissan engaged in unfair competition or unfair deceptive acts or practices when it represented, through omission of material facts, that the Subject Vehicles had characteristics that they did not have, concealed the Defect, failed to take action to notify the Class Members of the Defect, and/or failed to recall them for repair or to supply funds to fix them;

819527.11

1        k  Whether Nissan represented that the Subject Vehicles' Electronic

2 Key systems were of a particular standard, quality, or grade when they were of another;

3        l  Whether Nissan represented that the Subject Vehicles' Electronic

4 Key systems had characteristics, uses, or benefits that they did not have;

5        m  Whether Nissan omitted or concealed material information

6 regarding the Subject Vehicles' Electronic Key systems in its advertisements and other

7 communications to the public;

8        n  Whether Nissan intended and designed the acts and practices

9 described in this Complaint to result in the sale of motor vehicles with Electronic Key systems to

10 the consuming public;

11        o  Whether Plaintiffs and  the Class Members are entitled to damages

12 in the form of a fund for payment or reimbursement of the costs of correcting the Defect, or

13 otherwise;

14        p  Whether Nissan should be declared financially responsible for

15 notifying all Class Members of the defective nature of the Subject Vehicles and for the costs and

16 expenses of recall, or retrofit of the Subject Vehicles; and

17        q  Whether Plaintiffs and the Class are entitled to injunctive relief.

18    50.  Plaintiffs will fairly and adequately represent and protect the Class

19 Members' interests, as required by Fed. R. Civ. P. 23(a)(4), in that they have no interests that are

20 antagonistic to or in conflict with those they seek to represent.  Plaintiffs have retained counsel

21 with substantial experience in prosecuting nationwide consumer class actions, including actions

22 involving defective products, including automobiles.  Plaintiffs and their counsel are committed

23 to vigorously prosecuting this action on behalf of the Plaintiffs and the Class Members.

24    51.  In view of the complexity of the issues and the expense that an individual

25 Plaintiff would incur if he or she attempted to obtain relief from a large corporation like Nissan,

26 the separate claims of individual Class Members are monetarily insufficient to support separate

27 actions.  Because of the relatively small value of the individual Class Members' claims, few, if

28 any, Class Members could afford to seek legal redress for the wrongs complained of in this

1   Complaint.  A class action is therefore superior to other available methods for the fair and

2   efficient adjudication of the controversy under Fed. R. Civ. P. 23(b)(3).

3          52.    The Classes are readily definable, and prosecution as a class action will

4   eliminate the possibility of repetitious litigation and will provide redress for claims too small to

5   support the expense of individual, complex litigation.  No difficulties will be encountered in

6   management of a class action.  Absent a class action, Class Members will continue to suffer

7   losses, Nissan's unsafe conduct will be allowed to proceed without remedy, and Nissan will retain

8   millions of dollars received as a result of its wrongdoing.  In addition, without a class action, the

9   Subject Vehicles will remain on the road in their dangerously defective condition unbeknownst to

10   the Class Members and the public, thereby threatening the lives of Class Members, their families,

11   and bystanders near the Subject Vehicles, which are subject to Rollaway Danger.  A class action

12   therefore provides a fair and efficient method for adjudicating this controversy.

13          53.    The prosecution of separate claims by individual Class Members would

14   create a risk of inconsistent or varying adjudications with respect to millions of individual Class

15   Members, which would, as a practical matter, dispose of the interests of the Class Members not

16   parties to those separate actions or would substantially impair or impede their ability to protect

17   their interests and enforce their rights.

18          54.    Because Nissan has acted and failed to act on grounds generally applicable

19   to Plaintiffs and the Class Members, final injunctive, declaratory, or other equitable relief to the

20   Class as a whole is appropriate pursuant to Fed. R. Civ. P. 23(b)(2).

21

22                                **CAUSES OF ACTION**

23                              **FIRST CAUSE OF ACTION**

24   **Breach of Implied Warranty, Magnuson-Moss Warranty Act,**
                         **15 U.S.C. § 2301 *et seq.***
25                    **On Behalf of the Nationwide Class**

26          55.    Plaintiffs hereby incorporate by reference all other allegations of this

27   Complaint, as if fully set forth herein.

28

56.     Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class Members.

57.     The Subject Vehicles are "consumer products," as defined by 15 U.S.C. §2301(1).

58.     Plaintiffs and the Class Members are "consumers," as defined by 15 U.S.C. § 2301(3).

59.     Nissan is a "warrantor" and "supplier," as defined by 15 U.S.C. § 2301(4) & (5).

60.     Nissan provided Plaintiffs and the Class Members with "implied warranties," as defined by 15 U.S.C. § 2301(7).

61.     Nissan breached its implied warranty by selling the Subject Vehicles, which are and were neither merchantable nor fit for their intended purpose because of the Defect and Rollaway Danger.

62.     As a direct and proximate result of Nissan's breach of its implied warranty, Nissan has violated Plaintiffs' and the Class Members' statutory rights under to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

63.     Consequently, Plaintiffs and the Class Members are entitled to damages and other legal and equitable relief pursuant to 15 U.S.C. § 2310(d).

**SECOND CAUSE OF ACTION**

**Fraudulent Concealment**
**On Behalf of the Nationwide Class**

64.     Plaintiffs hereby incorporate by reference all other allegations of this Complaint, as if fully set forth herein.

65.     Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class Members.

66.     On information and belief, at all relevant times, Nissan knew that the Subject Vehicles were defective and posed an unreasonable safety risk to occupants of the Subject Vehicles and bystanders.

1        67.     On information and belief, Nissan knowingly concealed and intentionally

2  failed to disclose to Plaintiffs and the Class Members the fact that the Subject Vehicles contained

3  the Defect.

4        68.     Nissan also knew that the Defect posed a serious risk of personal injury and

5  property damage of Plaintiffs and the Class Members, but concealed that information from them.

6        69.     The concealed information regarding the Defect is material in that a

7  reasonable consumer would find that information important when deciding whether to buy the

8  Subject Vehicles and what price to pay for them.

9        70.     Nissan was and is under a duty to Plaintiffs and the Class Members to

10  disclose these facts because:

11            a     Nissan is in a superior position to know the facts about the quality

12  and nature of the Subject Vehicles and possesses superior knowledge of the Defect; and

13            b     Nissan actively concealed from Plaintiffs and the Class Members

14  the fact that the Subject Vehicles contained the Defect and posed a serious risk of Rollaway

15  Danger.

16        71.     Nissan fraudulently and intentionally concealed from and/or failed to

17  disclose to Plaintiffs and the Class Members the facts described above, with the intent to defraud

18  them and for the purpose of inducing them to act thereon by purchasing or leasing the Subject

19  Vehicles.  Nissan knew that Plaintiffs and the Nationwide Class would not purchase or lease the

20  Subject Vehicles or would have demanded a lower price had Nissan disclosed the defective

21  nature of the Subject Vehicles.

22        72.     Plaintiffs and the Nationwide Class were unaware that the Subject Vehicles

23  contained the Defect and posed a safety risk caused by the Rollaway Danger.

24        73.     Had Nissan disclosed the true defective nature of the Subject Vehicles,

25  Plaintiffs and the Class Members would not have purchased or leased the Subject Vehicles or

26  would have demanded a lower price.

27        74.     As a direct and proximate cause of Nissan's misconduct, Plaintiffs and the

28  Class Members have suffered actual damages in that they are at risk of being seriously injured

819527.11

1   due to Rollaway Danger and in that they would not have purchased or leased the Subject Vehicles

2   or would have demanded a lower price had they known of the Defect.

3        75.    Nissan's misconduct has been and is wanton and/or reckless and/or shows

4   a reckless indifference to the interests of others.  On that basis, Plaintiffs and the Class Members

5   are entitled to an award of punitive and exemplary damages against Nissan, in an amount to be

6   proven at trial.

7   **THIRD CAUSE OF ACTION**

8   **Breach of Implied Warranty, Song-Beverly Consumer Warranty Act,**
   **Cal. Civ. Code § 1792 & 1792.1 _et seq._**

9   **On Behalf of the California Class**

10       76.    Plaintiffs hereby incorporate by reference all other allegations of this

11  Complaint, as if fully set forth herein.

12       77.    Plaintiffs bring this cause of action on behalf of themselves and the

13  California Class Members.

14       78.    Nissan is a merchant pursuant to § 2-314 of the Uniform Commercial

15  Code.

16       79.    Nissan was at all times relevant times the manufacturer, distributor,

17  warrantor, and/or seller of the Subject Vehicles.

18       80.    Nissan impliedly warrants at the time of delivery that the Subject Vehicles,

19  which it designed, manufactured, and sold to Plaintiffs and the Class Members, are merchantable

20  and fit for their ordinary use, are not otherwise injurious to consumers, and come with adequate

21  safety features.

22       81.    Because of the Subject Vehicles' undisclosed unreasonably dangerous

23  Defect, the Subject Vehicles are unsafe, unmerchantable, and unfit for their ordinary use when

24  sold, and threaten injury to Plaintiffs and the Class Members.  The Subject Vehicles are not fit for

25  their ordinary purpose of providing reasonably reliable and safe transportation, because the

26  Subject Vehicles suffer from the Defect, which poses a safety risk to occupants and bystanders.

27

28

82. Nissan impliedly warranted that the Subject Vehicles were of merchantable quality and fit for their ordinary purpose of providing reasonably reliable and safe transportation. The implied warranty included, among other things: (i) a warranty that the Class Vehicles manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation; and (ii) a warranty that the Subject Vehicles would be fit for their intended use while the Subject Vehicles were being operated.

83. Contrary to the applicable implied warranties, the Subject Vehicles are not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Subject Vehicles are defective and pose a safety risk to vehicle occupants and bystanders.

84. As a direct and proximate result of Nissan's breach of implied warranty, Plaintiffs and the Class Members have suffered actual damages and are threatened with irreparable harm by undue risk of physical injury, death, and property damage.

85. Nissan's actions, as complained of herein, breached the implied warranty that the Subject Vehicles were of merchantable quality and fit for their ordinary purpose of providing reasonably reliable and safe transportation, and violate Cal. Civ. Code §§ 1792 and 1792.1.

**FOURTH CAUSE OF ACTION**

**Violation of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code § 17200 _et seq._**
**On Behalf of the California Class**

86. Plaintiffs hereby incorporate by reference all other allegations of this Complaint, as if fully set forth herein.

87. Plaintiffs bring this cause of action on behalf of themselves and the California Class Members.

88. The UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Nissan engaged in conduct that violated each of this statute's three prongs.

89.     Nissan committed an <u>unlawful</u> business act or practice in violation of the UCL when it violated the Magnuson-Moss Warranty Act, the Song-Beverly Consumer Warranty Act, and the CLRA as alleged herein.

90.     Nissan committed <u>unfair</u> business acts and practices in violation of the UCL when it failed to disclose and concealed the existence and nature of the Defect. The Defect presents a safety hazard for occupants of the Subject Vehicles.

91.     Nissan committed <u>unfair</u> business acts and practices in violation of the UCL when it failed to provide a permanent remedy to fix the Defect in the Subject Vehicles.

92.     Nissan committed <u>fraudulent</u> business acts and practices in violation of the UCL when it failed to disclose and concealed the existence and nature of the Defect. Nissan's material omissions and active concealment of the Defect are likely to mislead the public with regard to the true defective nature of the Subject Vehicles.

93.     Nissan's unfair and deceptive acts and practices occurred repeatedly in the course of Nissan's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

94.     As a direct and proximate result of Nissan's unfair and deceptive practices, Plaintiffs and Class Members have suffered and will continue to suffer actual harm.

**FIFTH CAUSE OF ACTION**

**<u>Violation of California's Consumer Legal Remedies Act ("CLRA"),</u>**
**<u>Cal. Civ. Code § 1750 *et seq.*</u>**
**<u>On Behalf of the California Class</u>**

95.     Plaintiffs hereby incorporate by reference all other allegations of this Complaint, as if fully set forth herein.

96.     Plaintiffs bring this cause of action on behalf of themselves and the California Class Members.

97.     Nissan is a "person," as defined by Cal. Civ. Code § 1761(c).

98.     Plaintiffs and Class Members are "consumers," as defined by Cal. Civ. Code § 1761(d).

99.     By failing to disclose the defective nature of the Subject Vehicles to Plaintiffs and the Class Members, Nissan violated Cal. Civ. Code § 1770(a), because Nissan represented – by material omission and affirmative misstatement – that the Subject Vehicles had characteristics and benefits (e.g., safe, reliable, etc.) that they do not have, and that the Subject Vehicles were of a particular standard, quality, or grade (e.g., safe, reliable, etc.) when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

100.     Nissan's unfair and deceptive acts or practices occurred repeatedly in Nissan's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and imposed a safety risk on the public.

101.     Nissan knew that the Subject Vehicles suffered from an inherent Defect and were defectively designed given the fact that the Subject Vehicles suffer from Rollaway Danger.

102.     Nissan was under a duty to Plaintiffs and the Class Members to disclose the Defect, as well as the associated costs that would have to be expended in order to repair the Subject Vehicles due to the Defect, because:

a     The Defect is a safety hazard;

b     Nissan was in a superior position to know the true facts about the Defect;

c     Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Subject Vehicles had the Defect before purchasing or leasing the Subject Vehicles; and

d     Nissan knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the Defect prior to purchase or lease of the Subject Vehicles.

103.     In failing to disclose the defective nature of the Subject Vehicles, Nissan knowingly and intentionally concealed material facts and breached its duty not to do so.

104.     The facts concealed or not disclosed by Nissan to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important

1   in deciding whether or not to purchase a Subject Vehicle.  Had Plaintiffs and the Class Members

2   known that the Subject Vehicles had the Defect, they would not have purchased or leased the

3   Subject Vehicles or would have paid less for them.

4          105.    Plaintiffs and the Class Members are reasonable consumers who do not

5   expect that their Subject Vehicles suffer from the Defect.  That is the reasonable and objective

6   consumer expectation relating to the safe and normal operation of vehicles.

7          106.    As a result of Nissan's conduct, Plaintiffs and the Class Members have

8   been harmed and have suffered actual damages in that the Subject Vehicles create a safety hazard

9   due to Rollaway Danger and due to the fact that Plaintiffs and the Class Members would not have

10  purchased or leased the Subject Vehicles or would have paid less for them if Nissan had disclosed

11  the Defect.

12         107.    As a direct and proximate result of Nissan's unfair or deceptive acts and

13  practices, Plaintiffs and the Class Members have suffered and will continue to suffer actual

14  damages.

15         108.    Pursuant to Civil Code § 1780(a), Plaintiffs and the Class Members are

16  entitled to equitable relief.

17         109.    In accordance with Civil Code § 1782(d), Plaintiffs provided notice of the

18  violations described herein and demanded that they be rectified.  That notice was sent by certified

19  mail on October 29, 2012 to the principal place of Nissan's business in California and to Nissan's

20  counsel, who have appeared in this action.  If Nissan fails to correct the Defect in all Subject

21  Vehicles and to stop manufacturing, selling, and leasing vehicles with the Defect, in accordance

22  to the CLRA, Plaintiffs will amend this complaint to seek actual and punitive damages pursuant

23  to Civil Code § 1780.

24

25                              **PRAYER FOR RELIEF**

26         **WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly

27  situated, pray that the Court enter judgment against Nissan and in favor of the Plaintiffs and the

28  Class, and to award the following relief:

CASE NO. CV09-3660

1     A.  Certification of the proposed Classes;

2     B.  A preliminary and permanent injunction ordering Nissan to create a fund

3 available to Class Members to remedy the Defect in the Subject Vehicles, and all other

4 appropriate equitable relief;

5     C.  A declaration that the Subject Vehicles are unreasonably dangerous and

6 defective, and that Nissan is financially responsible for notifying all Class Members of the

7 defective Subject Vehicles and for the costs and expenses of repair and retrofitting of all such

8 Subject Vehicles;

9     D.  A preliminary and permanent injunction ordering Nissan to bear the cost of

10 notice to Class Members, as approved by the Court, of the availability of funds to remedy the

11 Defect and/or warning of the Defect to all owners and lessees of the Subject Vehicles;

12     E.  An award of compensatory damages for the acts complained of herein, in

13 an amount to be proven at trial;

14     F.  An award of punitive damages for Nissan's intentional, willful, and

15 knowing acts;

16     G.  An award of costs and attorneys' fees, as allowed by law, and/or from a

17 common fund created hereby; and

18

19

20

21

22

23

24

25

26

27

28

819527.11           - 23 -         CASE NO. CV09-3660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1          H.       Such other or further relief as may be appropriate under the circumstances

2    under the Court's exercise of its equitable jurisdiction and inherent authority.

3

4    Dated: October 29, 2012                    Respectfully submitted,

5                                               LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

6
                                               By:   _/s/ Jahan C. Sagafi_____
7                                                      Jahan C. Sagafi

8                                               Elizabeth J. Cabraser  (SBN083151)
                                               Scott P. Nealey  (SBN193062)
9                                               Jahan C. Sagafi (SBN 224887)
                                               Joseph P. Forderer (SBN 278774)
10                                              LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                               275 Battery Street, 29th Floor
11                                              San Francisco, CA  94111-3339
                                               Telephone:  (415) 956-1000
12                                              Facsimile:  (415) 956-1008
                                               Email: ecabraser@lchb.com
13                                              Email: snealey@lchb.com
                                               Email: jsagafi@lchb.com
14                                              Email: jforderer@lchb.com

15                                              *Attorneys for Plaintiffs and proposed Class Members*

16

17

18

19

20

21

22

23

24

25

26

27

28

819527.11                                                                    CASE NO. CV09-3660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1

**JURY TRIAL DEMAND**

2

Plaintiffs hereby demand a jury trial for all claims so triable.

3

Dated: October 29, 2012                    Respectfully submitted,

4

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

5

6

By:    */s/ Jahan C. Sagafi*
                    Jahan C. Sagafi

7

Elizabeth J. Cabraser  (SBN083151)
8       Scott P. Nealey  (SBN193062)
         Jahan C. Sagafi (SBN 224887)
9       Joseph P. Forderer (SBN 278774)
         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
10      275 Battery Street, 29th Floor
         San Francisco, CA  94111-3339
11      Telephone:  (415) 956-1000
         Facsimile:  (415) 956-1008
12      Email: ecabraser@lchb.com
         Email: snealey@lchb.com
13      Email: jsagafi@lchb.com
         Email: jforderer@lchb.com
14

15      *Attorneys for Plaintiffs and proposed Class Members*

16

17

18

19

20

21

22

23

24

25

26

27

28

- 25 -