JOHN H. BEISNER (Admitted *Pro Hac Vice*)
JESSICA D. MILLER (Admitted *Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue NW
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: John.Beisner@skadden.com

JOSHUA M. TEMPLET (Bar No. 267098)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: Joshua.Templet@skadden.com

Attorneys For Defendant Nissan North America, Inc.

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

– – – – – – – – – – – – – – – – – – – – – – – )
)
HELEN TARAGAN, MATTHEW )
WAKEFIELD, and MARITES ASIDO, on )
behalf of themselves and all others similarly )
situated, )
) CASE NO: CV09-3660
)
            Plaintiffs, )
)
    v. )                **DEFENDANT'S MEMORANDUM OF**
)                **POINTS AND AUTHORITIES IN**
)                **SUPPORT OF MOTION TO DISMISS**
NISSAN NORTH AMERICA, INC., a )  **PLAINTIFFS' FIRST AMENDED**
California corporation; and NISSAN MOTOR )  **COMPLAINT FOR DAMAGES AND**
COMPANY, LTD., a Japanese company )  **EQUITABLE RELIEF OR TO STRIKE**
)                **PLAINTIFFS' NATIONWIDE CLASS**
)                **ALLEGATIONS**
)
)                **Filed Under Separate Cover**
)
)                **(1) NOTICE OF MOTION AND**
)                **DEFENDANT'S MOTION TO DISMISS**
)                **PLAINTIFFS' FIRST AMENDED**
)                **COMPLAINT FOR DAMAGES AND**
)                **EQUITABLE RELIEF OR TO STRIKE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants.

-------------------------------

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS;**

**(2) REQUEST FOR JUDICIAL NOTICE;**

**and**

**(3) DECLARATION OF JOHN H. BEISNER IN SUPPORT OF MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE.**

Date:  January 29, 2013
Time: 1:00 p.m.
Before: JUDGE SAUNDRA BROWN ARMSTRONG

# TABLE OF CONTENTS

**PAGE**

BACKGROUND ....................................................................................................................2

ARGUMENT .......................................................................................................................7

I.     PLAINTIFFS' CLAIMS FAIL BECAUSE THEY HAVE NOT ALLEGED VIABLE INJURIES..............................................................................................8

II.    PLAINTIFFS' CLAIMS FAIL FOR A HOST OF OTHER REASONS AS WELL. .................................................................................................................11

    A.    Plaintiffs Cannot State a Claim For Breach of Implied Warranty Under the Song-Beverly Act (Count III). ..................................................11

    B.    Plaintiffs Cannot State a Claim For Violation of the MMWA (Count I)..........................................................................................14

    C.    Plaintiffs Cannot State Claims Under the UCL, CLRA or For Fraudulent Concealment (Counts II, IV-V). .............................................14

III.   AT THE VERY LEAST, THE COURT SHOULD STRIKE PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS...........................................................18

CONCLUSION.................................................................................................................23

1

## **TABLE OF AUTHORITIES**

2

**PAGE**

3

## **FEDERAL CASES**

4

*Ace American Insurance Co. v. Grand Banks Yachts, Ltd.*,
    587 F. Supp. 2d 697 (D. Md. 2008) ................................................................ 22

5

6

*Agostino v. Quest Diagnostics Inc.*,
    256 F.R.D. 437 (D.N.J. 2009) ........................................................................ 21

7

*In re American Medical Systems, Inc.*,
    75 F.3d 1069 (6th Cir. 1995) ......................................................................... 20

8

9

*Anunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ......................................................... 14

10

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ..................................................................................... 7

11

12

*Baba v. Hewlett-Packard Co.*,
    No. C 09-05946 RS, 2010 U.S. Dist. LEXIS 59747 (N.D. Cal. June 16, 2010) ................. 16

13

*Barbarin v. General Motors Corp.*,
    No. 84-0888, 1993 U.S. Dist. LEXIS 20980 (D.D.C. 1993) ........................... 23

14

*Baughan v. Indiana Mills & Mfg., Inc.*,
    Nos. 91-2112, 91-2136, 1992 U.S. App. LEXIS 13616 (4th Cir. June 9, 1992) .............. 12

15

16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 7

17

*Berenblat v. Apple, Inc.*,
    Nos. 08-4969 JF (PVT), 09-1649 JF, 2010 U.S. Dist. LEXIS 46052
    (N.D. Cal. Apr. 9, 2010) ................................................................................. 18

18

19

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ......................................................................... 10

20

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litigation*,
    288 F.3d 1012 (7th Cir. 2002) .................................................................. 8, 20

21

22

*Carr v. Cimino*,
    No. 4:01 CV 01258, 2001 U.S. Dist. LEXIS 23886 (N.D. Ohio Oct. 22, 2001) ................ 5

23

*Carlson v. GMC*,
    883 F.2d 287 (4th Cir. 1989) ......................................................................... 11

24

25

*Castano v. American Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) ........................................................................... 20

26

*Ceribelli v. Elghanayan*,
    990 F.2d 62 (2d Cir. 1993) ............................................................................ 21

27

28

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ................................................................ 14, 21

*Cohen v. Guidant Corp.*,
    No. CV-05-8070-R, 2011 U.S. Dist. LEXIS 18786 (C.D. Cal. Feb. 5, 2011)...................... 8

*Cole v. GMC*,
    484 F.3d 717 (5th Cir. 2007) ................................................................... 22

*Davis v. HSBC Bank*,
    691 F.3d 1152 (9th Cir. 2012) .................................................................. 15

*DePeralta v. Dlorah, Inc.*,
    No. 11-1102-CV, 2012 WL 4092191 (W.D. Mo. Sept. 17, 2012) ...................................... 15

*Drilling Consultants, Inc. v. First Montauk Secs. Corp.*,
    No. 8:10-cv-2873-T-23EAJ, 2012 WL 3522607 (M.D. Fla. Aug. 14, 2012).......................... 15

*In re Ford Motor Co. Vehicle Paint Litigation*,
    182 F.R.D. 214 (E.D. La. 1998).................................................................. 20

*In re GMC Anti-Lock Brake Products Liability Litigation*,
    966 F. Supp. 1525 (E.D. Mo. 1997).............................................................. 11

*Gray v. Toyota Motor Sales, U.S.A.*,
    No. CV 08-1690 PSG, 2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ............................ 17, 18

*Hines v. Mercedes Benz USA, LLC*,
    358 F. Supp. 2d 1222 (N.D. Ga. 2002) .......................................................... 22

*Innovative Physical Therapy, Inc. v. MetLife Auto & Home*,
    No. 07-5446, 2008 U.S. Dist. LEXIS 69377 (D.N.J. Aug. 26, 2008) .............................. 19

*Johnson v. Mitsubishi Digital Electronics America, Inc.*,,
    365 F. App'x 830 (9th Cir. 2010) .............................................................. 14

*Lescs v. William R. Hughes, Inc.*,
    No. 97-2278, 1999 U.S. App. LEXIS 475 (4th Cir. Jan. 14, 1999).................................. 12

*Long v. Hewlett-Packard Co.*,
    316 F. App'x 585 (9th Cir. 2009) .............................................................. 15

*Marcus v. BMW of North America, LLC*,
    No. 08-5859, 2010 U.S. Dist. LEXIS 122908 (D.N.J. Nov. 19, 2010) .............................. 22

*Mathison v. Bumbo*,
    No. CV08-0369 DOC (ANx), 2008 U.S. Dist. LEXIS 108511
    (C.D. Cal. Aug. 18, 2008)................................................................... 8, 9

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .................................................................. 20

*Meaunrit v. Pinnacle Foods Group, LLC*,
    No. C 09-04555 CW, 2010 U.S. Dist. LEXIS 43858 (N.D. Cal. May 5, 2010).............. 9, 14

iii

*Morgan v. Harmonix Music Systems*,
    No. C08-5211 BZ, 2009 U.S. Dist. LEXIS 57528 (N.D. Cal. July 7, 2009) ...................... 13

*Myers-Armstrong v. Actavis Totowa, LLC*,
    No. C 08-04741 WHA, 2009 U.S. Dist. LEXIS 38112 (N.D. Cal. Apr. 22, 2009) ............... 8

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................ 16, 17

*Pack v. Damon Corp.*,
    No. 04-2163, 2006 U.S. App. LEXIS 2303 (6th Cir. Jan. 5, 2006) .................................... 22

*Payne v. Fujifilm U.S.A., Inc.*,
    No. 07-385, 2010 U.S. Dist. LEXIS 52808 (D.N.J. May 28, 2010) .............................. 21, 23

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ................................................................................ 19

*Rikos v. Procter & Gamble Co.*,
    No. 11-226, 2012 U.S. Dist. LEXIS 25104 (S.D. Ohio Feb. 28, 2012) ............................ 19

*Sanders v. Apple, Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ......................................................... 16, 17, 18, 20

*Sanders v. Johnson & Johnson, Inc.*,
    No. 03-2663, 2006 U.S. Dist. LEXIS 35881 (D.N.J. May 31, 2006) ................................ 19

*Smith v. Ford Motor Co.*,
    749 F. Supp. 2d 980 (N.D. Cal. 2010) ...................................................................... 9

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection*
    *HDTV Television Litigation*,
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) .................................................................. 12

*Stearns v. Select Comfort Retail Corp.*,
    No. 08-2746 JF (PVT), 2009 U.S. Dist. LEXIS 112971 (N.D. Cal. Dec. 4, 2009) .............. 18

*Stearns v. Select Comfort Retail Corp.*,
    No. 08-2746 JF, 2009 U.S. Dist. LEXIS 48367 (N.D. Cal. June 5, 2009) .................... 11, 14

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) .................................................................. 10

*Taragan v. Nissan North Am., Inc.*,
    No. C 09-3660-SBA, 2010 U.S. Dist. LEXIS 97793 (N.D. Cal. Sept. 1, 2010) ............. 4, 12

*Tietsworth v. Sears Roebuck & Co.*,
    No. 5:09-CV-00288 JF (HRL), 2009 U.S. Dist. LEXIS 98532
    (N.D. Cal. Oct. 13, 2009) ............................................................................... 13, 18

*Tolliver v. Monaco Coach Corp.*,
    No. 8:06-cv-856-T-30TGW, 2006 U.S. Dist. LEXIS 40007 (M.D. Fla. June 16,
    2006) ........................................................................................................ 22

*Venezia v. Miller Brewing Co.*,
    626 F.2d 188 (1st Cir. 1980) ............................................................................. 22

*Vess v. Ciba-Geigy,*
    317 F.3d 1097 (9th Cir. 2003) ........................................................................ 7

*Walsh v. Ford Motor Co.,*
    807 F.2d 1000 (D.C. Cir. 1986) ..................................................................... 21

*Walsh v. Ford Motor Co.,*
    130 F.R.D. 260 (D.D.C. 1990) ...................................................................... 22

*Whitson v. Bumbo,*
    No. C 07-05597 MHP, 2009 U.S. Dist. LEXIS 32282 (N.D. Cal. Apr. 15, 2009) ................ 8

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012) ...................................................................... 17

*Yu-Santos v. Ford Motor Co.,*
    No. 1:06-CV-01773-AWI-DLB, 2009 U.S. Dist. LEXIS 41001 (E.D. Cal. May 14, 2009) ...................................................................................................... 22

*Zinser v. Accufix Research Institute Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ...................................................................... 20

## STATE CASES

*American Suzuki Motor Corp. v. Superior Court,*
    37 Cal. App. 4th 1291 (1995) ........................................................... 9, 11, 12, 13

*Amundson v. Wortman,*
    777 P.2d 315 (Mont. 1989) ......................................................................... 21

*Banco Popular North America v. Gandi,*
    876 A.2d 253 (N.J. 2005) ........................................................................... 21

*Brae Asset Fund, L.P. v. Adam,*
    661 A.2d 1137 (Me. 1995) .......................................................................... 21

*Clark v. McDaniel,*
    546 N.W.2d 590 (Iowa 1996) ....................................................................... 21

*Gomez-Jimenez v. N.Y. Law School,*
    943 N.Y.S.2d 834 (Sup. Ct. 2012) .................................................................. 15

*Greenman v. Yuba Power Products, Inc.,*
    377 P.2d 897 (Cal. 1963) ............................................................................ 9

*Kopeikin v. Merchants Mortgage & Trust Corp.,*
    679 P.2d 599 (Colo. 1984) .......................................................................... 21

*Lockard v. Carson,*
    287 N.W.2d 871 (Iowa 1980) ....................................................................... 21

*OMI Holdings, Inc. v. Howell,*
    918 P.2d 1274 (Kan. 1996) ......................................................................... 21

*Osborne v. Subaru of America, Inc.,*
    198 Cal. App. 3d 646 (1988) .................................................................... 20, 22

*Silk v. Phillips Petroleum Co.*,
760 P.2d 174 (Okla. 1988)........................................................................ 21

*Urman v. South Boston Savings Bank*,
674 N.E.2d 1078 (Mass. 1997) ................................................................ 21

## FEDERAL STATUTE AND REGULATION

15 U.S.C. § 2301 .................................................................................. 3, 21

49 C.F.R. § 571.114 .................................................................................. 4

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 ................................................................ 3

Cal. Civ. Code § 1750 ............................................................................... 3

Cal. Civ. Code § 1791.1 ..................................................................... 11, 13

Cal. Civ. Code § 1792 ............................................................................... 2

Cal. Civ. Code § 1793.02 ........................................................................ 13

Kan. Stat. Ann. § 50-624(f) .................................................................... 22

W. Va. Code § 46A-6-102(c) ................................................................... 22

1    This is plaintiffs' second bite at the apple.  Originally, plaintiff Taragan alleged that

2 Nissan's Intelligent Key system fails to comply with Federal Motor Vehicle Safety Standard 114

3 because it is possible to turn off vehicles equipped with this system and remove the electronic

4 transponder (also referred to as a "fob") when the vehicle transmission is not locked in "park."  The

5 Court rejected that claim as a matter of law, recognizing that plaintiffs' allegations could not "be

6 reconciled with the plain language of the regulation," and the Court of Appeals affirmed.

7    Plaintiffs are now back with a new theory based on the same design feature.  According to

8 their amended complaint, Nissan misled consumers (despite its compliance with federal standards)

9 by failing to disclose that they would be able to turn off their vehicles and remove the transponders

10 when the vehicles were not in "park."  Plaintiffs make these allegations even though none of them

11 allege that they have ever turned off their vehicles while they were not in "park," much less

12 experienced a rollaway accident in their cars.  Nor can plaintiffs allege that such an accident is

13 likely to happen in the future.  After all, by virtue of filing the instant lawsuit, they have admitted

14 that they now know exactly how the Intelligent Key system operates.  Absent any alleged injury (or

15 even a possibility of injury in the future), plaintiffs' claims must be dismissed.

16    Plaintiffs' claims should be dismissed for several other reasons too.  Most notably,

17 plaintiffs have not pled a valid claim for breach of implied warranty because they do not allege that

18 their vehicles are unfit for their primary purpose of providing transportation.  Nor could they

19 plausibly make such an allegation, since the National Highway Transportation Safety

20 Administration ("NHTSA") has expressly determined that Nissan's ignition system complies with

21 relevant safety standards.  In addition, plaintiffs' warranty claims fail for lack of privity and notice.

22 And plaintiffs' fraud-based claims should all be dismissed because information regarding how

23 Nissan's vehicles work is publicly available, and Nissan had no duty to disclose additional

24 information to plaintiffs.

25    Finally, if the Court allows plaintiffs to go forward with any of their claims, it should – at

26 the very least – strike plaintiffs' nationwide class allegations.  As court after court has recognized,

27 there is no manageable way to resolve the claims of product purchasers across the country in a

28 single class trial because they will turn on the widely varying laws of all 50 states.

**BACKGROUND**

**Plaintiffs' Allegations**

Plaintiffs' vehicles are equipped with an "Intelligent Key" system, which uses an electronic code – rather than a traditional key – to enable the driver to activate the vehicle's starting mechanism.  (Am. Compl. ¶ 2.)  According to plaintiffs, Nissan and Infiniti vehicles equipped with the "Intelligent Key" system "usually have a 'Start/Stop' button on the dashboard, rather than an ignition mechanism that accepts a Physical Key, to start the engine."  (*Id*. ¶ 23.)  In addition, plaintiffs claim that these vehicles have a "transponder (or 'fob') that contains the circuitry that sends the electronic signal, rather than a conventional physical key with teeth."  (*Id*.)  Plaintiffs note that in some vehicles, this transponder "must be inserted into a slot or "holster" on the dashboard to allow engine activation," while in other vehicles, the "transponder only needs to be present inside the vehicle to enable activation of the engine."  (*Id*.)

Plaintiffs claim that the "Intelligent Key" system included in their vehicles is defective because it allows "the vehicles' engines [to be] be turned off while the transmission is in a non-park gear position (e.g., drive, reverse, etc.), at which point the vehicles can roll away, surprising and injuring drivers, passengers, and bystanders."  (*Id*. ¶ 3.)  According to plaintiffs, "[t]he need to shift into park (or have the vehicle in park) to turn off the vehicle and remove the key (whether a Physical Key or an Electronic Key) is a key safety feature that drivers rely upon, but whose absence on the Subject Vehicles is not readily apparent."  (*Id*. ¶ 5.)  Plaintiffs claim that "[t]o date, Nissan has failed to notify" plaintiffs and the proposed class members "of the Defect, of how it creates Rollaway Danger, and of the unsafe nature of the Subject Vehicles."  (*Id*. ¶ 9.)  Further, plaintiffs assert that "Nissan has concealed and ignored the Defect and Rollaway Danger."  (*Id*.)  Plaintiffs also allege that "[a]s a result of the Defect and Nissan's material omissions and misstatements regarding the Defect, Plaintiffs and the Class Members have been harmed" because they "purchased or leased the Subject Vehicles that they would not otherwise have purchased or leased or would have paid less for had they known of the Defect."  (*Id*. ¶ 10.)  Based on these allegations, plaintiffs assert claims for breach of implied warranty under the Song-Berly Consumer Warranty Act, Cal. Civ. Code § 1792 & 1792.1 *et seq*., breach of implied warranty

2

1   under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, common law

2   fraudulent concealment, violation of California's Unfair Competition Law ("UCL"), Cal. Bus. &

3   Prof. Code § 17200 *et seq.*, and violation of California's Consumer Legal Remedies Act

4   ("CLRA"), Cal. Civ. Code § 1750 *et seq.*

5          Plaintiffs assert their claims on behalf of two proposed classes:  a nationwide class defined

6   to include "[a]ll persons and entities in the United States who have owned or leased Nissan or

7   Infiniti vehicles equipped with Electronic Keys;" and a statewide class of California purchasers of

8   the same vehicles.  (Am. Compl. ¶ 43.)  Plaintiffs allege two claims on behalf of the proposed

9   nationwide class:  breach of implied warranty under the MMWA and common law fraudulent

10  concealment.  (*Id.* ¶¶ 55, 64.)

11  **The Named Plaintiffs**

12         Plaintiff Taragan is a California resident who alleges that she leased a 2009 Nissan

13  Maxima.  (Am. Compl. ¶ 14.)  Plaintiff Matthew Wakefield is a California resident who claims that

14  he purchased a 2008 Nissan Altima.  (*Id.* ¶ 15.)  Plaintiff Marites Asido is a resident of California

15  and claims that "she purchased a 2012 Nissan Altima."  Neither Ms. Taragan, Mr. Wakefield nor

16  Ms. Asido contends that his or her car was ever involved in a "rollaway accident" or that he or she

17  has ever exited the vehicle while it was not in "park."

18  **Procedural History And Relevant Safety Standards**

19         Plaintiff Taragan and two other plaintiffs, who are no longer parties to this case, initially

20  filed suit against Nissan on August 10, 2009.  (*See generally* Compl.)  In their original complaint,

21  plaintiffs alleged that the "Intelligent Key" system included in their vehicles was defective because

22  it "failed to comply with [Federal Motor Vehicle Safety Standard ("FMVSS")] 114," a NHTSA

23  safety standard.  (*See, e.g.*, *id.* ¶ 25.)  Specifically, plaintiffs alleged that FMVSS 114 requires

24  automatic transmission vehicles to be designed in a way that "prevent[s] removal of the key unless

25  the transmission or transmission shift lever is locked in 'park; or becomes locked in 'park' as a

26  direct result of removing the key."  (*Id.* ¶ 3.)  Plaintiffs also alleged that Nissan's vehicles do not

27  satisfy this standard because the "transponder" can "be removed from the slot/holster" when the

28  vehicle is not in park.  (*Id.* ¶ 12.)  Nissan moved to dismiss the initial complaint, and this Court

3

**Def.'s Mem. ISO Mot. To Dismiss Or To Strike Nationwide Class Allegations**          **Case No: CV09-3660**

1  granted the motion with prejudice, finding that NHTSA has already determined that Nissan's

2  vehicles satisfy the requirements of FMVSS 114.  *See Taragan v. Nissan North Am., Inc.*, No. C

3  09-3660-SBA, 2010 U.S. Dist. LEXIS 97793 (N.D. Cal. Sept. 1, 2010).

4         As the Court explained, NHTSA has long required that "vehicles sold in the United States

5  with automatic transmissions come equipped with a Key Ignition Transmission Shift Interlock

6  ('KITSI')" that "prevents a driver from removing the key from the ignition unless the vehicle's

7  automatic transmission is in the 'park' position." *Id*. at *2-3.  However, "[w]ith the advent of

8  electronic technology, a number of vehicle manufacturers, including [Nissan], have begun offering

9  electronic 'smart' keys" that, unlike traditional keys, need not be inserted into the car.  *Id*. at *3.

10 Instead, these keys "consist[] of an electronic chip or transponder" that "transmits an electronic

11 code to 'unlock' the car, which typically can then be started (or turned off) by pressing a

12 'Start/Stop' button." *Id*.  "To address this technological advancement, the NHTSA amended

13 FMVSS 114, effective September 1, 2007, to recognize that a 'key' now may be either 'a physical

14 device or electronic code' inserted into the vehicle's starting system 'by physical or electronic

15 means.'" *Id*. at *4 (quoting 49 C.F.R. § 571.114 (S4)).  According to the Court, plaintiffs' claims

16 were based on the allegation that the "key" in Nissan vehicles for purposes of FMVSS 114

17 compliance equals "both the electronic code and the physical device (i.e., the key fob/transponder)

18 that is used to transmit the code." *Id*. at *12.  Thus, plaintiffs claimed that Nissan's vehicles

19 violated the regulation because a driver could exit one of the vehicles with the fob while the

20 vehicle was still in gear.  *Id*.  The Court disagreed, finding that "[p]laintiffs' interpretation of 'key'

21 cannot be reconciled with the plain language of the regulation," which "expressly defines 'key' as

22 **either** 'a physical device **or** an electronic code.'" *Id*.  The Court further found that the "key" in

23 vehicles with an Intelligent Key system is the "electronic code." *Id*. at *14.  Thus, "whether or not

24 the key fob can be removed from the vehicle when the transmission is not in the 'park' position is

25 inapposite for purposes of FMVSS 114." *Id*.  Rather, because the electronic code stays in the

26 vehicles until they are shifted to "park," the vehicles comply with the safety standard, and

27 plaintiffs' claims failed as a matter of law.  *Id*.

28

4

1   This holding is consistent with several Letters of Interpretation issued by NHTSA,

2   explaining that cars with "Smart Key" ignition systems comply with FMVSS 114.[1]  *See* August 15,

3   2002 Letter, *available at* http://isearch.nhtsa.gov/files/23564-3.drn.html (attached as Ex. 1 to Decl.

4   of John H. Beisner ("Beisner Decl.").  According to the agency:

5       Standard No. 114 states that . . . the key-locking system required by [prior] S4.2 in
        each vehicle which has an automatic transmission with a 'park' position shall, when
6       tested under the procedures in [prior] S5.2, prevent removal of the key unless the
        transmission or transmission shift lever is locked in 'park' or becomes locked in
7       'park' as the direct result of removing the key. Your company's 'Smart Key system
        would be permitted by [prior] S4.2.1(a) because removal of the 'key'(identification
8       code in the system) is accomplished only when the locking device locks (steering
        column lock and immobilizer are locked), which happens only when the gear lever
9       is in park, and presumably locks the transmission in park.

10  *Id.*; *see also* Letter from Jacqueline Glassman (NHTSA Chief Counsel) to Kenneth Reed (May 27,

11  2003), *available at* http://isearch.nhtsa.gov/files/GF001689.html (attached as Ex. 2 to Beisner

12  Decl.) (explaining that for "systems using electronically coded cards or other means to enter an

13  electronic key code into the locking system," NHSTA has found that "the electronic code itself can

14  be considered the key" for purposes of compliance with FMVSS 114); Letter from Jacqueline

15  Glassman to anonymous (July 17, 2003), *available at* http://isearch.nhtsa.gov/files/GF003447.html

16  (attached as Ex. 3 to Beisner Decl.) (electronic key system would comply with FMVSS 114 where

17  "the engine is switched off but the gear lever is not in park," "the 'transceiver' code remains in the

18  electronic control module," and "the steering column lock and the immobilizer system cannot be

19  activated").

20      In addition, NHTSA's Office of Vehicle Safety Compliance ("OVSC") conducted a test of

21  the Model Year ("MY") 2009 Nissan Altima and issued a report stating that the vehicle's

22  "Intelligent Key" system complies with FMVSS 114.  *See* Final Report No. 114-GTL-09-003,

23  Safety Compliance Testing For FMVSS No. 114, July 20, 2009 ("NHTSA Report"), *available at*

24  http://nhthqnwws112.odi.nhtsa.dot.gov/acms/docservlet/Artemis/Public/OVSC/

25  2009/Test%20Reports/TRTR-640510-2009-001.pdf (attached as Ex. 4 to Beisner Decl.) ("A model

26  _____

27  [1]     As explained in Nissan's Request For Judicial Notice, filed herewith, it is well established
    that "[c]ourts may . . . consider public records, matters of which a court may take judicial notice,
    and letter decisions of governmental agencies" when ruling on a motion to dismiss.  *Carr v.*
28  *Cimino*, No. 4:01 CV 01258, 2001 U.S. Dist. LEXIS 23886, at *12 (N.D. Ohio Oct. 22, 2001).

year 2009 Nissan Altima passenger car was subjected to Federal Motor Vehicle Safety Standard

(FMVSS) No. 114 testing to determine if the vehicle was in compliance with the requirements of

the standard.").   NHTSA's report confirms that the "Intelligent Key" ignition system used in the

Nissan vehicle complies with FMVSS No. 114 because the vehicle's "starting system prevents key

removal in ALL gear selection control positions except 'park.'"   *Id*. at 8.  As the report explains,

even though "[t]he physical key device can be removed from [the] vehicle" without the vehicle

being in "park," the "stored key code stays in memory until [the] vehicle is in park, turned off, and

the door is opened."   *Id*.  In other words, activation of the engine is enabled by an electronic code

(not the transponder itself), and that electronic code stays in the vehicle after the engine is turned

off – even if the transponder is removed – until the driver puts the transmission into the "park"

position.  *See* NHTSA Report at 4-5.  The report also explains that ***as long as the electronic code***

***remains in the vehicle's memory, a driver who opens the door to exit the vehicle without putting***

***the transmission into the "park" position will receive an auditory warning*** (similar to the sound

heard when a traditional metal key is left in the ignition cylinder).[2]  *See id.* at 7.  For these reasons,

the NHTSA report notes that the fact that the transponder can be removed from the car even when

it is not in "park" does not affect FMVSS 114 compliance.  *Id*. at 8; *see also id.* at 7 (indicating that

vehicle complies with FMVSS 114 notwithstanding its ability to move forward when engine is shut

off and transmission is not in park).

Plaintiffs appealed this Court's order granting Nissan's motion to dismiss their initial

complaint to the Ninth Circuit, and that court agreed that plaintiffs' claims were barred as a matter

of law based "on the plain language of FMVSS 114."  (Order Affirming in Part and Reversing in

Part District Court's Ruling, ECF No. 59 at 2.)  However, the Court of Appeals permitted plaintiffs

to replead their allegations.  (*Id.* at 3.)  On October 29, 2012, plaintiffs filed the instant Amended

Complaint, which once again alleges that plaintiffs' cars are defective because they allow drivers to

turn off the engine and remove the physical key fob from the car without the vehicle being in

"park."  (Am. Compl. ¶ 3.)

---

[2]     This feature is required by S5.1.3 of FMVSS 114.

**Def.'s Mem. ISO Mot. To Dismiss Or To Strike Nationwide Class Allegations**          **Case No: CV09-3660**

**ARGUMENT**

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In scrutinizing the complaint for plausibility, a court looks for factual allegations, not legal conclusions. While "[w]ell-pleaded factual content is accepted as true for purposes of determining whether the complaint states a plausible claim for relief," the court should not accept "legal conclusions couched as factual allegations" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

In addition, claims that "sound in fraud," such as plaintiffs' fraudulent-concealment and statutory consumer-fraud allegations, are not viable unless they meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See, e.g.*, *Vess v. Ciba-Geigy*, 317 F.3d 1097, 1103-05 (9th Cir. 2003). "[I]f particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim." *Id*. at 1105.

Plaintiffs assert claims for breach of implied warranty under the Song-Beverly Act, violation of the MMWA, fraudulent concealment, violation of the UCL and violation of the CLRA. (*See* Am. Compl. ¶¶ 55-109.) As set forth below, plaintiffs' claims fail because: (1) they have not alleged a cognizable injury; and (2) they have not properly alleged many of the other essential elements of their causes of action.

Finally, even if the Court were to conclude that plaintiffs' implied-warranty and fraudulent-concealment claims are sufficient to state a cause of action, the Court should nonetheless strike plaintiffs' nationwide class allegations because those claims will turn on issues of law that vary significantly from state to state.

7

**I.     PLAINTIFFS' CLAIMS FAIL BECAUSE THEY HAVE NOT ALLEGED VIABLE INJURIES.**

"No injury, no tort, is an ingredient of every state's law."  *In re Bridgestone/Firestone*, *Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002).  Where a plaintiff alleges that a product is defective, proof that the plaintiff's product actually malfunctioned or caused injury is thus an essential element of warranty and tort claims.  *See Cohen v. Guidant Corp.*, No. CV-05-8070-R, 2011 U.S. Dist. LEXIS 18786, at *5 (C.D. Cal. Feb. 5, 2011) ("Plaintiff's claim . . . premised on the risk that his pacemaker may malfunction in the future, is not a legally cognizable injury under California law."); *see also Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08-04741 WHA, 2009 U.S. Dist. LEXIS 38112, at *12 (N.D. Cal. Apr. 22, 2009) ("plaintiff must allege an actual ***manifestation*** of a defect").

This rule applies equally to each of plaintiffs' claims.  *See, e.g.*, *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1298-99 (1995) (rejecting implied-warranty claims based on allegation that vehicle had the potential to roll over, but had not actually malfunctioned); *Mathison v. Bumbo*, No. CV08-0369 DOC (ANx), 2008 U.S. Dist. LEXIS 108511, at *24 (C.D. Cal. Aug. 18, 2008) (dismissing implied-warranty, fraud and other claims because "[p]laintiffs have not alleged that their seats manifested the purported defect"); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 992 n.18 (N.D. Cal. 2010) (granting defendant summary judgment as to CLRA, UCL and other claims based on allegedly concealed "safety" defect in vehicles because "although one might speculate as to how [the defect alleged could] . . . pose a safety risk," there were no facts alleged to show that "the customer encountered any danger"); *Meaunrit v. Pinnacle Foods Group, LLC*, No. C 09-04555 CW, 2010 U.S. Dist. LEXIS 43858, at *6-7 (N.D. Cal. May 5, 2010) (dismissing consumer-fraud, implied-warranty and other claims based on the sale of allegedly dangerous frozen pot pies because the named plaintiffs did not claim to have become ill from the products; plaintiffs' allegation "that the pies might contain harmful pathogens and, if consumers undercook Defendant's pot pies, these pathogens could cause illness" was too "speculative [and] hypothetical" to allege a valid injury).

1    In *Whitson v. Bumbo*, for example, the court dismissed consumer-fraud, implied-warranty

2  and other claims against the manufacturer of an allegedly unsafe baby seat on the ground that the

3  plaintiff had not alleged a valid injury.  No. C 07-5597, 2009 U.S. Dist. LEXIS 32282 at *23-24

4  (N.D. Cal. Apr. 15, 2009).  The product at issue in *Whitson* had been recalled by the Consumer

5  Products Safety Commission after the regulator received reports that twenty-eight children had

6  fallen out of the seat, three of whom sustained skull fractures.  *Id*. at *2.  Following the recall,

7  plaintiff brought a putative class action against the manufacturer, alleging that it "misrepresented

8  the safety and intended uses of the Bumbo seat" to consumers by failing to make clear that the

9  seats should not be used on elevated surfaces.  *Id*. at *12.  As the court explained in dismissing the

10  complaint, however, the plaintiff did not "allege that she or any child on whose behalf she has

11  standing to sue actually used or was harmed by any defect in the Bumbo seat."  *Id*.  Instead,

12  plaintiff's claims were based on the allegation that "[s]ome children somewhere in the country

13  were harmed while using the Bumbo seat."  *Id*.  Because the plaintiff "fail[ed] to allege any actual

14  injury" to herself or her child as a result of using the product, her claims failed as a matter of law.

15  *Id*. at *19.

16    Here, as in *Whitson*, plaintiffs have not alleged a cognizable injury because they do not

17  contend that their vehicles ever malfunctioned in any way.  Plaintiffs do not claim that they have

18  ever exited their vehicles while they were not in "park," much less that they have sustained

19  personal or other injuries as a result of doing so.  Instead, plaintiffs allege that they and the Class

20  "have been placed in danger, since they are at undue risk of suffering physical injury, property

21  damage, and corresponding emotional harm."  (First Am. Compl. ¶ 31.)  As set forth above,

22  however, the mere risk that a product may someday cause injury cannot give rise to a claim under

23  California law.

24    Moreover, even if a risk of future injury were enough to sustain plaintiffs' causes of action

25  – which it is not – ***no such risk exists here***.  Plaintiffs allege that the "need to shift into park (or

26  have the vehicle in park) to turn off the vehicle and remove the [physical] key" device is a "key

27  safety feature which drivers rely on, but whose absence is not readily apparent" to Nissan vehicle

28  users.  (*Id.* ¶ 5.)  Thus, the gravamen of their claims is that owners of the Subject Vehicles

9

1    equipped with an "Intelligent Key" system are at risk of injury from "rollaway" accidents because

2    they may erroneously believe that removal of the transponder device confirms that their cars are in

3    "park."  (*See id.* (alleging that "most drivers do not know of or anticipate" the purported risk of

4    "rollaway danger" that plaintiffs claim is associated with the vehicles).)  But the named plaintiffs

5    themselves face no such risk of confusion in operating their cars.  After all, by virtue of filing this

6    suit, plaintiffs have made clear that they know how the "Intelligent Key" system works (i.e., that

7    they are aware that the transponder device may be removed even if the vehicle is not in "park") and

8    therefore are not at risk of future injury.  *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir.

9    2009).

10          In *Birdsong*, for example, the Ninth Circuit affirmed dismissal of implied-warranty claims

11   based on the theory that iPods may cause injury when used at a high volume because there was no

12   allegation that the named plaintiffs – who were aware of the alleged risk of injury – would use the

13   product at an unsafe volume level.  According to the court, "[a]t most, the plaintiffs plead a

14   potential risk of hearing loss not to themselves, but to other unidentified iPod users who might

15   *choose* to use their iPods in an unsafe manner."  *Id*.  Because "[t]he risk of injury the plaintiffs

16   allege[d was] not concrete and particularized *as to themselves*," their claims failed as a matter of

17   law.  *Id*.

18          This case is no different.  Plaintiffs' Complaint reveals that they ***do*** know how the

19   Intelligent Key system works.  Thus, they cannot plausibly allege that they are likely to mistakenly

20   exit their vehicles while the vehicles are in gear.  As a result, not only have plaintiffs failed to

21   claim any present injury, but they have also failed to allege any risk of injury going forward.[3]  For

22   this reason alone, all of plaintiffs' claims must be dismissed.

23

24   [3]       Plaintiffs' request for injunctive relief fails for the same reason.  Plaintiffs seek a
     "preliminary and permanent injunction ordering Nissan to create a fund available to Class
25   Members to remedy the Defect in the Subject Vehicles Under California law."  (Am. Compl.
     Prayer for Relief.)  However, "[i]n order to obtain prospective injunctive relief" under California
26   law "a plaintiff must establish that there is a 'likelihood of future injury'" to himself or herself
     specifically.  *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1151 (N.D. Cal. 2010)
27   (citation omitted).  Such a showing is not possible where, as here, there is no allegation that the
     named plaintiff is likely to use the product in a way that will cause injury in the future.
28

## II.   PLAINTIFFS' CLAIMS FAIL FOR A HOST OF OTHER REASONS AS WELL.

### A.   Plaintiffs Cannot State a Claim For Breach of Implied Warranty Under the Song-Beverly Act (Count III).

Even if plaintiffs had alleged a valid theory of injury, their implied-warranty claims would still fail because:  (1) they have not properly alleged that their cars were not merchantable when they leased or purchased them; (2) they have not properly pled notice; and (3) they do not allege privity with Nissan.

*First*, plaintiffs do not assert valid implied-warranty claims because they have not pled sufficient facts to support an allegation that their cars are unmerchantable.  In order to state a valid implied-warranty claim under the Song-Beverly Act, a plaintiff must allege that her vehicle is unfit for the purpose for which it was intended.  *See* Cal. Civ. Code § 1791.1(a) (to be merchantable, the product must be "fit for the ordinary purposes for which such goods are used"); *Am. Suzuki*, 37 Cal. App. 4th at 1295-96 (similar).  As the court explained in *American Suzuki*,

> Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law.  It does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality.'

*Id.* (citations omitted); *see also Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 U.S. Dist. LEXIS 48367, at *25 (N.D. Cal. June 5, 2009) ("there must be a fundamental defect that renders the product unfit for its ordinary purpose").  Thus, in an implied-warranty action involving an allegedly defective vehicle, the plaintiff must allege that the vehicle is not capable of providing transportation.  *See Am. Suzuki*, 37 Cal. App. 4th at 1296 ("in the case of automobiles, the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation"); *Carlson v. GMC*, 883 F.2d 287, 297 (4th Cir. 1989) (rejecting implied-warranty claims based on allegation that GM vehicles had a tendency to break down; "GM's diesel-equipped cars have served the traditionally recognized 'purpose' for which automobiles are used"); *In re GMC Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1533 (E.D. Mo. 1997) (rejecting implied-warranty claim regarding allegedly defective anti-lock brake system; "[p]laintiffs' allegations do not show that the vehicles are unmerchantable because plaintiffs have not alleged a defect that makes the vehicles unfit for the

1  ordinary purpose of providing transportation").  The same is true here.  Plaintiffs have not alleged

2  that their vehicles do not adequately provide transportation.  Indeed, as set forth above, they do not

3  allege that their vehicles have ever malfunctioned in any way.  Nor do plaintiffs allege that they are

4  unable to use, or have stopped using, their cars.  Instead, plaintiffs' implied-warranty claims are

5  based solely on the allegation that their cars are designed in a manner that purportedly creates a

6  rollaway risk for users who are not aware of how the cars work.  Such a speculative risk does not

7  make a vehicle unmerchantable under California law.  *See Am. Suzuki*, 37 Cal. App. 4th at 1295-

8  96.

9        This is especially true because the vehicles at issue comply with federal regulatory

10  standards regarding the prevention of rollaway accidents.  *See, e.g.*, *Lescs v. William R. Hughes,*

11  *Inc.*, No. 97-2278, 1999 U.S. App. LEXIS 475, at *38 (4th Cir. Jan. 14, 1999) ("the district court

12  properly granted summary judgment in favor of [defendant] on [plaintiff's] contention that [it]

13  breached the implied warranty of merchantability" because "[t]here is insufficient evidence that

14  [defendant] failed to meet government standards[] [or] industry standards"); *Baughan v. Indiana*

15  *Mills & Mfg., Inc.*, Nos. 91-2112, 91-2136, 1992 U.S. App. LEXIS 13616, at *6 (4th Cir. June 9,

16  1992) (affirming summary judgment in favor of defendant with respect to implied-warranty claim

17  in defective seat belt case where there was no allegation that the "slack exceeded the limits of

18  FMVSS 209").  As this Court's prior ruling makes clear, the ignition system used in Nissan's

19  vehicles complies with relevant government standards regarding rollaway prevention.  *See*

20  *Taragan*, 2010 U.S. Dist. LEXIS 97793, at *12-14.  Further, NHTSA has issued an official test

21  report confirming that Nissan's ignition system meets federal safety requirements.  NHTSA Report

22  at 8.  Accordingly, plaintiffs cannot plausibly allege that the cars are so unsafe that they are unfit

23  for their basic purpose of providing transportation.  As a result, plaintiffs' implied-warranty claims

24  should be dismissed.

25        ***Second***, plaintiffs' implied-warranty claims also fail because they do not allege that they

26  provided notice to Nissan regarding its alleged breach.  The Song-Beverly Act "places an

27  affirmative duty on consumers to deliver . . . a malfunctioning product to the manufacturer for

28  repair" within the warranty period.  *In re Sony Grand WEGA KDF-E A10/A20 Series Rear*

12

1  *Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1097 (S.D. Cal. 2010) (citing Cal. Civ.

2  Code § 1793.02(c).  Under California law, the "implied warranty of fitness shall be coextensive in

3  duration with an express warranty which accompanies the consumer goods, provided the duration

4  of the express warranty is reasonable; but in no event shall such implied warranty have a duration

5  of less than 60 days nor more than one year following the sale of new consumer goods to a retail

6  buyer."  *Id.* at 1100 (quoting Cal. Civ. Code § 1791.1(c)).  Thus, at the latest, plaintiffs were

7  required to provide Nissan with notice of the alleged breach of implied warranty within one year of

8  purchasing their vehicles.  However, none of the plaintiffs has alleged that he or she contacted

9  Nissan to report the alleged defect at any time prior to filing suit in this action.  As courts have

10 recognized, this is another ground for dismissal.  *See, e.g.*, *id.* at 1098 (dismissing Song-Beverly

11 Act claim because "[p]laintiffs have not alleged . . . that they requested that Sony repair the

12 televisions within the warranty period"); *Tietsworth v. Sears Roebuck & Co.*, No. 5:09-CV-00288

13 JF (HRL), 2009 U.S. Dist. LEXIS 98532, at *36 (N.D. Cal. Oct. 13, 2009) (dismissing implied-

14 warranty claim under the Song-Beverly Act where plaintiff "failed to provide [d]efendants with a

15 reasonable opportunity to cure").

16      ***Third***, plaintiffs' implied-warranty claims also fail because they do not allege that they

17 were in privity of contract with Nissan.  "The Song-Beverly Act incorporates the provisions of"

18 California's Commercial Code.  *Am. Suzuki*, 37 Cal. App. 4th at 1295 n.2 (the Act "'supplements,

19 rather than supersedes, the provisions of the California Uniform Commercial Code' by broadening

20 a consumer's remedies to include costs, attorney's fees, and civil penalties") (citation omitted).

21 Thus, implied-warranty claims under the Song-Beverly Act – like implied-warranty claims under

22 California's Commercial Code – require an allegation of privity between the parties.  *See, e.g.*,

23 *Tietsworth*, 2009 U.S. Dist. LEXIS 98532, at *36 (dismissing implied-warranty claim under the

24 Song-Beverly Act because, *inter alia*, "[i]t is undisputed that [plaintiffs] lack vertical privity with

25 Whirlpool"); *Morgan v. Harmonix Music Sys.*, No. C08-5211 BZ, 2009 U.S. Dist. LEXIS 57528,

26 at *5-6 (N.D. Cal. July 7, 2009) (dismissing implied-warranty claim; "[t]he vertical privity

27 requirement exists under both the Song-Beverly Act and the California Commercial Code").  Here,

28 plaintiffs have not properly pled privity of contract between themselves and Nissan because they

1  have not alleged that they purchased or leased their vehicles directly from Nissan.  *See Anunziato v.*

2  *eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) (plaintiff who bought allegedly

3  defective product at Best Buy could not bring implied-warranty claim against manufacturer of that

4  product).  Thus, plaintiffs' implied-warranty claims must be dismissed for this reason as well.

5        **B.**     **Plaintiffs Cannot State a Claim For Violation of the MMWA (Count I).**

6        Although the "MMWA provides a federal cause of action for state warranty claims[,] [] it

7  does not expand the rights under those claims, and dismissal of the state law claims requires the

8  same disposition with respect to an associated MMWA claim."  *Stearns*, 2009 U.S. Dist. LEXIS

9  48367, at *27-28 (internal citation omitted).  As set forth above, none of the plaintiffs is able to

10  state a valid claim for breach of implied warranty under California law.  Accordingly, plaintiffs'

11  MMWA claims must also fail.  *See, e.g.*, *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022

12  n.3, 1024 (9th Cir. 2008) (affirming dismissal of MMWA claims because they "hinge on the state

13  law warranty claims[,]" which failed under California law); *Meaunrit v. Pinnacle Foods Group,*

14  *LLC*, No. C 09-04555 CW, 2010 U.S. Dist. LEXIS 43858, at *33 (N.D. Cal. May 5, 2010)

15  ("Because [the state-law warranty] claims fail, th[e] [MMWA] claim must be dismissed for the

16  same reasons."); *Stearns*, 2009 U.S. Dist. LEXIS 48367, at *23 (dismissing MMWA claim where

17  state-law warranty claims failed as a matter of California law).

18        **C.**     **Plaintiffs Cannot State Claims Under the UCL, CLRA or For Fraudulent**

19              **Concealment (Counts II, IV-V).**

20        Plaintiffs' fraud-based claims also fail as a matter of law for two additional reasons:  (1)

21  plaintiffs have not adequately alleged that Nissan concealed anything from them; and (2) Nissan, in

22  any event, did not have a duty to disclose.

23        As a preliminary matter, plaintiffs have failed to allege that Nissan concealed anything from

24  them.  It is self-evident that a claim based on concealment must adequately allege that the

25  defendant failed to disclose something to the plaintiff.  *See, e.g.*, *Johnson v. Mitsubishi Digital*

26  *Elecs. Am., Inc.*, 365 F. App'x 830, 832 (9th Cir. 2010) (fraudulent-concealment and UCL claims

27  failed as a matter of law where "Mitsubishi did not conceal the fact that the HDMI ports on

28  Plaintiff's television could not accept a native 1080p signal").  As a number of courts have

recognized, the mere fact that a defendant does not disclose a fact directly to the plaintiff does not

1    establish the requisite omission, particularly where the defendant has made the allegedly concealed

2    fact available through another publicly accessible source.  *See, e.g.*, *DePeralta v. Dlorah, Inc.*, No.

3    11-1102-CV, 2012 WL 4092191, at *2, *7 (W.D. Mo. Sept. 17, 2012) (plaintiff's allegation that a

4    paralegal studies program concealed the rate of loan defaults among its enrollees failed as a matter

5    of law in part because "the information was available from the Department of Education's website,

6    so Plaintiff could have discovered the information through reasonable diligence if she wanted to");

7    *Drilling Consultants, Inc. v. First Montauk Secs. Corp.*, No. 8:10-cv-2873-T-23EAJ, 2012 WL

8    3522607, at *5 (M.D. Fla. Aug. 14, 2012) ("allegations of fraudulent omission fail[ed]" as a matter

9    of law where they were based on "the IRS's public expression" of policy, which was "a fact

10   discoverable" to any "informed and diligent observer"); *Gomez-Jimenez v. N.Y. Law School*, 943

11   N.Y.S.2d 834, 852 (Sup. Ct. 2012) (law school's representation about rate of post-graduation

12   employment did not conceal that some of this employment was in non-legal positions because

13   "plaintiffs had access to publicly available information pertaining to the realities of the legal job

14   market" and the disclosures complied with ABA standards).

15          Plaintiffs' fraudulent concealment, UCL and CLRA claims fail for this reason too.  After

16   all, these claims are all based on the allegation that Nissan failed to disclose that vehicles equipped

17   with the Intelligent Key system can be turned off – and the driver can remove the key fob from the

18   vehicle – when the vehicle is in a gear other than "park."  (*See* Am. Compl. ¶¶ 70, 90, 92, 103.)

19   But as explained above, this fact was fully disclosed to NHTSA, and NHTSA published numerous

20   regulatory materials addressing electronic keys and rollaway issues.  In other words, if plaintiffs

21   were concerned about the rollaway risk of their vehicles, there was publicly available information

22   about how NHTSA safety regulations apply to electronic key systems.  Accordingly, plaintiffs

23   have not alleged any actual omission by Nissan.

24          In any event, plaintiffs have not established a duty to disclose.  In California, a plaintiff

25   alleging concealment under common law, the UCL or the CLRA must plead and prove a duty to

26   disclose.  *See, e.g.*, *Davis v. HSBC Bank*, 691 F.3d 1152, 1163 (9th Cir. 2012) (to prevail on a

27   claim for fraudulent concealment under California law, "the defendant must have been under a

28   duty to disclose the fact to the plaintiff"); *Long v. Hewlett-Packard Co.*, 316 F. App'x 585, 586

1    (9th Cir. 2009) ("Plaintiffs also failed to state a claim under either the UCL or the CLRA" because

2    "HP owed Plaintiffs no independent duty to disclose information about the elevated failure rate of

3    the laptops[.]").

4          There is no general duty to disclose under California law; rather, such a duty arises only

5    under four limited circumstances:  "(1) the defendant is in a fiduciary relationship with the

6    plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3)

7    the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial

8    representations but also suppresses some material facts."  *Baba v. Hewlett-Packard Co.*, No. C 09-

9    05946 RS, 2010 U.S. Dist. LEXIS 59747, at *10 (N.D. Cal. June 16, 2010) (internal quotation

10   marks and citation omitted); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009)

11   (same).  Importantly, allegations pertaining to a defendant's duty to disclose must also be pled with

12   sufficient particularity under Rule 9(b).  *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964

13   (N.D. Cal. 2008) (finding that generic allegations of a duty to disclose under all four prongs did not

14   satisfy the requirements of Rule 9(b), warranting dismissal of the claims).

15         Plaintiffs attempt to allege two bases for a duty to disclose here:  (1) "Nissan is in a superior

16   position to know the facts about the quality and nature of the Subject Vehicles and possesses

17   superior knowledge of the Defect"; and (2) "Nissan actively concealed . . . the fact that the Subject

18   Vehicles contained the Defect and posed a serious risk of Rollaway Danger."  (Am. Compl. ¶ 70.)

19   Neither allegation satisfies their pleading burden.

20         ***First***, plaintiffs' allegation that Nissan has "superior knowledge" does not establish a duty

21   to disclose.  In order to satisfy Rule 9(b), a plaintiff alleging fraud must offer "specific

22   substantiating facts" demonstrating that the defendant has "exclusive knowledge" about an alleged

23   defect – not merely that the defendant has a superior understanding about the product's design

24   generally.  *Sanders*, 672 F. Supp. 2d at 986.  In *Sanders*, for example, the plaintiff alleged that

25   Apple "had exclusive knowledge of the material fact that its 20-inch Aluminum iMac was designed

26   with an inferior display, and that Apple was in a superior position of knowledge with regard to its

27   own technology."  *Id.*  The district court rejected this contention as too conclusory, explaining that

28   similar allegations "'could be made about any alleged design defect in any manufactured product,'"

1    dramatically expanding liability for fraudulent concealment.  *Id.* (quoting *Oestreicher*, 544 F.

2    Supp. 2d at 974).  In order to avoid this result, the law requires more – i.e., an allegation of

3    particular facts that should have alerted the manufacturer to the fact that the design was in fact

4    defective.  *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146-47 (9th Cir. 2012)

5    (allegations that the defendant manufacturer had "'bec[o]me familiar with' and was 'on notice' of

6    the defect plaguing the Laptops at the time of manufacture and as early as 2002" was "merely

7    conclusory"; plaintiff needed to point to something concrete, such as "'pre-release testing data'" to

8    which only the manufacturer had access to support claim) (citation omitted).

9            Plaintiffs' allegations of exclusive knowledge fall far short of the requisite particularity.

10   Like the plaintiffs in *Sanders* and *Wilson*, plaintiffs allege in "merely conclusory fashion" that

11   Nissan "knew" of a defect.  (*See, e.g.*, Am. Compl. ¶¶ 9, 30, 36, 37.b, 37.e, 66, 68, 70.a.)  But that

12   does not suffice.  What plaintiffs needed to plead, with "specific substantiating facts," is that

13   Nissan knew that the Intelligent Key system posed a risk to drivers at the time plaintiffs purchased

14   their vehicles, for example, that "pre-release testing data" showed a substantial risk of rollaway

15   accidents – and that Nissan kept this information to itself.  No such allegation is made.

16   Accordingly, plaintiffs have not adequately alleged a duty to disclose based on exclusive

17   knowledge.

18          ***Second***, plaintiffs' allegation that Nissan "actively concealed" the "Defect" and the risk of

19   "Rollaway Danger" likewise fails for lack of particularity.  An allegation of active concealment

20   must plead more than omission; rather, plaintiffs must assert affirmative acts of concealment – e.g.,

21   that the defendant "sought to suppress information in the public domain or obscure consumers'

22   ability" to discover it.  *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG, 2012 WL

23   313703, at *10 (C.D. Cal. Jan. 23, 2012).  In *Gray*, for example, the plaintiffs alleged that Toyota

24   knew that the Environmental Protection Agency's fuel-efficiency rating of the Prius automobile

25   was "inaccurate and could not be achieved in a 'real-world' setting," but failed to disclose that fact

26   to consumers.  *Id.* at *1.  Among other things, the plaintiffs contended that Toyota had a duty to

27   disclose based on "active concealment," which they argued was supported by their allegations that

28   Toyota's "advertising, publicity, marketing materials [and] other representations" uniformly

17

1    omitted information about the accuracy of the fuel-efficiency rating.  *Id.* at *9 (citation omitted).

2    The court rejected these allegations as legally insufficient because they stated only omission, not

3    active concealment.  As the court explained, "if mere nondisclosure constituted 'active

4    concealment,' the duty requirement would be subsumed and any material omission would be

5    actionable.  This is not the law."  *Id.*; *accord, e.g.*, *Berenblat v. Apple, Inc.*, Nos. 08-4969 JF

6    (PVT), 09-1649 JF, 2010 U.S. Dist. LEXIS 46052, at *27-28 (N.D. Cal. Apr. 9, 2010) (rejecting

7    claim of actual-concealment as bereft of factual support); *Tietsworth*, 2009 U.S. Dist. LEXIS

8    98532, at *13-14 (plaintiffs cannot "establish a duty by pleading, in purely conclusory fashion, that

9    [d]efendants were in a 'superior position to know the truth about the Machines' and 'actively

10   concealed' the defect") (citation omitted).

11          The same is true here.  Plaintiffs attempt to rest their theory of duty on the bare allegation

12   that "Nissan actively concealed from Plaintiffs and the Class Members the fact that the Subject

13   Vehicles contained the Defect and posed a serious risk of Rollaway Danger."  (Am. Compl. ¶

14   70.b.)  But plaintiffs' amended complaint does not identify any fact that Nissan "actively

15   concealed" – i.e., they do not allege with the necessary particularity that Nissan "sought to suppress

16   information in the public domain or obscure consumers' ability" to discover information regarding

17   the alleged "Rollaway Danger."  *Gray*, 2012 WL 313703, at *10.  Instead, plaintiffs offer nothing

18   more than "conclusory" allegations that Nissan "'actively concealed' the defect."  *Tietsworth*, 2009

19   U.S. Dist. LEXIS 98532, at *13-14.  For this reason too, plaintiffs' concealment-based claims

20   should be dismissed.

21   **III.    AT THE VERY LEAST, THE COURT SHOULD STRIKE PLAINTIFFS'**
22          **NATIONWIDE CLASS ALLEGATIONS.**

23          If the Court allows plaintiffs to proceed with their claims for fraudulent concealment or

24   implied warranty, it should strike plaintiffs' nationwide class allegations.

25          "[I]t is procedurally proper to strike futile class claims at the outset of litigation to preserve

26   time and resources."  *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2009 U.S.

27   Dist. LEXIS 112971, at *45 (N.D. Cal. Dec. 4, 2009); *see also Sanders*, 672 F. Supp. 2d at 990

28   ("[w]here the complaint demonstrates that a class action cannot be maintained on the facts

                                                 18

1   principle, federal courts have stricken nationwide class allegations on the ground that the proposed

2   class members' claims will likely be governed by the widely varying laws of 50 different states.

3   *See, e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 944-46, 948-49 (6th Cir. 2011)

4   (affirming the district court's judgment striking proposed nationwide consumer fraud class because

5   the substantial variances in state consumer fraud laws rendered the case neither "efficient nor

6   workable" as a nationwide class action); *Rikos v. Procter & Gamble Co.*, No. 11-226, 2012 U.S.

7   Dist. LEXIS 25104, at *14-15, *21 (S.D. Ohio Feb. 28, 2012) (striking nationwide class allegations

8   in warranty action because each class member's warranty claim would be "governed by the laws of

9   the jurisdiction in which the transaction took place"); *Sanders v. Johnson & Johnson, Inc.*, No. 03-

10  2663, 2006 U.S. Dist. LEXIS 35881, at *15-20 (D.N.J. May 31, 2006) (granting motion to strike

11  class allegations and denying cross-motion for certification of nationwide class where state laws

12  varied with respect to plaintiffs' breach-of-warranty and other claims); *Innovative Physical*

13  *Therapy, Inc. v. MetLife Auto & Home*, No. 07-5446, 2008 U.S. Dist. LEXIS 69377, at *25-27

14  (D.N.J. Aug. 26, 2008) (striking proposed nationwide class claims in breach-of-contract case

15  because, *inter alia*, plaintiffs' claims were governed by the varying laws of their home states,

16  "render[ing] the action unmanageable").

17          In *Pilgrim*, for example, the U.S. Court of Appeals for the Sixth Circuit affirmed an order

18  striking a putative nationwide  consumer fraud class.  There, the plaintiffs alleged that they were

19  tricked by "deceptive advertising" into signing up for a program that was "designed to provide

20  healthcare discounts to consumers," only to discover that the program was "worthless."  660 F.3d

21  at 945.  The plaintiffs sued the companies responsible for creating and marketing the healthcare

22  discount program, purporting to represent a nationwide class of all individuals who had joined the

23  program.  *Id.* at 944-45.  The defendants moved to strike the class allegations, arguing, among

24  other things, that variations in state law precluded class treatment.  The district court agreed,

25  holding that "it would have to analyze each class member's claim under the law of his or her home

26  State," which "would make th[e] case unmanageable as a class action and would dwarf any

27  common issues of fact implanted by the lawsuit."  *Id.* at 945 (internal quotation marks omitted).

28  On appeal, the Sixth Circuit affirmed, finding that "no common legal issues favor[ed] a class-

1    action approach to resolving th[e] dispute" because the state laws governing plaintiffs' fraud-based

2    claims varied.  *Id*. at 947.  In so holding, the court cited a long line of decisions rejecting proposed

3    multi-state classes on the ground that individualized legal issues would predominate.  *Id*. at 948

4    (*citing, e.g.*, *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1995) ("'If more than a few of

5    the laws of the fifty states differ . . . the district judge would face the impossible task of instructing

6    a jury on the relevant law.'"); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d

7    1012, 1015, 1018 (7th Cir. 2002) (reversing district court's certification of a nationwide class in a

8    consumer-fraud and breach-of-warranty suit involving allegedly defective tires); *Zinser v. Accufix

9    Research Inst. Inc.*, 253 F.3d 1180, 1189-90 (9th Cir. 2001) (rejecting proposed nationwide class

10   because of variations in state-law claims)).

11        The same result is required here.  Under California's choice-of-law rules, the law of each

12   product owner's home state governs his or her claims.  *See Mazza v. Am. Honda Motor Co.*, 666

13   F.3d 581, 594 (9th Cir. 2012) (applying California choice-of-law rules in putative class action

14   involving allegedly misrepresented vehicles and finding that each proposed class member's fraud-

15   based claim was governed by the "law[] of the jurisdiction in which the transaction took place" –

16   i.e., where he or she purchased or leased the vehicle); *Osborne v. Subaru of Am., Inc.*, 198 Cal.

17   App. 3d 646, 663 (1988) (California choice-of-law rules require that the law of each vehicle

18   owner's home state govern his or her claims).  Further, each state's law varies significantly with

19   regard to the two claims alleged on behalf of the proposed nationwide class:  (1) fraudulent

20   concealment; and (2) breach of implied warranty under the MMWA.

21         *First*, it is well recognized that there are "significant variations in the law of fraudulent

22   concealment from state to state" that preclude multi-state fraudulent-concealment classes.  *Sanders,

23   672 F. Supp. 2d at 991.  Specifically, courts have held that key issues such as "the burden of proof,

24   the duty to disclose, materiality, reliance, and the measure of damages" vary significantly from one

25   state to the next, making it impossible to fairly resolve fraudulent-concealment claims on a

26   nationwide basis in a single class trial.  *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214,

27   222 (E.D. La. 1998); *see also Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)

28   (fraud claims are inappropriate for nationwide class action treatment given that "some states

20

1    require justifiable reliance on a misrepresentation, while others require reasonable reliance [and]

2    [s]tates impose varying standards to determine when there is a duty to disclose facts") (citation

3    omitted); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 464, 469 (D.N.J. 2009) (denying

4    certification of a nationwide class action involving common law fraud because, inter alia, "[s]tates

5    apply materially different standards . . . to common law fraud claims").[4]

6        ***Second***, plaintiffs' MMWA claims will also be governed by widely varying state laws.  As

7    set forth above, while the MMWA provides consumers with a federal cause of action for breach of

8    an implied warranty, the substantive elements of an MMWA claim are governed by state law.  *See*

9    15 U.S.C. § 2301(7) (an MMWA implied warranty claim "aris[es] under state law"); *see also*

10   *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986) (Ginsburg, R.B., J.) (the MMWA

11   "calls for the application of state written and implied warranty law, not the creation of additional

12   federal law"); *Clemens*, 534 F.3d at 1022, n.3 (MMWA claims "hinge on the state law warranty

13   claims," and therefore "stand or fall" with those claims).  As courts have recognized, "[s]tate laws

14   regarding breach of . . .  implied warranty [] differ greatly."  *Payne v. Fujifilm U.S.A., Inc.*, No. 07-

15   ―――――――――

     [4]    For example, state law burdens of proof in fraudulent-concealment cases vary from "clear
16   and convincing evidence," to a "preponderance of the evidence' to an amalgamation of both
     standards.  *See, e.g.*, *Kopeikin v. Merchants Mortgage & Trust Corp.*, 679 P.2d 599, 601 (Colo.
17   1984) (preponderance of the evidence); *OMI Holdings, Inc. v. Howell*, 918 P.2d 1274, 1299 (Kan.
     1996) (clear and convincing evidence); *Lockard v. Carson*, 287 N.W.2d 871, 874 (Iowa 1980)
18   (clear and convincing preponderance of the evidence).  In addition, some states require a fiduciary
     or some type of special confidential relationship to impose a duty to disclose, *see, e.g.*, *Brae Asset
19   Fund, L.P. v. Adam*, 661 A.2d 1137, 1140 (Me. 1995) (no duty to disclose absent fiduciary or
     confidential relationship), whereas other jurisdictions do not require such a relationship, *see, e.g.*,
20   *Amundson v. Wortman*, 777 P.2d 315, 317 (Mont. 1989) (duty to disclose can arise if "special
     circumstances" surround the transaction) (citation omitted).  And while superior knowledge of
21   alleged defects may create a duty to disclose in the absence of a special or confidential relationship
     in some states, *see, e.g.*, *Ceribelli v. Elghanayan*, 990 F.2d 62, 64 (2d Cir. 1993) (New York law
22   recognizes disclosure duty in absence of fiduciary relationship when one party has superior
     knowledge), this is not true in others, *see, e.g.*, *Urman v. South Boston Savings Bank*, 674 N.E.2d
23   1078, 1081 (Mass. 1997) (silence not a basis for fraud even when seller has knowledge of
     weakness in thing sold and fails to disclose it).  Standards of reliance also vary.  While some states
24   require actual reliance, *see, e.g.*, *Silk v. Phillips Petroleum Co.*, 760 P.2d 174, 177 (Okla. 1988)
     (plaintiff must act in reliance on misrepresentation), others have adopted a reasonable-reliance
25   standard, *see, e.g.*, *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005) (stating
     requirement of reasonable reliance by plaintiff under New Jersey common law), and still other
26   states require proof of justifiable reliance, *see, e.g.*, *Clark v. McDaniel*, 546 N.W.2d 590, 593
     (Iowa 1996) (applying justifiable-reliance standard to fraudulent concealment claim).

27

28

385, 2010 U.S. Dist. LEXIS 52808, at *27 (D.N.J. May 28, 2010) (quoting *Cole v. GMC*, 484 F.3d 717, 726 (5th Cir. 2007)).  Specifically, state warranty laws vary with regard to the application of "vertical privity requirements, contractual limitations of implied warranties, limitations on plaintiffs' remedies and affirmative defenses available to the defendant."  *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 271 (D.D.C. 1990); *see also Osborne*, 198 Cal. App. 3d at 656 (discussing the "variations in the law of implied warranty" across the country).[5]  In light of these differences in state warranty law – which apply equally to claims under the MMWA – courts have consistently refused to certify proposed nationwide MMWA classes.  *See, e.g.*, *Marcus v. BMW of N. Am., LLC*, No. 08-5859, 2010 U.S. Dist. LEXIS 122908, at *19 (D.N.J. Nov. 19, 2010), *vacated on other grounds*, 687 F.3d 583 (3d Cir. 2012) ("It appears that no federal court has certified a nationwide class under the MMWA on the basis of breaches of warranties related to defective products.");

---

[5]      For example, some states require privity to establish a breach-of-implied-warranty claim, *see, e.g.*, *Yu-Santos v. Ford Motor Co*., No. 1:06-CV-01773-AWI-DLB, 2009 U.S. Dist. LEXIS 41001, at *61 (E.D. Cal. May 14, 2009) (in California, the "general rule is that privity of contract is required in an action for breach of either express or implied warranty"); *Tolliver v. Monaco Coach Corp*., No. 8:06-cv-856-T-30TGW, 2006 U.S. Dist. LEXIS 40007, at *5 (M.D. Fla. June 16, 2006) (dismissing implied-warranty claim under Florida law because "[p]laintiff purchased the vehicle directly from [retailer]" and, "[t]hus, there is no privity between [p]laintiff and [defendant]"), whereas others have abandoned the privity requirement in implied-warranty cases, *see Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd*., 587 F. Supp. 2d 697, 705 (D. Md. 2008) ("Maryland has expressly abolished the requirement for contractual privity to sue for breach of the implied warranty of merchantability[.]"); *Pack v. Damon Corp*., No. 04-2163, 2006 U.S. App. LEXIS 2303, at *26 (6th Cir. Jan. 5, 2006) ("we conclude that Michigan has abandoned the privity requirement for implied-warranty claims").  In addition, the standard for merchantability varies. Under some states' laws, a product is merchantable as long as it can be used for its ordinary purpose.  *See Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1232-33 (N.D. Ga. 2005) (plaintiff failed to show that alleged breach of implied warranty affected vehicle's "drivability or usefulness").  Other states focus on the reasonable consumer expectations of a product.  *See Venezia v. Miller Brewing Co*., 626 F.2d 188, 190 (1st Cir. 1980) ("[u]nder Massachusetts law the question of fitness for ordinary purposes is largely one centering around reasonable *consumer* expectations") (emphasis added).  And still other states explicitly require that a product comply with applicable federal and state standards in order to be merchantable. Kan. Stat. Ann. § 50-624(f) (2008) ("'merchantable' means, in addition to the qualities prescribed in Kan. Stat. Ann. § 84-2-314 . . . conformity in all material respects with applicable state and federal statutes and regulations establishing standards of quality and safety"); W. Va. Code § 46A-6-102(c) (2009) (in addition . . . "merchantable" means that "goods conform in all material respects to applicable state and federal statutes and regulations," and "that the goods are in good working order and will operate properly in normal usage for a reasonable period of time").

**Def.'s Mem. ISO Mot. To Dismiss Or To Strike Nationwide Class Allegations          Case No: CV09-3660**

1   *Payne*, 2010 U.S. Dist. LEXIS 52808, at *28 (rejecting proposed nationwide MMWA class;

2   "because Magnuson-Moss claims depend upon the state law warranty claims, the same conflicts

3   with regard to breach of warranty are applicable to Plaintiffs' Magnuson-Moss claims as well");

4   *Barbarin v. General Motors Corp.*, No. 84-0888, 1993 U.S. Dist. LEXIS 20980, at *8-10 (D.D.C.

5   1993) (MMWA claim not certifiable because "vagaries of the law of warranties" would require the

6   court to examine "as many as 50 different state warranty regimes for determining such matters as

7   privity requirements, limitations periods, equitable defenses, and the like").

8       Plaintiffs' proposed nationwide class is doomed for all of the same reasons.  Any trial of

9   plaintiffs' nationwide class claims would require a jury to parse through 50 different standards for

10   liability – and would quickly become utterly unmanageable.  Accordingly, if the Court does not

11   dismiss plaintiffs' fraudulent-concealment and implied-warranty claims, it should strike plaintiffs'

12   nationwide class allegations.[6]

13                          **CONCLUSION**

14       For the foregoing reasons, all of plaintiffs' claims should be dismissed.  If plaintiffs'

15   implied-warranty or fraudulent-concealment claims are not dismissed, plaintiffs' nationwide class

16   allegations should be stricken.

17   Dated:  November 27, 2012             Respectfully submitted,

18

19                              JOHN H. BEISNER (Admitted *Pro Hac Vice*)

                               JESSICA D. MILLER (Admitted *Pro Hac*

20                              *Vice*)

21                              SKADDEN, ARPS, SLATE, MEAGHER &
                             FLOM LLP

22                              1440 New York Avenue NW
                             Washington, DC 20005

23                              Telephone: (202) 371-7000
                             Facsimile: (202) 393-5760

24                              Email: John.Beisner@skadden.com

25           COUNSEL FOR DEFENDANT NISSAN NORTH AMERICA, INC.

26

27   [6]     Given the early stage of these proceedings, this motion does not address the many other
  reasons why plaintiffs' proposed nationwide and California-only classes do not meet the

28   requirements of Rule 23.