Elizabeth J. Cabraser  (SBN 083151)
Jahan C. Sagafi (SBN 224887)
Joseph P. Forderer (SBN 278774)
LIEFF CABRASER HEIMANN &  BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
E-mail:  ecabraser@lchb.com
E-mail:  jsagafi@lchb.com
E-mail:  jforderer@lchb.com

*Attorneys for Plaintiffs and proposed Class Members*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HELEN TARAGAN, MATTHEW WAKEFIELD, and MARITES ASIDO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC., a California corporation; NISSAN MOTOR COMPANY, LTD., a Japanese company<br><br>Defendant. | Case No.  C-09-03660 (SBA)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF OR TO STRIKE PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS**<br><br>Date:    March 12, 2013<br>Time:    1:00 p.m.<br>Judge:  Honorable Saundra Brown Armstrong |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 2

PROCEDURAL BACKGROUND ................................................................................................. 3

ARGUMENT .................................................................................................................................. 4

    I.      Nissan's Motion To Dismiss Misconstrues The Nature Of Plaintiffs' Claims And The Relevant Legal Standards. ............................................................ 4

        A.      Plaintiffs Have Alleged That Nissan's Conduct Injured Them, Sufficient To Give Them Standing To Bring These Claims. ...................... 4

            1.      Plaintiffs Readily Satisfy The Injury-In-Fact Requirement To Support Standing. ....................................................................... 4

            2.      Nissan's Authority Is Distinguishable Because Those Cases Involved Speculation About What Might Happen To The Products And Patently Inadequate Or Conclusory Allegations. ................................................................................... 5

        B.      Plaintiffs Satisfy The Requirements For Each Of Their Five Claims. ......... 7

            1.      Plaintiffs State UCL, CLRA, And Fraudulent Concealment Claims. ......................................................................................... 7

            2.      Plaintiffs State A Claim Under The Song-Beverly Act. ............... 11

            3.      Plaintiffs State A Claim Under The Magnuson-Moss Warranty Act ("MMWA"). ............................................................ 13

        C.      Should The Court Find The FAC Deficient, Leave To Amend Is Proper. .......................................................................................................... 13

    II.      Nissan's Motion To Strike Should Be Denied, ....................................................... 13

CONCLUSION ............................................................................................................................. 14

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Aluminum Co. of America v. Bonneville Power Admin.*,
 903 F.2d 585 (9th Cir. 1989) .................................................................................................. 5

*Alvarez v. Felker Mfg. Co.*,
 230 Cal. App. 2d 987 (1964) ................................................................................................ 12

*Am. Suzuki Motor Corp. v. Superior Court*,
 37 Cal. App. 4th 1291 (1995) ......................................................................................... 6, 11

*Atkinson v. Elk Corp. of Texas*,
 142 Cal. App. 4th 212 (2006) .............................................................................................. 12

*Bardin v. DaimlerChrysler Corp.*,
 136 Cal. App. 4th 1255 (2006) .............................................................................................. 8

*Birdsong v. Apple, Inc.*,
 590 F.3d 955 (9th Cir. 2009) ................................................................................................. 6

*Bullock v. Philip Morris USA, Inc.*,
 159 Cal. App. 4th 655 (2008) ................................................................................................ 9

*Camacho v. Auto. Club of S. Cal.*,
 142 Cal. App. 4th 1394 (2006) ............................................................................................ 10

*Cartwright v. Viking Indus., Inc.*,
 No. 07-CV-02159, 2009 U.S. Dist. LEXIS 83286 (E.D. Cal. Sept. 14, 2009) .................... 12

*Chamberlan v. Ford Motor Co.*,
 369 F. Supp. 2d 1138 (N.D. Cal. 2005) ................................................................................. 8

*Clemens v. DaimlerChrysler Corp.*,
 534 F. 3d 1017 (9th Cir. 2008) ............................................................................................ 12

*Cohen v. Guidant Corp.*,
 No. CV-05-8070-R,
 2011 U.S. Dist. LEXIS 18786 (C.D. Cal. Feb. 5, 2011) ....................................................... 6

*Colgan v. Leatherman Tool Grp., Inc.*,
 135 Cal. App. 4th 663 (2006) .............................................................................................. 11

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
 35 Cal. 3d 197, 197 Cal. Rptr. 783 (Cal. 1983) ................................................................... 11

*Daugherty v. Am. Honda Motor Corp.*,
 144 Cal. App. 4th 824 (2006) ................................................................................................ 8

*Day v. AT&T Corp.*
 63 Cal. App. 4th 325 (1998) .................................................................................................. 9

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Dewey v. Volkswagen, AG*,
  558 F. Supp. 2d 505 (D.N.J. 2008) ....................................................................................... 13

*Ehrlich v. BMW of N. Am., LLC*,
  801 F. Supp. 2d 908 (C.D. Cal. 2010) ............................................................................ 11, 12

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ................................................................................. 8

*Fieldstone Co. v. Briggs Plumbing Products, Inc.*,
  54 Cal. App. 4th 357 (1997) ................................................................................................ 12

*Fletcher v. Security Pacific National Bank*,
  23 Cal. 3d 442 (1979) ............................................................................................................ 5

*Foman v. Davis*,
  371 U.S. 178 (1962) ............................................................................................................ 13

*Hahn v. Mirda*,
  147 Cal. App. 4th 740 (2007) .............................................................................................. 11

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
  No. C 09-1597, 2010 U.S. Dist. LEXIS 909505 (N.D. Cal. Sept. 1, 2010) ......................... 11

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
  288 F.3d 1012 (7th Cir. 2002) ............................................................................................... 6

*In re Elan Corp. Sec. Litig.*,
  543 F. Supp. 2d 187 (S.D.N.Y. 2008) ................................................................................... 8

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ............................................................................................. 5, 10, 11

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,
  505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................................................. 13

*Isip v. Mercedes-Benz USA, LLC*,
  155 Cal. App. 4th 19 (2007) ................................................................................................ 11

*Keegan v. Am. Honda Motor Corp.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012) ................................................................................. 12

*Kisliuk v. ADT Sec. Servs., Inc.*,
  263 F.R.D. 544 (C.D. Cal. 2008) ......................................................................................... 13

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997) .................................................................................................. 9

*Lozano v. AT&T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007) ............................................................................................... 10

# TABLE OF AUTHORITIES
## (continued)

Page

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................................. 4

*Mathison v. Bumbo*,
   No. CV08-0369 DOC (ANx), 2008 U.S. Dist. LEXIS 108511 (C.D. Cal. Aug. 18, 2008) ........ 6

*McKell v. Wash. Mutual, Inc.*,
   142 Cal. App. 4th 1457 (2006) ................................................................................................ 10

*Meaunrit v. Pinnacle Foods Group, LLC*,
   No. C 09-04555 CW, 2010 U.S. Dist. LEXIS 43858 (N.D. Cal. May 5, 2010) ......................... 6

*Metowski v. Traid Corp.*,
   28 Cal. App. 3d 332 (1972) ..................................................................................................... 12

*Mexia v. Rinker Boat Co.*,
   174 Cal. App. 4th 1297 (2009) ................................................................................................ 12

*Milicevic v. Fletcher Jones Imports, Ltd.*,
   402 F.3d 912 (9th Cir. 2005) .................................................................................................... 13

*Morgan v. AT&T Wireless Serv., Inc.*,
   177 Cal. App. 4th 1235 (2009) .................................................................................................. 9

*Morgan v. Harmonix Music Sys., Inc.*,
   No. C 08-5211, 2009 U.S. Dist. LEXIS 57528 (N.D. Cal. July 7, 2009) .................................. 8

*Myers-Armstrong v. Actavis Totowa, LLC*,
   No. C 08-04741 WHA, 2009 U.S. Dist. LEXIS 38112 (N.D. Cal. April 22, 2009) .................. 6

*Peterson v. Lamb Rubber Co.*,
   54 Cal. 2d 339 (1960) .............................................................................................................. 12

*Romo v. FFG Ins. Co.*,
   397 F. Supp. 2d 1237 (C.D. Cal. 2005) ................................................................................... 13

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) ................................................................................................... 9

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
   72 Cal. App. 4th 861 (1999) .................................................................................................... 10

*Sanders v. Apple, Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ....................................................................................... 9

*Scripps Clinic v. Sup. Ct.*,
   108 Cal. App. 4th 917 (2003) .................................................................................................. 10

*Smith v. Ford Motor Co.*,
   749 F. Supp. 2d 980 (N.D. Cal. 2010) ....................................................................................... 6

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Stearns v. Select Comfort Retail Corp.*,
　763 F. Supp. 2d 1128 (N.D. Cal. 2010) .................................................................................. 6

*Taragan v. Nissan N. Am., Inc.*,
　475 Fed. Appx. 221 (9th Cir. 2012) .................................................................................. 3, 4

*Tietsworth v. Sears, Roebuck and Co.*,
　720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................................................. 9

*Vega v. Jones, Day, Reavis & Pogue*,
　121 Cal. App. 4th 282 (2004) .................................................................................. 8

*Velasquez v. HSBC Fin. Corp.*,
　No. 08-4592, 2009 U.S. Dist. LEXIS 5428 (N.D. Cal. Jan. 16, 2009) ..................................... 13

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*,
　529 U.S. 765 (2000) .................................................................................. 4

*Williams v. Gerber Prods. Co.*,
　552 F.3d 934 (9th Cir. 2008) .................................................................................. 9

*Wilson v. Hewlett-Packard Co.*,
　668 F.3d 1136 (9th Cir. 2012) .................................................................................. 8

**STATUTES**

Cal. Bus. & Prof. § 17200 .................................................................................. 5

Cal. Civ. Code § 1770(a)(5) .................................................................................. 11

**RULES**

Fed. R. Civ. P. 15(a)(2) .................................................................................. 13

Fed. R. Civ. P. 23 .................................................................................. 6

**TREATISES**

Wright, Miller, & Cooper, *Fed. Prac. & Proc.*, § 3531.4 .................................................................................. 4

**INTRODUCTION**

Through this class action, Plaintiffs seek remedies for Nissan's design and sale of certain dangerous vehicles. These vehicles are dangerous because they can roll away when they are turned off while in a non-park gear (e.g., in drive or reverse). This is called "rollaway danger." Rollaway danger is a serious problem, as evidenced, for example, by the experience of a former plaintiff in this action. Her Nissan rolled away in this very manner, and her foot was crushed.

Nissan's competitors have solved this problem by ensuring that when their vehicles are turned off, they can only be in park (not drive or reverse). They therefore cannot roll away. With today's technology, Nissan could readily configure the computers in its existing vehicles to prevent rollaway danger in this manner, for less than $40 per vehicle. And Nissan could ensure that its new vehicles coming off the assembly line have these rollaway protections. But Nissan has not done either of these things, arguing instead that it has no obligation to its customers to correct this problem, or even to warn them of it.

Plaintiffs ask the Court to require Nissan to provide a remedy to customers who are driving Nissans today and to require Nissan to implement a fix going forward.

Nissan's Motion To Dismiss And To Strike makes three categories of arguments, all of which miss the mark. <u>First</u>, Nissan argues that Plaintiffs and the other customers driving these vehicles have not suffered an injury. Mot. at 8-10. Plaintiffs clearly have suffered an injury sufficient to support standing, and their allegations are distinguishable from the line of cases Nissan invokes (which relate to products that might fail in the future or which suffer from patently inadequate pleading). <u>Second</u>, Nissan's motion incorrectly posits that consumers already know of the danger (because a government agency knows of it), and that Nissan owes its customers no duty to disclose this danger. Mot. at 14-18. Neither argument holds water, as customers cannot be attributed knowledge of Nissan's negotiations with and disclosures to regulators, and there are several well-established bases for a duty to disclose where a manufacturer like Nissan has superior knowledge, makes partial representations of safety but neglects to disclose material facts about safety, conceals information about the danger at issue, or relies on its superior knowledge. Any of those circumstances is enough to give rise to a duty; all

are present here. Third, Nissan's challenges to the warranty claims misconstrue the applicable definition of fitness and the exceptions to the notice and privity requirements under these facts. Mot. at 11-14.

**FACTUAL BACKGROUND**

Nissan has manufactured vehicles that are unsafe, but has falsely represented to purchasers, including Plaintiffs, that these vehicles are safe. First Amended Complaint ("FAC"), ¶ 6. The vehicles are unsafe in that they can be turned off while in gear,[1] and the driver can leave the vehicle with the key in hand, with the vehicle in a dangerous condition, free to roll away ("rollaway danger"). *Id.*, ¶¶ 2-4 & 24-25. The danger posed by these vehicles is not an abstract possibility. In fact, the Nissan vehicles at issue have rolled away in this very manner, causing injuries such as crushing the foot of a former plaintiff in this litigation.[2] *Id.*, ¶¶ 26-27 (listing two examples of rollaway incidents).

Most other American vehicles with electronic keys do not suffer from this defect. FAC, ¶¶ 7, 19-21, & 28. Rather, they ensure that the vehicle cannot be off and in gear by using one of three safety mechanisms. *Id.* First, in some vehicles (e.g., Toyota, Mercedes), when the driver turns off the vehicle while it is in gear, the vehicle computer automatically shifts into park. *Id.*, ¶ 28(b). Thus, as soon as the vehicle is off, it is in park, and therefore not subject to rollaway danger. *Id.* Second, in other vehicles (e.g., Chrysler, Mercedes), when the driver attempts to turn off the vehicle but it is in gear, the vehicle's computer is programmed to refuse to turn it off. *Id.*, ¶ 28(c). Once the gear is shifted to park, the vehicle can be turned off. *Id.*[3] Third, in still other vehicles, (e.g., Chrysler, Honda, BMW), the electronic key only works when physically inserted into the ignition, and a solenoid (a device to lock the key in place) holds the key until the vehicle

---

[1] "In gear" herein refers to the automatic transmission being in a gear position other than park or neutral, such as drive, reverse, etc.

[2] The only vehicles at issue are those that use Nissan's electronic key system, which allows the driver to start the vehicle when the key is in proximity to the ignition (it need not touch or be inserted into the ignition like a conventional key), through a remote control electronic signal sent through the air. Nissan's many vehicles with conventional keys with teeth (which are physically inserted into the ignition) do not suffer from this defect, and are therefore not a subject of this lawsuit.

[3] Either of these first two solutions would cost under $40 per vehicle. FAC, ¶ 32.

1   is shifted into park. *Id.*, ¶ 28(a). With each of those three mechanisms, the vehicle cannot be off

2   and in gear. If it is off, it is, by definition, in park, and therefore not subject to the rollaway

3   danger that plagues the Nissan vehicles at issue.[4]

4         Plaintiffs allege that Nissan's defective design of these vehicles – in contrast to its own

5   designs for vehicles with traditional keys and its competitors' designs for vehicles with electronic

6   keys – makes these vehicles unsafe, that Nissan has affirmatively misrepresented the safety of

7   these vehicles, and that it has failed to disclose the material fact that these vehicles are unsafe.

8   Plaintiffs assert five claims: (1) violation of the Magnuson-Moss Warranty Act, (2) violation of

9   the Song-Beverly Consumer Warranty Act, (3) violation of California's Unfair Competition Law

10  ("UCL"), (4) violation of California's Consumer Legal Remedies Act ("CLRA"), and (5)

11  fraudulent concealment. FAC, ¶¶ 55-109 (listing Plaintiffs' five claims for relief). These claims

12  all rest on Plaintiffs' core allegation – that the vehicles suffer from rollaway danger, and that

13  Nissan conceals this danger and misrepresents the vehicles as safe.

14  **PROCEDURAL BACKGROUND**

15        On August 10, 2009, Plaintiffs brought this action to seek damages and injunctive relief

16  based on Nissan's sale of vehicles that can and did roll away when off. *See generally* Complaint.

17  Plaintiffs were motivated by a concern that the vehicles' design, making them peculiarly

18  susceptibility to rollaway danger, was dangerous to themselves, their loved ones, and bystanders.

19  Plaintiffs originally asserted that Nissan's design violates a NHTSA regulation called FMVSS

20  114, which was designed to prevent rollaway danger. *Id.* This Court rejected that theory, and the

21  Ninth Circuit affirmed. *Taragan v. Nissan N. Am., Inc.*, 475 Fed. Appx. 221 (9th Cir. 2012).

22  However, the Ninth Circuit reversed this Court's dismissal with prejudice and remanded, noting

---

[4] Contrary to Nissan's suggestions, no government entity has found that these Nissan vehicles are safe, or even that they comply with relevant safety standards. Mot. at 1:19-20, 5:20-25, 12:20-21, & Beisner Decl., Ex. 4. Rather, the National Highway Transportation Safety Administration's ("NHTSA") Office of Vehicle Safety Compliance ("OVSC") has received a document from a private contractor (hired by Nissan), which performed basic tests on a Nissan vehicle, and the *contractor* concluded that the vehicle passed the test. *See* Beisner Decl., Ex. 4, p. 2 (cover page) (listing private contractor as author and stating "prepared for" NHTSA) & p. 3 (stating that the opinions contained therein are not NHTSA's, listing preparer Debbie Messick and approver Grant Farrand with "general-testing.com" email addresses, and showing that OVSC "accepted" (i.e., received) the document from the private contractor).

1    that Plaintiffs should have the opportunity to challenge these safety problems without relying on
2    FMVSS 114. *Id.*

3    In other words, regardless of whether the regulation prohibits Nissan's conduct, other
4    legal authority may do so. If Nissan's conduct violates federal or state statutes or common law,
5    and such violation gives rise to a private cause of action, then – regardless of what NHTSA's
6    regulation says – Plaintiffs can seek a remedy for Nissan's conduct.

7    Plaintiffs' FAC details how Nissan's representations that its vehicles are "safe" and
8    "reliable" are contradicted by its knowledge of the rollaway danger inherent in all the vehicles at
9    issue, and its knowledge that its competitors have implemented various solutions to prevent
10   rollaway danger. FAC, ¶¶ 82-83 & 99.

## ARGUMENT

### I. Nissan's Motion To Dismiss Misconstrues The Nature Of Plaintiffs' Claims And The Relevant Legal Standards.

#### A. Plaintiffs Have Alleged That Nissan's Conduct Injured Them, Sufficient To Give Them Standing To Bring These Claims.

Nissan's first argument recites the basic law of standing, but fails to appreciate that Plaintiffs have alleged injury under each cause of action sufficient to give them standing.

##### 1. Plaintiffs Readily Satisfy The Injury-In-Fact Requirement To Support Standing.

The injury-in-fact requirement to show standing is readily satisfied. In general, an injury in fact exists where there is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted); *see also Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000) (holding that plaintiff's interest "must consist of obtaining compensation for, or preventing, the violation of a legally protected right"). "Standing is found readily, particularly when injury to some traditional form of property is asserted." Wright, Miller, & Cooper, *Fed. Prac. & Proc.*, § 3531.4, pp. 140-41.

Here, the "legally protected interest" Plaintiffs seek to protect is their interest in the

money they spent on the vehicles at issue. Put another way, it is their interest in not being subject to an "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. § 17200; *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (observing that the "larger purpose" of the UCL is "protecting the general public against unscrupulous business practices") (citing *Fletcher v. Security Pacific National Bank*, 23 Cal. 3d 442, 453 (1979)). Put in terms of the warranty claims, their interest is in getting a product that is as safe as advertised. FAC, ¶¶ 61-62 & 81-84. Likewise, Plaintiffs properly assert injury to set forth a CLRA claim for the same reasons. *Id.*, ¶¶ 104-05. Because of Nissan's misrepresentations and omissions, Plaintiffs spent money purchasing and leasing Nissan vehicles that they would not have spent absent this alleged wrongdoing. *Id.*, ¶¶ 10, 31, 104, & 106. These allegations easily satisfy the injury-in-fact aspect of the standing requirement.[5]

### 2. Nissan's Authority Is Distinguishable Because Those Cases Involved Speculation About What Might Happen To The Products And Patently Inadequate Or Conclusory Allegations.

Nissan's authority does nothing to undermine Plaintiffs' standing or the fact that they have alleged a real, concrete, cognizable injury. Here, Nissan's design, common to all covered vehicles, creates a risk of rollaway danger by failing to ensure that a vehicle that is off is in park. This danger is an inherent part of the design, and it manifests every time someone turns off their vehicle in gear.[6]

By contrast, in all nine cases cited by Nissan on pages 8-10, the plaintiffs attempted to criticize fundamentally safe products because of a fear of possible malfunction under rare circumstances – not, as Plaintiffs here allege, a design defect that guarantees a malfunction every time the product encounters a certain scenario (being off and in gear). Mot. at 8-10. *See In re*

---

[5] Because Article III standing is satisfied by allegations of actual harm (including lost money due to purchase of a product), the fact that the product mostly works or the transaction benefited the plaintiff is irrelevant. For example, the Ninth Circuit has held that plaintiffs challenging electricity rates as excessive had Article III standing despite the defendant's argument that the rates were actually favorable to the plaintiffs. *Aluminum Co. of America v. Bonneville Power Admin.*, 903 F.2d 585, 590 (9th Cir. 1989).

[6] This has happened not only to the individuals listed in the FAC at paragraphs 26-27, but also to Plaintiff Wakefield, who is willing to assert that he turned off his covered Nissan vehicle while it was in gear, and it began moving, should the Court find that such an allegation is necessary to his claims.

1 *Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) (risk of tire failure); *Cohen v. Guidant Corp.*, No. CV-05-8070-R, 2011 U.S. Dist. LEXIS 18786, at *5 (C.D. Cal. Feb. 5, 2011) (risk of pacemaker failure); *Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08-04741 WHA, 2009 U.S. Dist. LEXIS 38112, at *3 (N.D. Cal. April 22, 2009) (no allegation of "anything ineffective or harmful" about product); *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1298 (1995) (risk of rollover, where the vast majority of Samurais did not roll over); *Mathison v. Bumbo*, No. CV08-0369 DOC (ANx), 2008 U.S. Dist. LEXIS 108511, at *27 (C.D. Cal. Aug. 18, 2008) (risk of "malfunction [of baby seats] during the useful life of the product"); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (risk of failure of ignition locks); *Meaunrit v. Pinnacle Foods Group, LLC*, No. C 09-04555 CW, 2010 U.S. Dist. LEXIS 43858, at *1-2 (N.D. Cal. May 5, 2010) (risk of illness from microwaveable chicken pot pies, based on vague allegations regarding "unnamed 'recent reports'"); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 956 (9th Cir. 2009) (risk of hearing injury from iPods); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1134 (N.D. Cal. 2010) (risk of mold from beds).

Furthermore, several of Nissan's citations are distinguishable for other reasons. First, the plaintiffs in some of Nissan's cases failed for simple failure to meet the elements of the relevant claim or allege actual harm (such as a payment of money to the defendant). *Mathison*, 2008 U.S. Dist. LEXIS 108511, at *9-10 (finding no standing because "Plaintiffs do not allege that they purchased the Bumbo seats"); *Smith*, 749 F. Supp. 2d at 988 (dismissing claims because plaintiffs did not allege "any misrepresentation made by Ford" or "a safety concern"). Second, several of these cases cited by Nissan are procedurally distinguishable. *See Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1294-99 (1995) (finding class certification inappropriate under California rules as opposed to Fed. R. Civ. P. 23, without addressing standing, where no UCL claim alleged); *Bridgestone*, 288 F.3d at 1018 (reversing class certification because choice-of-law analysis required application of multiple states' laws); *Smith*, 749 F. Supp. 2d at 983 (granting summary judgment).

Here, Plaintiffs challenge a defect that directly implicates safety. That defect is not a

1 probability that a normally functioning product or component might fail for some people – rather, it is a defect that concerns the very nature of Nissan's design, which exists for all the vehicles at issue and creates the same danger for all customers (and passengers and bystanders). The fact that Plaintiffs do not allege personal injury or seek damages for physical injuries sustained by the unlucky people who get run over by the vehicles at issue is of no moment, as that is the essence of the difference between a personal injury action and a consumer class action challenging the defective design that creates the opportunity for the physical injury to manifest. The focus of the latter type of action (i.e., this one) is the economic harm from the defendant's cutting corners to save some money at the expense of customer safety.

In addition, Plaintiffs have standing to seek injunctive relief in the form of repairs to their and other Class members' vehicles. Nissan's suggestion that because Plaintiffs are aware of the rollaway danger it is impossible that they will ever turn their vehicles off in gear fails to take into account the realities of driver experience. Mot. at 9-10 & 10 n.3. The entire point of a design ensuring that the vehicle cannot be off and in gear is that drivers sometimes forget to shift the vehicle into park when turning it off. Drivers often have multiple topics on their mind when driving and parking, and cannot be expected to bear in mind every driving incident and ever life event that has ever occurred to them. For example, police officers pursuing suspects will be exposed to rollaway danger whenever they turn off their vehicle and exit without shifting into park. *See* http://www.nyc.gov/html/nypd/html/pr/pr_2009_014.shtml (last visited January 28, 2013) (describing NYPD's purchase of Nissan Altimas in 2009).

**B. Plaintiffs Satisfy The Requirements For Each Of Their Five Claims.**

**1. Plaintiffs State UCL, CLRA, And Fraudulent Concealment Claims.**

Nissan challenges Plaintiffs' UCL, CLRA, and fraudulent concealment claims by arguing that (1) Nissan has not concealed anything, because the defect is obvious and well publicized, and (2) Nissan owes no duty to disclose. Mot. 14-18. Plaintiffs address each argument in turn and then set forth how they satisfy the elements of each claim.

**a. Plaintiffs Properly Allege That Nissan Concealed The Defect.**

Nissan argues that it in fact has not concealed the defect (ignoring that it made affirmative

1  misrepresentations), pointing, without specificity or citation, to its "full[] disclos[ure] to NHTSA"
2  and NHTSA's "publish[ing of] numerous regulatory materials," and attempting to create a
3  burden of investigation on each customer: "if plaintiffs were concerned . . ., there was publicly
4  available information." Mot. at 15:19-22. Because customers are neither expected to know all
5  facts published in the Federal Register nor read up on sellers' communications with regulatory
6  agencies, Nissan cannot claim customers were aware of the defect. Customers need not be
7  administrative law experts.

### b. Nissan Had A Duty To Disclose The Defect.

9  Furthermore, Nissan had a duty to disclose the defect under California law. Mot. at 15-18.
10  There are at least four independent sources for this duty:

11  ● First, Nissan had a duty to disclose because these defects pose a safety hazard.
12  *Daugherty v. Am. Honda Motor Corp.*, 144 Cal. App. 4th 824, 835-36 (2006); *Morgan v.*
13  *Harmonix Music Sys., Inc.*, No. C 08-5211, 2009 U.S. Dist. LEXIS 57528, at *11-12 (N.D. Cal.
14  July 7, 2009); *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1145 (N.D. Cal. 2005);
15  *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1270 (2006). Certainly, vehicles that
16  can roll away while off in an unexpected manner are more hazardous than the defective
17  speedometers that merely failed to indicate speed that were deemed sufficiently dangerous in
18  *Falk*. *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007).[7]

19  ● Second, "[e]ven where no duty would otherwise exist, where one does speak, he
20  must speak the whole truth to the end that he does not conceal any facts which materially qualify
21  those stated." *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292 (2004); *In re*
22  *Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 208 (S.D.N.Y. 2008) ("By choosing to speak about
23  the safety of [their product], Defendants assumed a duty to disclose material information
24  regarding adverse events."). Plaintiffs allege that Nissan represented its vehicles as "safe" and
25  "reliable" but failed to inform customers of the defect. FAC, ¶ 99.

---

[7] To demonstrate a safety issue sufficient to state a fraud-based claim under the CLRA or UCL, Plaintiffs must allege (1) a defect; (2) a plausible causal nexus between the defect and the alleged safety hazard; and (3) defendant's knowledge of the defect. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143-46 (9th Cir. 2012). First, Plaintiffs allege a defect. FAC, ¶¶ 4-5. Second, Plaintiffs allege a plausible causal nexus. *Id.* Third, Plaintiffs allege knowledge. *Id.*, ¶¶ 30 & 67.

1     ●     Third, a duty to disclose arises where "the defendant actively conceals a material fact from the plaintiff." *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 985 (N.D. Cal. 2009) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)). Knowledge of a defect that is neither corrected nor disclosed suffices. *Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1133-34 (N.D. Cal. 2010). Nissan's citation to *Sanders* underscores the adequacy of Plaintiffs' allegations. Mot. at 16:24-28. While the allegation "inferior" is conclusory and could apply to any product, Plaintiffs' allegation about the specific nature of the defect here, including how the gear shift works and how competitors' gears work, is as specific as it could be without Plaintiffs learning in discovery about Nissan's design details.

    ●     Fourth, a duty to disclose can rest on knowledge of both "material facts" and the other party's ignorance. *Bullock v. Philip Morris USA, Inc.*, 159 Cal. App. 4th 655, 677 (2008); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007). It is sufficient to allege that a "defendant knew of the alleged defect and did nothing to fix it or alert customers." *Tietsworth*, 720 F. Supp. 2d at 1134. Here, while Plaintiffs were unaware of the defect, Nissan was not. FAC, ¶¶ 9-10 & 71-72.

### c.     Plaintiffs Satisfy Each Of The Three Types Of UCL Claims.

A UCL claim lies where the defendant's representations, though "accurate on some level, . . . nonetheless tend to mislead or deceive." *Morgan v. AT&T Wireless Serv., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009); *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010). "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL." *Id*. Unless a court can conclude as a matter of law that "contrary to the complaint's allegations, members of the public were *not* likely to be deceived or misled by [the alleged misconduct], we must hold that [Plaintiffs] stated a cause of action." *Day v. AT&T Corp.* 63 Cal. App. 4th 325, 333 (1998). Even if the product performs as advertised, material misrepresentations are grounds for a UCL claim. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 936 (9th Cir. 2008) (reversing dismissal of UCL claims where defendant made misleading and truthful statements about its

1 product together).[8] A plaintiff can proceed under one or more of the UCL's three prongs.

2      First, the UCL's "unlawful" prong prohibits any practices forbidden by law. *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 881 (1999); *Scripps Clinic v. Sup. Ct.*, 108 Cal. App. 4th 917, 938 (2003). Because Plaintiffs adequately state their Song-Beverly, MMWA, and CLRA claims, their "unlawful" claim also survives. FAC, ¶ 89.

     Second, the UCL's "unfair" prong covers conduct is "immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mutual, Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). Alternately, unfairness is satisfied by (1) a substantial injury that is neither (2) outweighed by countervailing benefits nor (3) reasonably avoidable. *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394 (2006). *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 737 (9th Cir. 2007).

     Under either test, Plaintiffs have properly alleged that Nissan's failure to disclose the defect, its concealment thereof, and its failure to remedy it are unfair. FAC, ¶¶ 90-91. Specifically, "most drivers do not know of or anticipate" rollaway danger, whereas Nissan "knew, or should have known, that [the subject vehicles] were unsafe," and "knew and knows of a non-defective and safe alternative design," but nonetheless designed its vehicle computer systems with the defect. *Id.*, ¶¶ 5, 9, 30. The defect is a direct result of the way vehicles with automatic transmissions move when off and in gear. Most drivers are not familiar with those mechanics, but Nissan, like any sophisticated vehicle manufacturer (including those that manufacture vehicles without the defect), is. But Nissan misrepresented its vehicles as safe. *Id.*, ¶ 6. The very name "Intelligent Key" suggests safety – can a vehicle with a defect that has been virtually eliminated from the American marketplace for years truly be considered "Intelligent"? *Id.*, ¶¶ 1 & 24.

     Third, the UCL's "fraudulent" prong prohibits conduct that is "likely to . . . deceive[]" the public. *Tobacco II*, 46 Cal. 4th at 312. "Allegations of actual deception [and] reasonable reliance . . . are unnecessary." *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197,

---

[8] Nissan does not appear to challenge Plaintiffs' UCL claim to the extent it rests on the unlawful or unfair prongs. Mot. at 14:20 (referring only to "Plaintiffs' fraud-based claims").

211, 197 Cal. Rptr. 783, 791 (Cal. 1983). This prong is "distinct from common law fraud," because, while a "common law fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages[, n]one of these elements are required to state a claim for injunctive relief under the UCL." *Tobacco II*, 46 Cal. 4th at 312.

### d. Plaintiffs State A Claim Under The CLRA.

Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006). Specifically, Plaintiffs allege that Nissan "[r]epresent[ed] that goods or services have . . . characteristics . . . which they do not have," and "[r]epresent[ed] that goods or services are of a particular standard, quality, or grade . . . [but] they are of another." Cal. Civ. Code § 1770(a)(5) & (7). Plaintiffs allege that Nissan represented that its vehicles are safe and reliable, though they were actually not. FAC, ¶ 99.

### e. Plaintiffs State A Claim For Fraudulent Concealment.

A fraudulent concealment claim requires (1) concealment or suppression of a material fact, (2) a duty to disclose, (3) intent to defraud, (4) the plaintiff's ignorance and materiality, and (5) resulting damage. *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. C 09-1597, 2010 U.S. Dist. LEXIS 909505, at *38 (N.D. Cal. Sept. 1, 2010) (quoting *Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007)); CACI 1901 (setting forth elements of fraudulent concealment). As set forth above, Plaintiffs meet all of these requirements. FAC, ¶¶ 66-75.

## 2. Plaintiffs State A Claim Under The Song-Beverly Act.

### a. The Vehicles Are Unfit Because They Are Not Safe.

Nissan's definition of "fitness" is narrower than that of California law. Mot. at 11-12. The "ordinary purpose" of a vehicle is not just to provide transportation, but to provide "safe" transportation. *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1297 (1995). "[M]erely because a vehicle provides transportation from point A to point B" does not bring it into compliance with the implied warranty of merchantability. *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 924 (C.D. Cal. 2010) (finding allegations of cracked windshields sufficient). Here, it is sufficient that

1  Plaintiffs have alleged that Nissan's vehicles are designed to roll away while off and in gear,
2  when drivers, passengers, and passersby do not expect that danger and Nissan could easily
3  eliminate the danger, as its competitors have.

### b. Notice Is Not Required Under These Circumstances.

Contrary to Nissan's assertions, notice is not required here. Mot. at 12-13. *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1307-12 (2009) (allowing Song-Beverly claim to proceed even though the plaintiff did not discover the defect or give notice until after expiry of the warranty period); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 922-24 (C.D. Cal. 2010) (adopting *Mexia*).[9] In three years of litigation, Nissan has not remedied the de-fect in any way, either in existing vehicles or new models, to Plaintiffs' knowledge. Notice would be a "meaningless ritual." *Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (1972).

### c. Privity Is Not Required Here.

Nissan is incorrect that privity is required, for three reasons. Mot. at 13-14.

First, a manufacturer that extends a written warranty to a consumer brings itself into constructive privity with the consumer, regardless of whether the consumer purchased the product from an intermediate seller. *See, e.g.*, *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 229 (2006); *see also Clemens v. DaimlerChrysler Corp.*, 534 F. 3d 1017, 1023 (9th Cir. 2008); *Fieldstone Co. v. Briggs Plumbing Products, Inc.*, 54 Cal. App. 4th 357 (1997).

Second, consumers can enforce implied warranties that attach between Nissan and its dealers as intended third party beneficiaries of those warranties. *Cartwright v. Viking Indus., Inc.*, No. 07-CV-02159, 2009 U.S. Dist. LEXIS 83286, at *29-30 (E.D. Cal. Sept. 14, 2009).

Third, "dangerous instrumentalities" are excepted from the privity requirement. In *Peterson v. Lamb Rubber Co.*, 54 Cal. 2d 339, 347 (1960), the California Supreme Court held that an employee could sue a manufacturer for breach of implied warranty even though the grinding wheel at issue was sold to his employer. *See also Alvarez v. Felker Mfg. Co.*, 230 Cal. App. 2d 987, 997 (1964) ("[W]here the instrumentality is dangerous [because] it contains latent defects

---

[9] Notice is also not required where consumers sue a manufacturer with whom they have not directly dealt. *Keegan v. Am. Honda Motor Corp.*, 838 F. Supp. 2d 929, 950 (C.D. Cal. 2012).

. . . the implied warranties of fitness and merchantability run from the manufacturer to the consumer even though the latter is not in contractual privity.").[10]

### 3. Plaintiffs State A Claim Under The Magnuson-Moss Warranty Act ("MMWA").

The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 *et seq.*, allows a consumer to sue for the violations of a written warranty, implied warranty, or service contract. *Romo v. FFG Ins. Co.*, 397 F. Supp. 2d 1237, 1239 (C.D. Cal. 2005); *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 917 (9th Cir. 2005) (finding automobile manufacturer and dealer breached warranty by not correcting rear window seal and brakes). For the same reasons set forth above, Plaintiffs have adequately pled an MMWA claim.

### C. Should The Court Find The FAC Deficient, Leave To Amend Is Proper.

If the Court finds any deficiency, Plaintiffs respectfully submit that leave to replead would be appropriate. *Foman v. Davis*, 371 U.S. 178 (1962); Fed. R. Civ. P. 15(a)(2).

## II. Nissan's Motion To Strike Should Be Denied,

Motions to strike are rarely granted and "are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delay tactic." *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007) (Armstrong, J.). "[A]ny doubt concerning the import of the allegations weighs in favor of denying the motion to strike." *Id*. The complaint is viewed "in the light most favorable to the non-moving party," particularly where a defendant moves to strike class allegations, since those are appropriately reviewed through the class certification briefing. *Kisliuk v. ADT Sec. Servs., Inc.*, 263 F.R.D. 544, 546-47 (C.D. Cal. 2008); *Velasquez v. HSBC Fin. Corp.*, No. 08-4592, 2009 U.S. Dist. LEXIS 5428, at *13 (N.D. Cal. Jan. 16, 2009) (relying on In re Walmart in denying defendants' motion to strike as premature). Therefore, "the granting of motions to dismiss class allegations before discovery is commenced is rare." *In re Wal-Mart*, 505 F. Supp. 2d at 615. The better course is "to deny such motions because 'the shape and form of a class action evolves only

---

[10] Separately, the privity inquiry is fact-intensive, inappropriate for dismissal at the pleading stage. *See, e.g.*, *Dewey v. Volkswagen, AG*, 558 F. Supp. 2d 505, 524 n.17 (D.N.J. 2008).

through the process of discovery.'" *Id.*

Nissan seeks to strike the nationwide allegations, leaving the California class allegations in place. This request is premature, as Plaintiffs have not yet presented the choice-of-law analysis typically included in a class certification motion. The Court will have an opportunity to determine the appropriateness of a nationwide class at that stage.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Nissan's Motion To Dismiss And To Strike and allow the parties to proceed to discovery.

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

Dated: January 29, 2013          By:     */s/ Jahan C. Sagafi*
                                              Jahan C. Sagafi

Elizabeth J. Cabraser  (SBN 83151)
Jahan C. Sagafi (SBN 224887)
Joseph P. Forderer (SBN 278774)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
E-mail:  ecabraser@lchb.com
E-mail:  jsagafi@lchb.com
E-mail:  jforderer@lchb.com

*Attorneys for Plaintiffs and proposed Class Members*