JOHN H. BEISNER (Admitted *Pro Hac Vice*)
JESSICA D. MILLER (Admitted *Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue NW
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile:  (202) 393-5760
Email: John.Beisner@skadden.com

JOSHUA M. TEMPLET (Bar No. 267098)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: Joshua.Templet@skadden.com

Counsel For Defendant Nissan North America, Inc.

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| HELEN TARAGAN, MATTHEW WAKEFIELD, and MARITES ASIDO, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br> v.<br><br>NISSAN NORTH AMERICA, INC., a California corporation; and NISSAN MOTOR COMPANY, LTD., a Japanese company,<br><br>          Defendants. | CASE NO:  CV09-3660<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF OR TO STRIKE PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS**<br><br>Date:    March 12, 2013<br>Time:   1:00 PM<br>Judge:  The Hon. Saundra Brown Armstrong |

**Def.'s Reply ISO Motion to Dismiss or to Strike Nationwide Class Allegations          Case No: CV09-3660**

Plaintiffs' opposition brief rests on an unprecedented and untenable premise: that their speculative theory of injury is viable because if they are careless at some point in the future, their vehicles may roll away. In other words, plaintiffs are suing over a potential injury that they have the power to prevent. Such a theory of liability has no support in the caselaw and would put every manufacturer of every product that could potentially result in injury if a consumer is careless at risk for substantial liability. For example, under plaintiffs' logic, a driver could sue a car manufacturer based on the risk that he may someday slam his hand in the door of his vehicle because the product contains no mechanism to prevent such an injury. Plaintiffs do not cite a single case supporting liability in these circumstances.

Plaintiffs are also unable to refute Nissan's other arguments supporting dismissal of their warranty claims – i.e., that plaintiffs have not sufficiently alleged that their cars are not merchantable; that they failed to plead notice; and that they do not allege privity with Nissan. And with respect to plaintiffs' claims under the UCL, CLRA and for fraudulent concealment, plaintiffs have not demonstrated that Nissan failed to disclose anything; nor have they established that Nissan owed them a duty to disclose.

Finally, plaintiffs' argument that striking their nationwide class allegations would be improper should also be rejected. Plaintiffs offer no rebuttal to Nissan's argument that their nationwide class allegations will turn on the widely divergent laws of all 50 states and the District of Columbia. Rather, they simply seek to defer the inevitable on the supposed ground that it is premature to end their unrealistic quest for class certification before discovery. The Court should not allow plaintiffs to proceed with hopeless nationwide class claims.

**ARGUMENT**

**I.    PLAINTIFFS' CLAIMS FAIL BECAUSE THEY HAVE NOT ALLEGED VIABLE INJURIES.**

As explained in Nissan's opening brief, all of plaintiffs' claims fail under California law because they have not alleged a cognizable injury – i.e., that their vehicles rolled away as a result of the supposed "defect."[1]  (*See* Def.'s Mot. at 8.) In response, plaintiffs do not dispute that injury

---

[1]    Plaintiff Wakefield now asserts that, on one occasion, he "turned off his covered Nissan
*(cont'd)*

**Def.'s Reply ISO Mot. To Dismiss Or To Strike Nationwide Class Allegations**          Case No: CV09-3660

1 is a fundamental element of each of their claims.  (*See* Pls.' Opp'n at 4.)  Instead, plaintiffs argue

2 that they have Article III standing because they spent money purchasing their vehicles and that

3 their claims are not speculative because the alleged "design defect . . . guarantees a malfunction

4 every time the product" is "off and in gear."  (*Id.* at 5.)  These arguments fail for several reasons.

5      As a threshold matter, plaintiffs misperceive Nissan's argument, which focused on the fact

6 that injury is a substantive element of all of their claims – and not on Article III standing.  (*See*

7 Def.'s Mot. at 8-10.)  Establishing injury for purposes of Article III is less onerous than

8 establishing injury under plaintiffs' substantive causes of action, as the Ninth Circuit has

9 recognized.  *See Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (although

10 plaintiffs satisfied standing requirement under Article III, they did not "establishe[] a cognizable

11 injury for purposes of their negligence claim").

12      But whether plaintiffs' lack of injury is judged through the lens of Article III or under the

13 substantive elements of plaintiffs' claims, their arguments still fail.[2]  Plaintiffs contend that they

14 have adequately alleged injury notwithstanding the substantial authority cited in Nissan's opening

15 brief because Nissan's cases involved "fundamentally safe products" that posed a risk "of possible

16 malfunction under rare circumstances," whereas plaintiffs have alleged a defect "that guarantees a

17 malfunction every time the product" is "off and in gear."  (Pls.' Opp'n at 5.)  This argument is

---

*(cont'd from previous page)*
vehicle while it was in gear, and it began moving."  (Pls.' Opp'n at 5 n.6.)  But there is no such allegation in the Complaint, and plaintiffs cannot remedy that problem *ex post facto* by including such information in their opposition to Nissan's motion to dismiss.  *See Centex Homes v. Fin. Pac. Ins. Co.*, No. CV F 07-00567 AWI SMS, 2009 U.S. Dist. LEXIS 117029, at *14 (E.D. Cal. Dec. 14, 2009) (plaintiff "may not amend his complaint through arguments in his brief") (internal quotation marks and citation omitted).  In any event, plaintiffs do not even claim in their brief that Mr. Wakefield suffered any injury from this alleged event.

[2]   *See Webb v. Carter's Inc.*, 272 F.R.D. 489, 498 (C.D. Cal. 2011) (finding that majority of class members lacked Article III standing because they "suffered no adverse effects" from the allegedly misrepresented garments); *accord In re McNeil Consumer Healthcare*, MDL No. 2190, 2011 U.S. Dist. LEXIS 76800, at *47 (E.D. Pa. July 14, 2011) ("[t]he mere purchase of" an allegedly misrepresented product "cannot be sufficient to establish injury-in-fact"); *Whitson v. Bumbo*, No. C 07-5597, 2009 U.S. Dist. LEXIS 32282, at *23-24 (N.D. Cal. Apr. 15, 2009) (plaintiffs lacked both Article III standing and a cognizable injury under their UCL and implied-warranty claims because they did not allege that the allegedly defective baby seats malfunctioned or caused them injury).

precisely backwards.  In the cases cited by Nissan, the plaintiffs faced a possibility of future injury *that would occur through normal operation of the product*.  For example, in *American Suzuki Motor Corp. v. Superior Court of L.A. County*, 37 Cal. App. 4th 1291, 1293-94 (1995) (Def.'s Mot. at 8), the plaintiffs alleged that their vehicles were defective in that they had a tendency to roll "when driven under reasonably anticipated and foreseeable driving conditions."  Similarly, in *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 992 n.18 (N.D. Cal. 2010), *aff'd*, 462 F. App'x 660 (9th Cir. 2011) (Def.'s Mot. at 8), the defect at issue resulted in an inability to shut off a vehicle's engine through no fault of the driver.  As these cases explain, allowing the claims to proceed where the plaintiffs had not actually experienced any problems with their vehicles – even if such accidents were possible during normal product use – "would, in effect, contemplate indemnity for a potential injury that never, in fact, materialized."  *Am. Suzuki*, 37 Cal. App. 4th at 1299; *see also Smith*, 749 F. Supp. 2d at 992 n.18.  Here, by contrast, it is undisputed that as long as plaintiffs follow the basic rules of motor vehicle operation by putting their vehicles in park and turning them off before exiting, they will ***never*** experience the alleged defect or suffer any injury.[3]

For this reason alone, all of plaintiffs' claims fail as a matter of law.

## II. PLAINTIFFS' CLAIMS FAIL FOR A HOST OF OTHER REASONS AS WELL.

### A. Plaintiffs Cannot State A Claim For Breach Of Implied Warranty Under The Song-Beverly Act (Count III).

As set forth in Nissan's opening brief, plaintiffs' implied-warranty claims also fail because they do not properly allege: (1) that their vehicles are unmerchantable; (2) notice; and (3) privity.  None of plaintiffs' arguments in response has merit.

*First*, plaintiffs argue that they have adequately alleged that their vehicles are unmerchantable because they claim that the vehicles are prone to rollaway accidents.  (*See* Pls.' Opp'n at 11.)  But the primary case plaintiffs cite for this proposition – *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007) – is inapposite.  There, the court held that a "vehicle that

---

[3]    In fact, California law explicitly requires drivers to put their vehicles in park and set their parking brakes before leaving their vehicles on a public street.  *See* Cal. Veh. Code § 22515(a); *see also id.* § 360.  Accordingly, in many circumstances, a driver would have to break the law in order to create the type of rollaway accident that plaintiffs claim is inevitable from use of their vehicles.

3

**Def.'s Reply ISO Mot. To Dismiss Or To Strike Nationwide Class Allegations**          Case No: CV09-3660

smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." *Id.* at 27.  Here, by contrast, plaintiffs merely allege that their cars have the ***potential*** to roll away if plaintiffs fail to put them in park before turning them off and exiting.  If the risk of malfunction does not give rise to a claim of unmerchantability (*see* Def.'s Mot. at 11-12 (collecting cases)), then certainly, the risk of injury based on improper product operation cannot do so either.

   ***Second***, plaintiffs are also wrong in arguing that the Song-Beverly Act excuses them from providing the defendant with notice of an alleged breach of warranty within the warranty period. (*See* Pls.' Opp'n at 12.)[4]  As explained in Nissan's opening brief, "[t]he Song-Beverly Act 'places an affirmative duty on consumers to deliver . . . a malfunctioning product to the manufacturer for repair' within the warranty period." (Def.'s Mot. at 12-13 (citation omitted).)  Plaintiffs ignore Nissan's cases on this point and instead offer wrongly decided or inapposite caselaw.  For example, plaintiffs cite *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1307-12 (2009), for the proposition that a plaintiff asserting implied-warranty claims need not identify the defect before the expiration of the warranty.  (*See* Pls.' Opp'n at 12.)  But *Mexia* has been criticized and rejected. As one court put it, *Mexia* is "'contrary to established California case law'" on this issue. *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1022 (S.D. Cal. 2011) (noting that *Mexia*'s "holding renders meaningless any durational limits on implied warranties") (citation omitted). Thus, notwithstanding *Mexia*, courts applying California law continue to require timely notice of an alleged breach to state a claim.  *See, e.g.*, *In re Sony Grand WEGA KDF-E, A10/A20 Series Rear Projection HDTV Telev. Litig.*, 758 F. Supp. 2d 1077, 1097 (S.D. Cal. 2010).[5]

---

[4]  Plaintiffs assert in a footnote that notice is not required "where consumers sue a manufacturer with whom they have not directly dealt."  (Pls.' Opp'n at 12 n.9 (citing *Keegan v. Am. Honda Motor Corp.*, 838 F. Supp. 2d 929, 950 (C.D. Cal. 2012)).)  But the exception addressed in *Keegan* concerned ***express warranty*** claims, not ***implied warranty*** claims, and is therefore not applicable here.  *See Keegan*, 838 F. Supp. 2d at 950.

[5]  *Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908, 922-24 (C.D. Cal. 2010) (Pls.' Opp'n at 12), is likewise inapposite because that case did not even address the issue of notice; rather, it simply held that the plaintiff's warranty claim was time-barred under California's statute of limitations, an argument not pressed by Nissan here.  And *Metowski v. Traid Corp.* (Pls.' Opp'n at 12), merely confirms that notice during the warranty period is required, holding that "the statutory demand for [timely] notice applies even" where it would "be a meaningless ritual."  28

*(cont'd)*

*Third*, plaintiffs' contention that the privity requirement is relaxed where "a manufacturer [] extends a written warranty to a consumer" (Pls.' Opp'n at 12) should also be rejected. Once again, plaintiffs' primary authority for this proposition – *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 229 (2006) (Pls.' Opp'n at 12) – has been heavily criticized as "[in]consistent with clear California precedent that privity remains a requirement in implied warranty claims," *In re Sony PS3 Other OS Litig.*, No. C 10-1811 RS, 2011 U.S. Dist. LEXIS 16024, at *13 (N.D. Cal. Feb. 17, 2011); *accord Postier v. Louisiana-Pac. Corp.*, No. C-09-3290 JCS, 2009 U.S. Dist. LEXIS 95060, at *17 (N.D. Cal. Oct. 13, 2009) ("*Atkinson* appears to be an anomaly in that it contravenes the well-established principle under California law that privity is required in cases alleging breach of an implied warranty."). In any event, the *Atkinson* court's observation regarding privity was based in large part on a finding "that the plaintiff *relied* on th[e] [written] warranty when he instructed his contractor to use the defendant's roofing shingles." *Zabit v. Ferretti Group USA*, No. C 06-01252 JSW, 2006 U.S. Dist. LEXIS 79039, at *16 (N.D. Cal. Oct. 23, 2006) (emphasis added) (distinguishing *Atkinson* on this ground). No such allegation is made here. (*See generally* Compl.)

Nor can plaintiffs be excused from pleading privity based on their assertion that they were "intended third party beneficiaries" or that the vehicles at issue were "dangerous instrumentalities." (Pls.' Opp'n at 12.) Neither of these allegations is made in their Complaint, and these exceptions to the privity requirement are in any event inapplicable. In support of their third-party-beneficiary argument, plaintiffs rely exclusively on *Cartwright v. Viking Industries, Inc.*, No. 07-CV-2159, 2009 U.S. Dist. LEXIS 83286 (E.D. Cal. Sept. 14, 2009) (Pls.' Opp'n at 12). But *Cartwright*'s conclusion was based on a "reading of the warranty at issue," 2009 U.S. Dist. LEXIS 83286, at *9, and no such reading of any warranty is offered by plaintiffs here. Indeed, they do not identify any warranty, contending only that they "can enforce implied warranties that attach between Nissan and its dealers" without bothering to prove than any such warranties even exist. (Pls.' Opp'n at 12.) This lack of specificity precludes reliance on the third-party-beneficiary exception. *See, e.g.*,

---

*(cont'd from previous page)*
Cal. App. 3d 332, 339 (1972).

5

**Def.'s Reply ISO Mot. To Dismiss Or To Strike Nationwide Class Allegations**          Case No: CV09-3660

*Pershing Pac. W., LLC v. Ferretti Group, USA, Inc.*, No. 10-cv-1345, 2013 U.S. Dist. LEXIS 9853, at *21-23 (S.D. Cal. Jan. 24, 2013) (acknowledging the third-party-beneficiary exception but declining to analyze it because the plaintiff failed to identify any "allegations in the [complaint] that show it falls under" that or any other privity exception).  Moreover, court after court has found no privity in suits brought by automobile purchasers and lessees who bought or leased their cars from independent dealerships.  *See, e.g.*, *Yu-Santos v. Ford Motor Co.*, No. 1:06-cv-1773, 2009 U.S. Dist. LEXIS 41001, at *61 (E.D. Cal. May 13, 2009); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (affirming dismissal of warranty claims for lack of privity; plaintiff bought his car from an "independent Dodge dealership" and an "end consumer . . . who buys from a retailer is not in privity with a manufacturer").  Plaintiffs' dangerous-instrumentalities argument would likewise fail because this exception only protects "***employees*** who are injured while using equipment purchased by their employers."  *In re Air Crash Disaster at Sioux City Iowa on July 19, 1989*, 760 F. Supp. 1283, 1287 (N.D. Ill. 1991) (emphasis added).

For all of these reasons, plaintiffs' breach-of-implied-warranty claim should be dismissed.[6]

### B. Plaintiffs Cannot State Claims Under The UCL, CLRA Or For Fraudulent Concealment (Counts II, IV-V).

As set forth in Nissan's opening brief, plaintiffs' claims under the UCL, CLRA and for fraudulent concealment also fail because plaintiffs have not adequately alleged that Nissan concealed anything from them, and because Nissan did not have a duty to disclose.  (*See* Def.'s Mot. at 14-18.)  Plaintiffs' arguments in response lack merit.[7]

---

[6] Because plaintiffs' warranty claims under California law are not viable, their claims under the Magnuson-Moss Warranty Act fail too.  (*See* Def.'s Mot. at 14.)

[7] Plaintiffs also suggest that Nissan is not challenging their claims insofar as they are premised on the "unlawful" and "unfair" prongs of the UCL.  (*See* Pls.' Opp'n at 10 n.8.)  Not so.  Nissan clearly argued in its motion that ***all*** of plaintiffs' claims should be dismissed for lack of injury.  (*See* Def.'s Mot. at 8.)  Further, plaintiffs' claim for "unfair practices" under the UCL is based on an alleged failure to disclose and therefore fails for the additional reasons set forth above.  (*See* Am. Compl. ¶ 90 ("Nissan committed unfair business acts and practices . . . when it failed to disclose and concealed the existence and nature of the Defect.").)  In addition, plaintiffs' claim that Nissan committed an "unlawful" practice under the UCL by violating the MMWA, the Song-Beverly Act and the CLRA (*see* Am. Compl. ¶ 89) fails because these predicate violations are not viable, as explained in Nissan's opening brief and in this reply, *see Garbutt v. Adamarc Fin. Co.*,

*(cont'd)*

*First*, plaintiffs argue that Nissan can be held liable for failing to disclose, notwithstanding its disclosures to NHTSA, because "customers are neither expected to know all facts published in the Federal Register nor read up on sellers' communications with regulatory agencies." (Pls.' Opp'n at 8.) But as Nissan explained in its opening brief, the law is clear that an omissions-based claim will not lie where – as here – the "information" allegedly concealed "was a matter of public record readily available through" a federal government agency. *Go for It, Inc. v. Aircraft Sales Corp.*, No. 02 C 6158, 2003 U.S. Dist. LEXIS 11043, at *8 (N.D. Ill. June 25, 2003) (dismissing fraudulent-concealment claim because "information regarding the Aircraft's damage was a matter of public record readily available through the Federal Aviation Administration").

*Second*, plaintiffs argue that Nissan had a duty to disclose because: (1) their claims involve a supposed safety hazard; (2) they allege partial disclosure; (3) there was active concealment; and (4) Nissan knew material facts about which plaintiffs were ignorant. (*See* Pls.' Opp'n at 8-9.) Each of these arguments should be rejected.

"*Safety Hazard*." Plaintiffs contend that Nissan had a duty to disclose because the alleged "defects pose a safety hazard." (*Id.* at 8.) As set forth above, however, the vehicles pose no hazard whatsoever if plaintiffs follow the directions in their owner manuals – and basic rules for operating a motor vehicle. That is a far cry from failing to disclose a faulty speedometer, which "easily would lead to traveling at unsafe speeds" despite the driver's diligence. *See Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) (Pls.' Opp'n at 8).

"*Speak[ing] The Whole Truth*." Plaintiffs next contend that Nissan owed them a duty to disclose because "'[e]ven where no duty would otherwise exist, where one does speak, he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated.'" (Pls.' Opp'n at 8 (quoting *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292 (2004)).) But plaintiffs never identify in their Complaint or even in their brief what Nissan said that was only a partial truth. *See Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.

---

*(cont'd from previous page)*
No. C10-05338 HRL, 2011 U.S. Dist. LEXIS 75431, at *13 (N.D. Cal. July 13, 2011) ("[P]laintiff has not . . . sufficiently pled an underlying claim as to the purported unlawful business practices. Her UCL claim therefore also fails and is dismissed.").

7

**Def.'s Reply ISO Mot. To Dismiss Or To Strike Nationwide Class Allegations**    Case No: CV09-3660

1  App. 4th 115, 132 n.6 (2007) (distinguishing *Vega* on the ground that plaintiff "did not similarly
2  allege that respondents had made a partial disclosure that omitted material facts").  Thus, this
3  argument fails too.

4     "***Active[] Conceal[ment]***."  Plaintiffs also argue that Nissan had a duty to disclose because
5  it "'actively conceal[ed] a material fact from'" them.  (Pls.' Opp'n at 9 (quoting *Sanders v. Apple,*
6  *Inc.*, 672 F. Supp. 2d 978, 985-86 (N.D. Cal. 2009)).)  But *Sanders* did not address whether the
7  defendant had engaged in active concealment sufficient to give rise to a duty to disclose.  672 F.
8  Supp. 2d at 985-86.  Rather, as explained in Nissan's opening brief, the court in that case rejected a
9  fraudulent-concealment claim for lack of duty because the plaintiff's allegations regarding the
10 defendant's supposed "'exclusive knowledge'" of the defect lacked "'specific substantiating
11 facts.'"  (Def.'s Mot. at 16 (quoting *Sanders*, 672 F. Supp. 2d at 985-86).)  The same is true here.
12 The sole allegation made by plaintiffs with regard to Nissan's alleged active concealment – that it
13 "actively concealed from [p]laintiffs . . . the fact that the Subject Vehicles contained the [d]efect
14 and posed a serious risk of Rollaway Danger" (Am. Compl. ¶ 70.b) – is not supported by any facts,
15 much less "specific substantiating" ones.  Thus, *Sanders* fully supports Nissan's argument that it
16 was under no duty to disclose to plaintiffs.

17    "***Knowledge" Of "Material Facts***."  Plaintiffs finally argue in favor of a duty to disclose
18 based on Nissan's alleged "knowledge" of "material facts" and plaintiffs' "ignorance."  (Pls.'
19 Opp'n at 9.)  In support of this argument, plaintiffs rely on *Tietsworth v. Sears, Roebuck & Co.*,
20 720 F. Supp. 2d 1123, 1133-34 (N.D. Cal. 2010) (Pls.' Opp'n at 9).  But in *Tietsworth*, the court
21 found a duty to disclose because the plaintiffs chronicled specific and numerous examples of
22 customer complaints that gave Sears knowledge of the alleged defect and further claimed that they
23 contacted Sears only to be told that the "Machines were not defective."  720 F. Supp. 2d at 1133-
24 34.  Notably, the *Tietsworth* court emphasized that a "plaintiff cannot establish a duty by pleading,
25 in a purely ***conclusory*** fashion, that a defendant was in a superior position to know the truth about
26 a product."  *Id.* at 1134 (emphasis added).  Here, plaintiffs offer no allegation of consumer
27 complaints or any other facts to support the claim that Nissan had "superior knowledge."  Thus,
28 under the logic of their own cited case, this argument fails.

8

**Def.'s Reply ISO Mot. To Dismiss Or To Strike Nationwide Class Allegations**          Case No: CV09-3660

1  For all of these reasons, plaintiffs' claim that they have adequately pled a duty to disclose on the part of Nissan is meritless and should therefore be rejected.[8]

### III. AT THE VERY LEAST, THE COURT SHOULD STRIKE PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS.

Finally, plaintiffs fail to rebut Nissan's argument that their nationwide class allegations fall woefully short of the predominance requirement of Rule 23 and should therefore be stricken. Plaintiffs' sole contention – that striking the class allegations would be "premature" (Pls.' Opp'n at 13) – misunderstands the nature and purpose of motions to strike.

As Judge Fogel observed in rejecting the precise argument advanced by plaintiffs here, "it is procedurally proper to strike futile class claims at the outset of litigation to preserve time and resources." *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2009 U.S. Dist. LEXIS 112971, at *45 (N.D. Cal. Dec. 4, 2009); *see also Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (fact that a "motion to strike came before the plaintiff[] had filed a motion to certify the class does not by itself" render the decision "premature"). Other courts in this Circuit are in accord. *See, e.g.*, *Sanders*, 672 F. Supp. 2d at 990-91 (rejecting plaintiff's argument that motion to strike class allegations was premature; where the issues are "plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim," the court should strike class allegations "to avoid the expenditure of time and money that must arise from litigating spurious issues") (internal quotation marks and citations omitted).

---

[8] Plaintiffs request that the Court grant them leave to replead in the event it dismisses their claims. (*See* Pls.' Opp'n at 13.) No such leave should be granted. This is the second time that plaintiffs have failed to allege valid claims, and they should not be permitted endless bites at the apple. *See Bhasin v. U.S. Dep't of Homeland Sec.*, 413 F. App'x 983, 986 (9th Cir. 2011) (the "district court correctly dismissed [plaintiff's] complaint with prejudice" because it "had already given [plaintiff] one chance to amend his complaint, and we agree that, under the circumstances presented here, further amendments would be futile"); *see also In re Smith*, No. 5:11-cv-04548 EJD, 2012 U.S. Dist. LEXIS 117423, at *12-13 (N.D. Cal. Aug. 18, 2012) (upholding bankruptcy judge's dismissal of complaint with prejudice where plaintiff "had already been afforded the chance to amend"). This is especially true because further amendment cannot cure the fundamental deficiencies in plaintiffs' suit – most notably, that they have not been injured as a result of the supposed defect.

9
**Def.'s Reply ISO Mot. To Dismiss Or To Strike Nationwide Class Allegations**                    Case No: CV09-3660

Plaintiffs rely on this Court's decision in *In re Wal-Mart Stores, Inc. Wage & Hour Litigation*, 505 F. Supp. 2d 609 (N.D. Cal. 2007) (Armstrong, J.) (Pls.' Opp'n at 13), for the contrary proposition.  But *Wal-Mart* involved a motion to strike that raised factual issues; thus, the Court found that "plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery of, for example, the electronic employment lists that they claim will identify the class members."  505 F. Supp. 2d at 616.  Here, by contrast, no amount of discovery can solve the fundamental problem posed by plaintiffs' nationwide class allegations: they implicate the laws of fifty states and the District of Columbia, which vary in many material respects, as set forth in Nissan's opening brief.  (*See* Def.'s Mot. at 20-23.)  While plaintiffs contend that they have not "presented [a] choice-of-law analysis typically included in a class certification motion" (Pls.' Opp'n at 14), they ignore the fact that Nissan's opening brief detailed the myriad variations in state laws governing fraudulent concealment and implied warranty.  (*See* Def.'s Mot. at 20-23.)  Plaintiffs do not even attempt to dispute that these variations exist, effectively conceding Nissan's argument.  Accordingly, it is not possible to resolve plaintiffs' claims on a nationwide class basis, and the Court should strike their class allegations.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Nissan's opening brief, all of plaintiffs' claims should be dismissed.  If plaintiffs' claims are not dismissed, plaintiffs' nationwide class allegations should be stricken.

Dated:  February 26, 2013                                Respectfully submitted,

JOHN H. BEISNER (Admitted *Pro Hac Vice*)
JESSICA D. MILLER (Admitted *Pro Hac Vice*)

By :         /s/ John H. Beisner
                  John H. Beisner

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue NW,
Washington, DC 20005
Telephone: (202) 371-7000,
Facsimile: (202) 393-5760
Email: John.Beisner@skadden.com

JOSHUA M. TEMPLET (Bar No. 267098)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Palo Alto, CA 94301
Telephone:  (650) 470-4500
Facsimile:  (650) 470-4570

COUNSEL FOR DEFENDANT NISSAN NORTH AMERICA, INC.

## ATTESTATION

I, Joshua M. Templet, am the ECF User whose identification and password are being used to file this **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF OR TO STRIKE PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS** in this matter.  In compliance with General Order 45.X.B, I hereby attest that each of the counsel executing the Stipulation has concurred in this filing.

Dated:  February 26, 2013

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:     /s/ Joshua M. Templet
           Joshua M. Templet

COUNSEL FOR DEFENDANT NISSAN NORTH AMERICA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

     /s/ Joshua M. Templet
       Joshua M. Templet
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA   94301
Telephone:  (650) 470-4500
Facsimile:   (650) 470-4570
Email:  joshua.templet@skadden.com

11

**Def.'s Reply ISO Mot. To Dismiss Or To Strike Nationwide Class Allegations**          **Case No: CV09-3660**