UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HELEN TARAGAN, MATTHEW WAKEFIELD, and MARITES ASIDO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NISSAN NORTH AMERICA, INC., a California corporation; and NISSAN MOTOR COMPANY, LTD., a Japanese company,<br><br>Defendants. | Case No: C 09-3660 SBA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Dkt. 75 |

Plaintiffs Helen Taragan, Matthew Wakefield and Marites Asido bring the instant, putative class action on behalf of themselves and all other owners and lessees of Nissan and Infiniti vehicles equipped with an electronic "Intelligent Key" system. The Intelligent Key system allows the vehicle operator to start the vehicle's engine through the wireless transmission of an electronic code in lieu of a physical key. According to Plaintiffs, this system poses a safety hazard because it is possible for the vehicle to roll away after the driver turns off the engine if the automatic transmission is not placed in "park." The First Amended Complaint ("FAC"), the operative pleading before the Court, names Nissan North America, Inc. ("Nissan"), and Nissan Motor Company, Ltd. ("NMC"), as

Defendants. The Court has jurisdiction pursuant to the Class Action Fairness Act. 28 U.S.C. § 1332(d).

The parties are presently before the Court on Defendant Nissan's Motion to Dismiss Plaintiffs' First Amended Complaint for Damages and Equitable Relief or to Strike Plaintiffs' Nationwide Class Action Allegations. Dkt. 76. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion to dismiss, with leave to amend. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND[1]

### A. FACTUAL SUMMARY

In 1990, the National Highway Traffic Safety Administration ("NHTSA") began requiring that vehicles sold in the United States with automatic transmissions come equipped with a Key Ignition Transmission Shift Interlock ("KITSI"). A KITSI prevents a driver from removing the key from the ignition unless the vehicle's automatic transmission is in "park." When a transmission is in "park," a mechanism is engaged that prevents the vehicle from rolling away. The KITSI requirement, which is set forth in the NHTSA's Federal Motor Vehicle Safety Standard 114 ("FMVSS 114"), is intended to prevent such accidents, since a driver cannot remove the key from the vehicle without first ensuring that the vehicle's automatic transmission has been shifted into "park."

With the advent of electronic technology, a number of vehicle manufacturers, including Nissan, began offering electronic "smart" keys in place of conventional, physical keys. A smart key consists of an electronic chip or transponder contained within a small housing often referred to as a "key fob." Unlike a conventional key, which must be inserted in the ignition and then turned to start the engine, a smart key transmits an

---

[1] Unless otherwise noted, the background facts presented in this summary are taken from the FAC and the Court's ruling on Nissan's first motion to dismiss. See Dkt. 47; Taragan v. Nissan North Am., No. C 09-3660 SBA, 2010 WL 3491000, *1-*2 (N.D. Cal., Sept. 2, 2010).

electronic code to "unlock" the car's computer which, in turn, allows the engine to be started (or turned off) by pressing a "Start/Stop" button. Although no physical movement (i.e., turning) of a smart key is necessary, some vehicle manufacturers utilizing smart key technology provide a "slot" or "holster" on the dashboard into which to place the key fob. In 2002, Nissan began selling vehicles in the United States (under the Nissan and Infiniti brands) equipped with a smart key system known as the "Infiniti Intelligent Key" or "Intelligent Key" (collectively "Intelligent Key").

To address the increased use of smart keys, the NHTSA amended FMVSS 114, effective September 1, 2007. Among the amendments to FMVSS 114 is a provision entitled "Rollaway prevention in vehicles equipped with transmissions with a 'park' position," which provides, in relevant part, that "the starting system . . . must prevent key removal . . . unless the transmission or gear selection control is locked in 'park' or becomes locked in 'park' as a direct result of key removal." 49 C.F.R. § 571.114 (S5.2.1). The regulation specifically defines "key" as "a physical device or an electronic code which, when inserted into the starting system (by physical or electronic means), enables the vehicle operator to activate the engine or motor." Id. § 571.114 (S4).

### B. PROCEDURAL HISTORY

#### 1. Original Complaint

On August 10, 2009, Plaintiff Taragan along with Frances and Clarence Taylor filed the instant action against Defendants, alleging four class claims for: (1) breach of express warranty; (2) breach of implied warranty; (3) violations of State Consumer Protection Statutes; and (4) unjust enrichment (collectively "Class Claims"). The Class Claims were predicated on the theory that the ability to remove the key fob from a vehicle equipped with the Intelligent Key system, even if the transmission is not in "park," necessarily violates FMVSS 114. In addition to the Class Claims, the Complaint alleged two individual state law claims brought solely on behalf of the Taylors.

Nissan filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which the Court granted on September 2, 2010. Dkt. 47. The Court rejected Plaintiffs'

contention that the electronic code, together with the key fob, constitutes the "key" for purposes of FMVSS 114. Rather, the Court found that for purposes of FMVSS 114, the term "key" refers to the electronic code that is transmitted by the transponder, and that the key fob housing the transponder is not the actual key. Accordingly, the Court concluded that "whether or not the key fob can be removed from the vehicle when the transmission is not in the 'park' position is inapposite for purposes of FMVSS 114." Taragan, 2010 WL 3491000, *5. On appeal, the Ninth Circuit Court of Appeals affirmed the Court's conclusion that the Intelligent Key system does not violate FMVSS 114. Id., 2012 WL 3133261 (9th Cir. Aug. 2, 2012). However, the court found that Plaintiffs should have been granted leave to amend to allege claims *other than* a violation of FMVSS 114. Id.

## 2. First Amended Complaint

On October 29, 2012, Plaintiff Taragan, now joined by new plaintiffs Matthew Wakefield and Marites Asido, filed their FAC.[2] The FAC alleges five state law causes of action for: (1) violation of the Magnuson-Moss Warranty Act, ("Magnuson-Moss Act"), 15 U.S.C. §§ 2301 et seq.; (2) fraudulent concealment; (3) violation of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code §§ 1790 et seq.; (4) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; and (5) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.

Like the prior pleadings, the gravamen of the FAC is that Nissan's vehicles are unsafe because it is possible for the vehicle to roll away when the engine is shut off and not in park. Id. ¶ 4. The pleadings state:

> The Subject Vehicles are unsafe, because Nissan's Electronic Key system creates a serious risk of rollaway accidents ("Rollaway Danger"). Rollaway Danger exists when a vehicle with automatic transmission can be stopped, and the engine can be turned off with the transmission in a non-park gear (e.g., drive, reverse, etc.). At that point, the vehicle is free to – and sometimes does – move (i.e., "roll away") (hereinafter, the

---

[2] The Taylors apparently settled their individual claims with Defendants and are no longer identified as parties to the action.

> "Defect"). By contrast, a vehicle in park cannot roll away, because when it is in park, the vehicle's parking pawl engages in the annulus gear, preventing the wheels from rotating, as long as the vehicle is not on an extremely steep incline. Rollaway accidents can cause property damage, personal injury, and even death.

FAC ¶ 4. None of the Plaintiffs, however, is alleged to have actually experienced or been injured by a rollaway incident.[3]

Nissan now moves to dismiss all of the claims alleged in the FAC, or alternatively, to strike Plaintiffs' nationwide class allegations. Dkt. 74, 75.[4] Plaintiffs oppose the motion. Dkt. 85. The matter has been fully briefed and is ripe for adjudication.

## II. <u>LEGAL STANDARD</u>

Pleadings in federal court actions are governed by Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be dismissed under Rule 12(b)(6) for failure to state a cognizable legal theory or insufficient facts to support a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007). The court is to "accept all factual allegations in the complaint as true and construe

---

[3] In the original complaint, Plaintiffs alleged that Janet Taylor, who no longer is a party to the action, "alleged that her 2009 Nissan Murano rolled away in such a fashion, crushing her foot." FAC ¶ 4.

[4] The Court's Standing Orders provides that motions, other than those for summary judgment, are limited to fifteen pages in length. Without prior leave of Court, Nissan filed a twenty-three page motion to dismiss. In the interests of expediting the resolution of this matter, the Court will consider Nissan's oversized motion. Future transgressions of the Court's Standing Orders, or any other applicable Federal Rule of Civil Procedure or Local Rule, may result in the imposition of sanctions.

the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint must afford the defendants with "fair notice" of the claims against them, and the grounds upon which the claims are based. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Where a complaint or claim is dismissed, "[l]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009).

## III. DISCUSSION

### A. BREACH OF WARRANTY CLAIMS

Plaintiffs allege two claims for breach of implied warranty; one under the federal Magnuson-Moss Act (first cause of action) and the other under California's Song-Beverly Act (third cause of action). Since the Magnuson-Moss Act claim is dependent on the Song-Beverly Act claim, the Court discusses the Song-Beverly Act claim first.

#### 1. Song-Beverly Act

The Song-Beverly Act provides that "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. The implied warranty of merchantability "provides for a minimum level of quality." American Suzuki Motor Corp. v. Superior Court, 37 Cal.App.4th 1291, 1295-1296 (1995). "[A] breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use." Mocek v. Alfa Leisure, Inc., 114 Cal.App.4th 402, 406 (2003).

### a) *Merchantability*

"In the case of automobiles, the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." American Suzuki, 37 Cal.App.4th at 1296. A vehicle fit for the ordinary purpose of providing transportation is one that can do so "in safe condition and substantially free of defects." Isip v. Mercedes-Benz USA, LLC, 155 Cal.App.4th 19, 24, 27 (2007); see also Carlson v. General Motors Corp., 883 F.2d 287, 297 (4th Cir. 1989) ("Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects. Thus, where a car can provide safe, reliable transportation, it is generally considered merchantable").

Here, the FAC alleges that Nissan's vehicles are not merchantable because there is a "risk" that vehicles equipped with the Intelligent Key system will roll away if the operator fails to place the transmission in park after shutting off the engine. FAC ¶ 81. In asserting a warranty claim, however, "[i]t is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product *actually exhibited the alleged defect*." O'Neil v. Simplicity, Inc., 574 F.3d 501, 503 (8th Cir. 2009) (affirming dismissal of breach of implied warranty claim and related products liability claims where plaintiffs had not personally experienced the alleged

defect) (emphasis added).  Here, none of the Plaintiffs has actually experienced a rollaway incident.  Thus, Plaintiffs' claim of defect, as pled, is theoretical.[5]

In their opposition, Plaintiffs do not dispute that the FAC fails to allege that any of them personally experienced a rollaway incident.  Instead, they assert that Plaintiff Wakefield is "willing to assert that he turned off his covered Nissan vehicle while it was in gear, and it began moving."  See Opp'n at 5 n.6.  However, Plaintiffs do not allege that Wakefield suffered any resulting injury.  In any event, the Court does not consider new facts alleged in an opposition to a motion to dismiss.  See Schneider v. Calif. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'new' allegations contained in the . . . opposition . . , however, are irrelevant for Rule 12(b)(6) purposes").  Plaintiffs also make a point of noting that the FAC alleges that Janet Taylor's foot was run over by her Nissan Murano after she exited her car apparently without placing the transmission in park or using the vehicle's parking brake.  See Opp'n at 5 n.6 (citing FAC ¶ 26).  However, Plaintiffs fail to cite any authority for the proposition that the Court may appropriately consider the alleged personal experiences of a non-party in determining whether a pleading has stated a plausible claim for breach of implied warranty.

### b)   *Injury*

Even if Plaintiffs had satisfactorily alleged that their vehicles were not merchantable, their implied warranty claim fails due to their failure to allege injury.  The FAC alleges that Plaintiffs and the Class "have been placed in danger, since they are at undue risk of

---

[5] Moreover, the alleged rollaway risk is particularly attenuated given that it only manifests, if at all, if the vehicle operator fails to exercise common sense and prudence by placing the transmission in park and applying the parking brake when leaving the vehicle. C.f. Horibin v. Providence & Worcester R. Co., 352 F. Supp. 2d 116, 121 n.7 (D. Mass. 2005) (noting that placing the transmission in park and setting the parking brake are normal steps in shutting down a vehicle).  Indeed, California law mandates the use of the parking brake when leaving the vehicle unattended.  See Cal. Veh. Code §§ 22515(a) (requiring drivers to set their parking brakes before leaving their vehicles on a "highway," which under Vehicle Code § 360, includes any public road or street); Hosking v. San Pedro Marine, Inc., 98 Cal.App.3d 98, 102 (1979) ("The harm which Vehicle Code section 22515 is designed to prevent is that resulting from runaway vehicles"); see also People v. Superior Court, 3 Cal.3d 807, 823 (1970) ("when a driver stops his car in a situation in which he knows he may alight from the vehicle, it is both customary and prudent for him to apply his parking brake.").

physical injury, property damage, and corresponding emotional harm." FAC ¶ 31. These allegations are insufficient to establish the requisite injury necessary to state a viable claim for breach of implied warranty. See Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009) (upholding dismissal of claim that Apple iPod earphones lacked controls to prevent unsafe volume levels where plaintiffs failed to allege that the absence of such controls "caused any injury to any user."); American Suzuki, 155 Cal.App.4th at 1299 (noting that a breach of implied warranty action cannot be used to compensate a plaintiff "for a potential injury that never, in fact, materialized . . . for a product 'defect' that was never made manifest . . . ."); Cohen v. Guidant Corp., No. CV-05-8070-R, 2011 WL 637472, *2 (C.D. Cal., Feb. 15, 2011) ("A cause of action does not presently exist under any theory premised on the risk the valve may malfunction in the future.") (citing Khan v. Shiley Inc., 217 Cal.App.3d 848, 857 (1990)); c.f. Whitson v. Bumbo, No. C 07-5597 MHP, 2009 WL 1515597, *4-*6 (N.D. Cal. Apr. 16, 2009) (dismissing claims for breach of express and implied warranties based on allegedly defective car seat where plaintiff failed to allege that she was actually harmed by use of the product).

In sum, the Court concludes that Plaintiffs have failed to state a claim for breach of implied warranty under the Song-Beverly Act. Accordingly, Nissan's motion to dismiss said claim is GRANTED.[6]

### 2. Magnuson-Moss Act

Along with their implied warranty claim under the California Song-Beverly Act, Plaintiffs allege a cause of action under the federal Magnuson-Moss Act. "The substantive elements are the same under the Song-Beverly Act and Magnuson-Moss Act." Birdsong, 590 F.3d at 958 n.2. Since the Song-Beverly Act claim is subject to dismissal, so too is Plaintiffs' companion claim under the Magnuson-Moss Act. See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008) ("[the] disposition of the state

---

[6] In view of the Court's conclusion that Plaintiffs have failed to sufficiently allege that their vehicles were unmerchantable and that they sustained injury, the Court does not reach Nissan's arguments regarding notice and privity.

law warranty claims determines the disposition of the Magnuson-Moss Act claims."); Daugherty v. Am. Honda Motor Co., Inc., 144 Cal.App.4th 824, 833 (2006) ("the trial court correctly concluded that failure to state a warranty claim under state law necessarily constituted a failure to state a claim under Magnuson-Moss."). Therefore, Nissan's motion to dismiss to Plaintiffs' claim for violation of the Magnusson-Moss Act is GRANTED.

## B. FRAUDULENT CONCEALMENT

Plaintiffs' second cause of action for fraudulent concealment alleges that Nissan "knowingly concealed and failed to disclose to Plaintiffs and the Class Members" that their vehicles were subject to the alleged rollaway danger due to the Intelligent Key system. FAC ¶ 67. Under California law, the elements of fraudulent concealment are: "(1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage." Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1156 n.3 (9th Cir. 2000); Cal. Civ. Code § 1709.[7] "Because concealment is a cause of action for fraud, it must satisfy the particularity requirement of Rule 9(b)." Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

### 1. Concealment

As an initial matter, Nissan contends that there was no actionable concealment, as a matter of law, because the alleged rollaway defect was "fully disclosed to the NHTSA[.]" Mot. at 15. There are no allegations in the FAC to that effect. While the Court may consider documents properly subject to judicial notice in adjudicating a Rule 12(b)(6) motion to dismiss, Nissan fails to provide any specific citations to the record to support its

---

[7] Section 1709 provides that: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

- 10 -

1 contention that there was full disclosure to the NHTSA.[8] In the absence of such citations,
2 the Court finds Nissan's argument unpersuasive.

### 2. Duty to Disclose

Nissan next contends that Plaintiffs' claim for fraudulent concealment fails on the ground that Plaintiffs have failed to establish a duty to disclose. Mot. at 15-18. Under California law, the duty to disclose arises under the following four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." LiMandri v. Judkins, 52 Cal.App.4th 326, 336 (1997) (internal quotations and citation omitted). In the present case, the pleadings allege that Nissan's duty to disclose is based on the following contentions: (1) "Nissan is in a superior position to know the facts about the quality and nature of the Subject Vehicles and possesses superior knowledge of the Defect"; and (2) "Nissan actively concealed . . . the fact that the Subject Vehicles contained the Defect and posed a serious risk of Rollaway Danger." FAC ¶ 70.[9] Neither allegation satisfies Plaintiffs' burden of demonstrating a duty to disclose.

---

[8] Nissan attached several NHTSA letters to a declaration submitted in support of its motion to dismiss, see Beisner Decl. Exs. 1-4, Dkt. 77, but it is not apparent from those letters that there was full disclosure of the alleged defect as claimed by Nissan.

[9] In their opposition, Plaintiffs contend that Nissan's duty to disclose arises because the information allegedly concealed relates to a safety hazard. Opp'n at 8. The existence of a safety hazard does not, standing alone, give rise to a duty to disclose. Rather, the question of whether a safety issue is involved is germane to the issue of whether the fact that allegedly should have been disclosed was "material." See Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1141-143 (9th Cir. 2012) (noting that "for the omission to be material, the failure must still pose safety concerns.") (internal quotations marks and citation omitted); Smith v. Ford Motor Co., 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (noting that when "a plaintiff's claim is predicated on a manufacturer's failure to inform its customers of a product's likelihood of failing outside the warranty period, . . . for the omission to be material, the failure must pose 'safety concerns.'") (citation omitted).

### a) *Exclusive Knowledge*

To comport with Rule 9(b), a plaintiff alleging the existence of a duty to disclose must offer "specific substantiating facts" demonstrating that the defendant has "exclusive knowledge" about an alleged defect – not merely that the defendant has a superior understanding about the product's design generally. Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1134 (N.D. Cal. 2010) ("a plaintiff cannot establish a duty by pleading, in a purely conclusory fashion, that a defendant was in a superior position to know the truth about a product and actively concealed the defect."). For example, in Sanders v. Apple Inc., 672 F. Supp. 2d 978 (N.D. Cal. 2009), the plaintiff alleged that Apple fraudulently concealed performance defects in the video display used in its 20-inch Aluminum iMac computers. Attempting to establish Apple's duty to disclose, plaintiffs alleged that Apple "had exclusive knowledge of the material fact that its 20-inch Aluminum iMac was designed with an inferior display, and that Apple was in a superior position of knowledge with regard to its own technology." Id. at 986. The district court rejected this allegation as too conclusory, explaining that similar claims "could be made about any alleged design defect in any manufactured product"—which is "exactly the situation" the heightened pleading requirements of Rule 9(b) were designed to avoid. Id. (internal quotations and citation omitted).

As in Sanders, Plaintiffs' allegation that "Nissan is in a superior position to know the facts about the quality and nature of the Subject Vehicles," FAC ¶ 70a, is too conclusory to establish Nissan's duty to disclose. To satisfy Rule 9(b), Plaintiffs must allege specific facts that they claim should have alerted Nissan that the Intelligent Key system design was, in fact, defective. E.g., Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1146-47 (9th Cir. 2012) (finding allegations that the defendant manufacturer "became familiar with" and was "on notice" of the defect in the computer laptops at the time of manufacture and as early as 2002" were "merely conclusory," and that plaintiff needed to point to more concrete facts, such as "'pre-release testing data'" to which only the manufacturer had access to support

1  claim). Plaintiffs' present allegations of superior understanding fall far short of the
2  requisite particularity to establish a duty to disclose.

### b) *Actively Concealed*

4  Plaintiffs' allegations that Nissan "actively concealed" the "Defect" and regarding
5  the risk posed by the "Rollaway Danger" likewise fail for lack of particularity. An
6  allegation of active concealment must plead more than an omission; rather, a plaintiff must
7  assert affirmative acts of concealment; e.g., that the defendant "sought to suppress
8  information in the public domain or obscure the consumers' ability" to discover it. Gray v.
9  Toyota Motor Sales, U.S.A., No. CV 08-1690 PSG, 2012 WL 313703, at *10 (C.D. Cal.
10 Jan. 23, 2012). In Gray, the plaintiffs alleged that Toyota knew that the Environmental
11 Protection Agency's fuel-efficiency rating of the Prius automobile was "inaccurate and
12 could not be achieved in a 'real-world' setting," but failed to disclose that fact to
13 consumers. Id. at *1. Among other things, the plaintiffs alleged that Toyota had a duty to
14 disclose based on "active concealment," which they argued was supported by allegations
15 that Toyota's "advertising, publicity, marketing materials [and] other representations"
16 uniformly omitted information about the accuracy of the fuel-efficiency rating. Id. at *9
17 (citation omitted). The district court rejected these allegations as legally insufficient
18 because they stated only omissions, not active concealment. As the court explained, "if
19 mere nondisclosure constituted 'active concealment,' the duty requirement would be
20 subsumed and any material omission would be actionable. This is not the law." Id.

21 In the instant case, Plaintiffs attempt to predicate the existence of Nissan's duty on
22 the bare allegation that "Nissan actively concealed from Plaintiffs and the Class Members
23 the fact that the Subject Vehicles contained the Defect and posed a serious risk of Rollaway
24 Danger." FAC ¶ 70.b. However, there is a dearth of facts showing that Nissan "actively
25 concealed" anything from Plaintiffs. The pleadings fail to allege with the requisite
26 specificity how Nissan "sought to suppress information in the public domain or obscure
27 consumers' ability" to discover information regarding the alleged rollaway danger. See
28 Gray, 2012 WL 313703, *10. Instead, plaintiffs offer nothing more than "conclusory"

- 13 -

allegations that Nissan "'actively concealed' the defect." See Tietsworth, 720 F. Supp. 2d at 1134. Thus, the Court finds that Plaintiffs have failed to adequately allege the existence of a duty to disclose based on Nissan's alleged active concealment.

### 3. Other Alleged Sources of Nissan's Duty

Finally, Plaintiffs briefly argue that Nissan had a duty to disclose the alleged rollaway risk because it poses "a safety hazard." Opp'n at 8. The FAC does not allege this as a basis for Nissan's duty to disclose. FAC ¶ 70. In addition, the parties' cursory briefing of this issue is insufficient to assist the Court. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). The Court therefore declines to consider, at this juncture, whether Nissan had a duty to disclose the alleged defect on the grounds that it involved a safety concern.

### 4. Summary

The Court finds that Plaintiffs' allegations are insufficient to demonstrate Nissan's duty to disclose. Accordingly, Nissan's motion to dismiss is GRANTED as to Plaintiffs' claim for fraudulent concealment.

## C. UCL CLAIM

Plaintiffs' fourth cause of action alleges that Nissan violated the UCL, which makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." Birdsong, 590 F.3d at 959. The FAC summarily alleges violations under each prong of the UCL. FAC ¶ 88.

### 1. Unlawful

"[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 *et seq.* and subject to the distinct remedies provided thereunder." Farmers Ins. Exch. v. Super. Court, 2 Cal.4th 377, 383 (1992) (quotations and citations omitted); Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir.

1  2000).  Plaintiffs "borrow" their claims under the Song-Beverly Act, the Magnuson-Moss
2  Act and the CLRA as the basis for their claim under the unlawful prong of the UCL.  FAC
3  ¶ 89; Opp'n at 10.  Since all of those claims are being dismissed for failure to state a claim,
4  Plaintiffs' claim under the unlawful prong of the UCL fails as well.  See Ingels v.
5  Westwood One Broad. Servs., Inc., 129 Cal.App.4th 1050, 1060 (2005) ("A defendant
6  cannot be liable under § 17200 for committing unlawful business practices without having
7  violated another law.") (internal quotation marks omitted).

### 2. Unfair

A business practice that is not unlawful may nonetheless be actionable "even if not specifically proscribed by some other law."  Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1143 (2003).  California courts have yet to state definitively what constitutes an "unfair" practice under the UCL.  Jolley v. Chase Home Finance, LLC, 213 Cal.App.4th 872, 907 (2013).  Some courts apply the test from Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163 (1999), which requires that the plaintiff establish a public policy violation "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  Id. at 186-87.  Other courts apply the balancing test from South Bay Chevrolet v. General Motors Acceptance Corporation, 72 Cal.App.4th 861, 886-87 (1999), under which courts weigh the impact of the challenged practice on its alleged victim against the reasons, justifications and motives of the alleged wrongdoer.  Id. at 886-87.  The balancing test looks to whether the challenged practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  Id.

The applicable test need not be decided here since Plaintiffs fail to adequately plead a claim under either standard.  The FAC alleges that Nissan's alleged concealment of the rollaway "defect" and failure "to provide a permanent remedy to fix the [d]efect" constitute unfair business practices under the UCL.  FAC ¶¶ 90-91.  This claim fails under the Cel-Tech test, as Plaintiffs offer no factual allegations demonstrating that Nissan's alleged conduct "threatens to violate the letter, policy, or spirit of the antitrust laws, or that it harms

competition." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1169 (9th Cir. 2012). As for the balancing test, Plaintiffs have not shown that Nissan's use of the Intelligent Key system is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Setting aside that Nissan's key system does not violate FMVSS 114, the purported rollaway risk is completely avoidable by placing the automatic transmission in park and/or applying the parking break—all of which a driver should do as a matter of common sense and prudence, and in compliance with California law. The Court therefore finds that Plaintiffs have failed to state a claim under the unfair prong of the UCL.

### 3. Fraudulent

"A business practice is fraudulent under the UCL if members of the public are likely to be deceived." Davis, 691 F.3d at 1169. A claim under this prong of the UCL is based on the reasonable consumer standard, which requires the plaintiff to "show that members of the public are likely to be deceived." Williams v. Gerber Prods. Co., 552 F.3d 934 (9th Cir. 2008) (internal quotation marks omitted).

The FAC alleges that Nissan engaged in fraudulent business practices "when it failed to disclose and concealed the existence and nature of the Defect." FAC ¶ 92. As discussed above, however, Plaintiffs have failed to adequately allege facts establishing a duty to disclose. "Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal.App.4th 1544, 1557 (2007). Thus, the Court finds that Plaintiffs have failed to state a claim under the fraudulent prong of the UCL.

### 4. Summary

The Court finds that Plaintiffs have failed to adequately allege a claim for violation of the UCL for unlawful, fraudulent or unfair business practices. Accordingly, Nissan's motion to dismiss is GRANTED with respect to Plaintiffs' claim for violation of the UCL.

**D. CONSUMER LEGAL REMEDIES ACT**

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. To pursue a CLRA claim, the plaintiff must have been "exposed to an unlawful practice," and "some kind of damage must result." Meyer v. Sprint Spectrum L.P., 45 Cal.4th 634, 641 (2009). Here, Plaintiffs' CLRA claim is predicated upon the theory that Nissan had an obligation to disclose the "true facts about the Defect." FAC ¶ 102. As noted, Plaintiffs have failed to establish that Nissan was under a duty to disclose. In addition, Plaintiffs have not shown any "unlawful" conduct. The Ninth Circuit affirmed this Court's finding that Nissan did not violate FMVSS 114, and Plaintiffs newly-asserted statutory violations also fail to state a claim. Nissan's motion to dismiss is GRANTED with respect to Plaintiffs' claim under the CLRA.

**E. LEAVE TO AMEND**

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986). It is questionable whether Plaintiffs will be able to rectify the deficiencies in the pleadings, as set forth above. Nonetheless, out of an abundance of caution, the Court grants Plaintiffs leave to file a Second Amended Complaint.

**IV. CONCLUSION**

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Nissan's Motion to Dismiss Plaintiffs' First Amended Complaint is GRANTED.

2. Plaintiffs shall have twenty-one (21) days from the date this Order is filed to file a Second Amended Complaint, consistent with the Court's rulings. Plaintiffs are advised that any additional factual allegations set forth in the amended complaint must be

1 | made in good faith and consistent with Rule 11. Failure to timely amend will be deemed
2 | sufficient grounds to the dismiss the action with prejudice.
3 |     3.    This Order terminates Docket 75.
4 | IT IS SO ORDERED.
5 | Dated: June 20, 2013

                                         SAUNDRA BROWN ARMSTRONG
                                         United States District Judge